BRAD S. DANIELS, OSB No. 02578
brad.daniels@stoel.com
NATHAN R. MORALES, OSB No. 145763
nathan.morales@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Plaintiff Oregon Association of Hospitals
and Health Systems*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OREGON ASSOCIATION OF HOSPITALS AND HEALTH SYSTEMS,<br><br>         Plaintiff,<br><br>   v.<br><br>STATE OF OREGON; OREGON HEALTH AUTHORITY, and DAVID BADEN, in his official capacity as Director of Oregon Health Authority,<br><br>         Defendants. | Case No.:  3:22-cv-1486-SI<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 2

    A.    A Single Example of Clearly Prohibited Conduct Is Not Sufficient to
          Save an Unconstitutionally Vague Statute ................................................. 2

        1.    The Vague-in-All-Applications Test Has Been Definitively
              Rejected.......................................................................................... 2

        2.    Defendants' Additional Arguments in Support of the Vague-in-All-
              Applications Test Fail ..................................................................... 6

    B.    Administrative Regulations and Sub-Regulatory Guidance Do Not Save
          a Vague Statute .......................................................................................... 9

    C.    By Any Measure, HB 2362 Violates the Vagueness Standard ............................ 13

        1.    The Definition of "Health Care Entity" Is Unconstitutionally
              Vague ............................................................................................. 13

        2.    Defendants Admit That the Definition of "Material Change
              Transaction" Is Incomplete ............................................................ 15

        3.    HB 2362's Approval Criteria Are Unconstitutionally Vague.................. 16

        4.    Defendants' Additional Arguments Should Be Rejected ........................ 18

    D.    The Court Should Retain Jurisdiction over Plaintiff's State Law Claim.............. 18

    E.    HB 2362 Fails the Full Expression Prong of the Non-Delegation Doctrine ........ 20

        1.    Plaintiff Adequately Pleaded and Argued the State
              Constitutional Claim ...................................................................... 20

        2.    HB 2362 Is Incomplete and Does Not Fully Express *Any*
              Legislative Policy Governing Material Change Transactions ................. 21

        3.    Federal Non-Delegation Authorities Are Instructive and
              Support Plaintiff............................................................................. 25

        4.    The Non-Delegation Authorities Cited by Defendants Are
              Inapposite ....................................................................................... 28

    F.    HB 2362 Does Not Include Adequate Procedural Safeguards ............................ 30

1.    OHA Misinterprets the Power Delegated to the Private Boards............... 30

2.    Other Existing Statutory "Safeguards" Are Insufficient.......................... 31

III.    CONCLUSION.................................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. Small Co. v. Am. Sugar Ref. Co.*,
  267 U.S. 233 (1925)..................................................................................................7

*A.L.A. Schecter Poultry Corp. v. United States*,
  295 U.S. 495 (1935)................................................................................................27

*Advance Pharm., Inc. v. United States*,
  391 F.3d 377 (2d Cir. 2004).....................................................................................8

*Askew v. Cross Key Waterways*,
  372 So. 2d 913 (Fla. 1978)......................................................................................32

*California Pacific Bank v. Federal Deposit Insurance Corp.*,
  885 F.3d 560 (9th Cir. 2018) ...................................................................................18

*City of Chicago v. Morales*,
  527 U.S. 41 (1999)..............................................................................................4, 16

*City of Damascus v. Brown*,
  266 Or. App. 416, 337 P.3d 1019 (2014)....................................................... *passim*

*Coast Range Conifers, LLC v. State ex rel. Or. State Bd. of Forestry*,
  339 Or. 136, 117 P.3d 990 (2005) ..........................................................................25

*Coates v. Cincinnati*,
  402 U.S. 611, 611 (1971).........................................................................................4

*Coffey v. Bd. of Geologist Examiners*,
  348 Or. 494, 235 P.3d 678 (2010) ..........................................................................30

*Matter of Comp. of Gadalean*,
  364 Or. 707, 439 P.3d 965 (2019) ..........................................................................13

*Connally v. General Constr. Co.*,
  269 U.S. 385 (1926)..................................................................................................9

*Corvallis Lodge No. 1411 Loyal Order of Moose v. Or. Liquor Control Comm'n*,
  67 Or. App. 15, 677 P.2d 76 (1984)...................................................................31, 32

*Cunney v. Bd. of Trs. of Vill. of Grand View, N.Y.*,
  660 F.3d 612 (2d Cir. 2011).....................................................................................12

*Dep't of Transp. V. Ass'n of Am. R.Rs.*,
    575 U.S. 43 (2015) (Thomas, J., concurring in the judgment) ..............................................26

*DiPietro v. Coldiron*,
    523 P.3d 1019 (Colo. Ct. App. 2022) ....................................................................................22

*Erlich v. United States*,
    104 Fed. Cl. 12 (Ct. Cl. 2012)...............................................................................................22

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012).........................................................................................................8, 11

*FTC v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015)...................................................................................................12

*Giaccio v. Pennsylvania*,
    382 U.S. 399 (1966).........................................................................................................7, 16

*Guerrero v. Whitaker*,
    908 F.3d 541 (9th Cir. 2018) ...........................................................................................5, 6, 7

*Gundy v. United States*,
    139 S. Ct. 2116 (2019).............................................................................................21, 26, 28

*IBEW Loc. 89 v. Wallan*,
    326 Or. App. 796, 533 P.3d 1134 (2023)................................................................................20

*Johnson v. United States*,
    576 U.S. 591 (2015)....................................................................................................... *passim*

*Jordan v. SAIF Corp.*,
    343 Or. 208, 167 P.3d 451 (2007) .........................................................................................14

*Kolender v. Lawson*,
    461 U.S. 352 (1983)...............................................................................................................12

*MacPherson v. Department of Administrative Services*,
    340 Or. 117, 130 P.3d 308 (2006) ...................................................................................28, 29

*Mistretta v. United States*,
    488 U.S. 361 (1989)...............................................................................................................22

*Monarch Content Management LLC v. Arizona Department of Gaming*,
    971 F.3d 1021 (9th Cir. 2020) ............................................................................................6, 7

*Monarch Content Mgmt., LLC. v. Ariz. Dep't of Gaming*,
    No. 20-15047, 2020 WL 2045534 (9th Cir. Apr. 16, 2020)......................................................6

*Monarch Content Mgmt., LLC v. Ariz. Dep't of Gaming*,
    No. 20-15047, 2020 WL 870795 (9th Cir. Feb. 13, 2020) ......................................................6

*Montez v. Czerniak*,
    355 Or. 1, 322 P.3d 487 ............................................................................................................19

*Northstar Wireless, LLC v. Fed. Commc'ns Comm'n*,
    38 F.4th 190 (D.C. Cir. 2022) ................................................................................................11

*Oregon Manufacturers & Commerce v. Oregon Occupational Safety & Health Division*,
    No. 1:22-CV-00875-CL, 2022 WL 17820312 (D. Or. Dec. 20, 2022) .....................................7

*Panama Refining Co. v. Ryan*,
    293 U.S. 388 (1935).................................................................................................................27

*Paul v. United States*,
    140 S. Ct. 342 (2019) (Kavanaugh, J., statement respecting denial of certiorari)..................26

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018) ...................................................................................................*passim*

*Springfield Education Association v. Springfield School District*
    *No. 19*, 290 Or. 217, 621 P.2d 547 (1980)........................................................................29, 30

*State v. Davilla*,
    234 Or. App. 637, 230 P.3d 22 (2010).................................................................................24, 26

*State v. Reasoner*,
    313 Or. App. 139, 495 P.3d 686 (2021), *review denied*, 369 Or. 209 (2022) ..................28, 29

*Tiger Lily, LLC v. HUD*,
    5 F.4th 666 (6th Cir. 2021) (Thapar, J., concurring) ............................................................27

*Trans Union Corp. v. FTC*,
    245 F.3d 809 (D.C. Cir. 2001) ................................................................................................15

*United States v. Clinical Leasing Serv., Inc.*,
    925 F.2d 120 (5th Cir. 1991) ....................................................................................................8

*United States v. Cook*,
    914 F.3d 545 (7th Cir.) ..............................................................................................................5

*United States v. Davis*,
    139 S. Ct. 2319 (2019).........................................................................................................7, 10

*United States v. L. Cohen Grocery Co.*,
    255 U.S. 81 (1921)..................................................................................................................3, 7

*United States v. Pearson*,
  211 F.3d 1275, 2000 WL 237961 (9th Cir. 2000) ................................................15

*Van Winkle v. Fred Meyer, Inc.*,
  151 Or. 455, 49 P.2d 1140 (1935) ......................................................................24

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982)..........................................................................................8, 9

*Warren v. Marion County*,
  222 Or. 307, 353 P.2d 257 (1960) ................................................................23, 29

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) ...........................................................................................11

**Statutes**

Oregon Administrative Procedures Act (APA) ................................................ *passim*

1957 Or. Laws ch. 717, § 12 .....................................................................................32

1974 Or. Laws ch. 72, § 2 .........................................................................................32

Or. Rev. Stat. § 183.400 ............................................................................................33

Or. Rev. Stat. § 183.484(5)(b) ...................................................................................33

Or. Rev. Stat. § 414.018 ............................................................................................23

Or. Rev. Stat. § 414.570 ............................................................................................23

Or. Rev. Stat. § 415.500(2) ........................................................................................13

Or. Rev. Stat. § 415.500(4)(a) ...................................................................................13

Or. Rev. Stat. § 415.500(5) ........................................................................................31

Or. Rev. Stat. § 415.500(6)(a) ...................................................................................13

Or. Rev. Stat. § 415.501(1) ..........................................................................................2

Or. Rev. Stat. § 415.501(1)-(2) ..................................................................................22

Or. Rev. Stat. § 415.501(7)(a) ...................................................................................30

Or. Rev. Stat. § 415.501(18) ......................................................................................30

Or. Rev. Stat. § 415.900..............................................................................................9

Or. Rev. Stat. § 419C.370 ........................................................................................28

**Other Authorities**

Ilan Wurman, *Nondelegation at the Founding*, 130 Yale L.J. 1490, 1497 (2021) .......................26

Or. Admin. R. 409-070-0000(2) ...............................................................................17

Or. Admin. R. 409-070-005(16) ...............................................................................14

Or. Admin. R. 409-070-0005(16)(g)..........................................................................15

Or. Admin. R. 409-070-0065 ....................................................................................17

Or. Admin. R. 409-070-0065(a) ................................................................................17

Or. Const. art. IV, § 1 ...........................................................................................1, 23

Or. Const. art. IV, § 1(1) .........................................................................................19

Oregon Constitution............................................................................................ *passim*

Oregon Constitution, article 1, section 21 ...............................................................24

U.S. Const. art. I, § 1............................................................................................19

United States Constitution ....................................................................................1, 26

# I.  INTRODUCTION

Defendants' Combined Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of Defendants' Motion for Summary Judgment ("Def. Opp.") confirms that HB 2362 is unprecedented in Oregon law and unconstitutional.  In a major sector of Oregon's economy that affects every Oregonian, the legislature provided an agency with the power to make law in the first instance.  Without making even the most basic legislative policy choices or establishing clear standards, the legislature left Oregon Health Authority ("OHA") to determine which entities are subject to the law; the types of health care transactions subject to review; the criteria OHA will use to approve, deny, or dictate conditions on such transactions; and, consequently, when penalties will be imposed for non-compliance.  Because HB 2362 employs unconstitutionally vague language and delegates extraordinary legislative power to the executive branch, it violates the United States Constitution and the Oregon Constitution

Defendants' Opposition does not effectively rebut those points.  It reinforces them. Regarding the federal due process claim, Defendants rely on an inapplicable standard that the Supreme Court and Ninth Circuit have definitively rejected.  Just as important, Defendants admit that HB 2362 is only "mostly complete," and that anyone seeking to understand and comply with the statute must navigate a blizzard of agency rules and sub-regulatory guidance.  That result is inconsistent with the Due Process Clause and the void-for-vagueness doctrine.  Similarly, Oregon's non-delegation doctrine ensures that a statute does not give agencies legislative power. HB 2362, however, provides OHA with new and boundless authority to deny or dictate conditions on a wide array of health care transactions.  In Defendants' view, the only possible restriction on that power is an impossibly broad and amorphous purpose—promoting the public interest.  If article IV, section 1, of the Oregon Constitution—which vests the "legislative power"

in the legislature—and related provisions have any meaning at all, they do not allow the legislature to give the executive branch the power to prohibit or impose conditions on transactions in a market affecting every Oregonian, with the only restriction being that such power be exercised in accordance with "promot[ing] the public interest."  Or. Rev. Stat. § 415.501(1).

The legislature has a constitutional responsibility to enact clear and complete statutes, so regulated parties and the executive branch know the rules of the road and the people can hold the legislature accountable for its policy choices.  The legislature did not do its job when it passed HB 2362.  Instead, it handed the keys to OHA to create law and legislative policy in the first instance, which has profound impacts on Oregonians—a result that is inconsistent with the void-for-vagueness doctrine, the non-delegation doctrine, and the constitutional principles of due process and separation of powers.

For those reasons, and for the reasons Plaintiff outlined in its Cross-Motion for Summary Judgment ("Plaintiff's Cross-Motion"), Plaintiff's Cross-Motion should be granted, and Defendants' Motion should be denied.

## II.  ARGUMENT

### A.    A Single Example of Clearly Prohibited Conduct Is Not Sufficient to Save an Unconstitutionally Vague Statute

#### 1.    The Vague-in-All-Applications Test Has Been Definitively Rejected

Although the Supreme Court has held that the "vague in every conceivable application" standard no longer accurately states the law, and the Ninth Circuit has interpreted those holdings to reject it as well, Defendants contend that the Court should continue to apply that outdated test in this case.  (Def. Opp. at 2-4.)  Defendants' arguments should be rejected for several reasons.

First, Defendants fail to distinguish Supreme Court precedent in any meaningful way.  In *Johnson v. United States*, 576 U.S. 591 (2015), the Court considered a facial challenge to the residual clause of the Armed Career Criminal Act, which imposed enhanced penalties for offenders with prior convictions for a "violent felony," defined to include any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id*. at 594 (emphasis and citation omitted).  The Court concluded that the statute "produce[d] more unpredictability and arbitrariness than the Due Process Clause tolerates" and was unconstitutionally vague in its entirety, even though there were some "straightforward cases"— crimes that clearly would qualify as violent felonies—that fell within its scope.  *Id*. at 598, 602.

Nothing in *Johnson* suggested that the vague-in-all-applications[1] test would survive in some circumstances but not others, much less defined what those circumstances would be or when they would apply.  The Court could not have been more clear.  Although it acknowledged the language of previous cases requiring vagueness to be proven in all applications or all circumstances, the Court then admonished that "our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 602.  When discussing the inapplicability of the vague-in-all-applications test, the Court also cited *United States v. L. Cohen Grocery Co*., 255 U.S. 81, 87-88 (1921), and explained that, in *L. Cohen Grocery*, the court correctly "deemed a law prohibiting grocers from charging an 'unjust or unreasonable rate' void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable." *Id*. at 602-03; *see also id*. at 603 ("We have similarly deemed void for vagueness

---

[1] Defendants argue that Plaintiff "must establish that HB 2362 is unconstitutionally vague in every conceivable application."  (Def. Opp. at 1.)  For ease of reference, Plaintiff refers to that standard as the "vague-in-all-applications" test.

Page 3 –    PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY
              JUDGMENT

a law prohibiting people on sidewalks from 'conduct[ing] themselves in a manner annoying to persons passing by'—even though spitting in someone's face would surely be annoying." (brackets in original) (quoting *Coates v. Cincinnati*, 402 U.S. 611, 611 (1971))).  The Court thus rejected—as an analytical and doctrinal matter—the notion that, because one might be able to think of some example that may fall squarely within a statute's prohibition, that example is enough to save an otherwise vague statute.  *See id*. ("These decisions refute any suggestion that the existence of *some* obviously risky crimes establishes the residual clause's constitutionality."); *see also City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999) ("To the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never been the decisive factor in any decision of this Court, including *Salerno* itself (even though the defendants in that case did not claim that the statute was unconstitutional as applied to them . . . .).").

        The Court's opinion in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018), confirms that a vague statute cannot be saved simply because one can posit some conduct plainly within its reach.  In *Dimaya*, the Court invalidated as facially vague a similarly worded residual clause in an immigration statute that authorized the removal of aliens convicted of "a crime of violence." *See id.* at 1213-16.  Responding to Justice Thomas's dissent (which attempted to reiterate the vague-in-all-applications test), the majority confirmed that "*Johnson* made clear that our decisions 'squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp.'"  *Id*. at 1214 n.3 (quoting *Johnson*, 576 U.S. at 602).  Again, nothing in the opinion or the Court's statement suggested that the "square contradiction" identified by the Court applied in some cases but not others.  The

rejected "theory" was that a "vague provision" was somehow made constitutional because some clear applications could be identified.[2]

The Ninth Circuit, and other courts, agree that *Johnson* and *Dimaya* signal an end to the vague-in-all-applications test. Although Defendants attempt to distinguish *Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018), on the sole grounds that it addressed an immigration removal statute, the court's analysis and reasoning are not limited to their facts, nor is there any suggestion of such limitation in the court's reasoning. Instead, in *Guerrero*, after careful analysis, Judge Graber concluded that "*Johnson* and *Dimaya* expressly rejected the notion that *a statutory provision* survives a facial vagueness challenge merely because some conduct clearly falls within the statute's scope." *Id*. (emphasis added). No part of the Ninth Circuit's analysis suggested that the *Johnson*/*Dimaya* shift was limited to only specific types of cases. *See also United States v. Cook*, 914 F.3d 545, 553 (7th Cir.) ("It is true that *Johnson* puts to rest the notion—found in any number of pre-*Johnson* cases—that a litigant must show that the statute in question is vague in *all* of its applications in order to successfully mount a facial challenge. And, as we have mentioned, *Johnson* likewise rejects the notion that simply because one can point to *some* conduct that the statute undoubtedly would reach is alone sufficient to save it from a vagueness challenge." (footnote and citation omitted), *vacated on other grounds*, 140 S. Ct. 41 (2019). Put simply, the Supreme Court unequivocally concluded that its

---

[2] In the course of rejecting the government's position that a "less searching form of the void-for-vagueness doctrine" should apply in civil cases, the Court did emphasize the significance of deportation. *Dimaya*, 138 S. Ct. at 1213-14. That discussion, however, simply rejected the argument for a lesser standard given the Court's earlier precedents and the discussion in those cases. The Court did not go further and conclude that a "less searching" vagueness test would continue to apply in all other non-removal civil cases. As footnote 3 of the opinion demonstrates, the Court certainly did not endorse continued adherence to the vague-in-all-applications test.

Page 5 –    PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY
             JUDGMENT

"holdings" reject the view that identifying a single instance of clearly prohibited conduct is enough to survive a vagueness challenge, a conclusion that was based on its assessment of the standard's consistency with due process, not a fact-based, or case-by-case, analysis.

The Supreme Court's and Ninth Circuit's conclusions are consistent with the basic command of due process. Requiring plaintiffs to demonstrate vagueness in every single application of the statute is, in the Supreme Court's view, simply a "tautology." *Johnson*, 576 U.S. at 603. Even a fundamentally flawed statute with no discernable core might pass muster under a strict application of the test, as long as one conceivable application could be identified. That result cannot be aligned with separation-of-powers principles and would perpetuate the risks of continued uncertainty and arbitrary enforcement that due process is intended to prevent.

> ### 2. Defendants' Additional Arguments in Support of the Vague-in-All-Applications Test Fail

In addition to their cramped interpretation of *Johnson*, *Dimaya*, and *Guerrero*, Defendants cite *Monarch Content Management LLC v. Arizona Department of Gaming*, 971 F.3d 1021, 1030 (9th Cir. 2020), as evidence of the continued viability of the vague-in-all-applications standard. (Def. Opp. at 10.) In *Monarch Content Management*, however, the court simply repeated—with no analysis or discussion—that standard. The court did not cite *Guerrero*, nor did the court analyze *Johnson* and *Dimaya*. Indeed, in its briefs, the appellant did not even cite those cases or argue that a different standard applied to its vagueness challenge. *See* Appellants' Opening Brief, *Monarch Content Mgmt., LLC v. Ariz. Dep't of Gaming*, No. 20-15047, 2020 WL 870795, at *47 (9th Cir. Feb. 13, 2020); Appellants' Reply Brief, *Monarch Content Mgmt., LLC. v. Ariz. Dep't of Gaming*, No. 20-15047, 2020 WL 2045534, at *22 (9th Cir. Apr. 16, 2020). Thus, the court was neither presented with the issue nor did it decide it.

Although the court in *Oregon Manufacturers & Commerce v. Oregon Occupational Safety & Health Division*, No. 1:22-CV-00875-CL, 2022 WL 17820312, at *9 (D. Or. Dec. 20, 2022), did address the impact of *Johnson* and its progeny, respectfully the court's analysis is incorrect for three reasons.  First, it relies on an overly narrow reading of *Johnson* and *Guerrero*.  Second, the court overstates the significance of the Ninth Circuit's opinion in *Monarch Content Management*, which did not address or decide the issue.  Third, the court opined that a less stringent vagueness test should apply in criminal or quasi-criminal circumstances, but that distinction is, at best, on tenuous footing and fails to recognize that many civil regulations authorize sanctions that can prove far more harmful than the fines prescribed by certain criminal laws.  *See Dimaya*, 138 S. Ct. at 1229 (Gorsuch, J., concurring in part) ("[A]ny suggestion that criminal cases warrant a heightened standard of review does more to persuade me that the criminal standard should be set *above* our precedent's current threshold than to suggest the civil standard should be buried *below* it.").

Regarding that last point, Defendants argue that because "health care is a closely regulated industry" and no "significant individual liberty interests" are at stake, the Court should continue to apply the "every conceivable application" standard in this case.  (Def. Opp. at 3.) The Supreme Court has invalidated vague laws notwithstanding their non-penal character, however, in part because "a vague law is no law at all."  *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019); *see also Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966) (statute imposing costs on acquitted defendants); *A.B. Small Co. v. Am. Sugar Ref. Co.*, 267 U.S. 233, 238 (1925) (statute prohibiting "unjust or unreasonable . . . charge" for necessities (citation omitted)); *L. Cohen Grocery Co.*, 255 U.S. at 86-88 (1921) (statute prohibiting "unjust or unreasonable rate" (citation omitted)).  And courts have similarly recognized that imposition of civil penalties can

raise the same concerns as statutes classified as criminal. *See, e.g., Advance Pharm., Inc. v. United States*, 391 F.3d 377, 396 (2d Cir. 2004) ("When a civil statute imposes penalties that, although civil in description, are penal in character, the statute is sometimes deemed 'quasi-criminal' and subjected to stricter vagueness review." (internal quotation marks and citations omitted)); *United States v. Clinical Leasing Serv., Inc.*, 925 F.2d 120, 122 & n.2 (5th Cir. 1991) (applying a "relatively strict test" for vagueness to a civil penalty provision of the Controlled Substances Act because it "authorizes fines which, although civil in description, are penal in character," making the statute "quasi-criminal").

The Supreme Court has also recognized that regulatory enforcement imposes reputational harm that deserves adequate notice and protection from arbitrary enforcement. In *FCC v. Fox Television Stations, Inc*., 567 U.S. 239, 255 (2012), the Court invalidated the FCC's enforcement of indecency rules under the Due Process Clause. In doing so, the Court rejected the government's argument that minimal or no sanctions would mitigate the due process concern. *Id*. ("[W]hen combined with the legal consequence described above, reputational injury provides further reason for granting relief . . . ."). Even *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982), the case often cited as support for the civil/criminal distinction, did not create such a clean divide. In *Hoffman Estates*, the local ordinance required businesses to obtain a license in order to sell items "designed or marketed for use with illegal cannabis or drugs" or be subject to civil penalties. Although noting that the Court had "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe," immediately after that observation the Court not only described the ordinance as "quasi-criminal," but noted that "its prohibitory and stigmatizing effect may warrant a relatively strict test." *Id*.

Page 8 –   PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

The vagueness test should not be weakened in this case because HB 2362 is not a criminal law and does not threaten jail or deportation.  Even if one could label the statute strictly "economic," HB 2362 is a sweeping law that imposes penalties for violating its prohibitions.  Or. Rev. Stat. § 415.900.  *See Village of Hoffman Estates*, 455 U.S. at 498 (explaining that economic regulations may warrant less strict review "because its subject matter is often more narrow").  In addition, HB 2362 imposes those penalties without any *mens rea* requirement.  *Id*. at 499 ("And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").  And, in threatening those penalties, HB 2362 imposes the same risk of reputational harm and stigmatizing effects that the Supreme Court has emphasized.

For all of those reasons, the Court should reject Defendants' insistence that Plaintiff prove that not a single transaction would be clearly covered by HB 2362.  Instead, the proper test is one that is faithful to the essential requirement of due process and the court's role in preserving that requirement.  Regardless of whether a single instance of clearly prohibited conduct can be identified, a law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Johnson*, 576 U.S. at 595; *see also Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.").

## B.  Administrative Regulations and Sub-Regulatory Guidance Do Not Save a Vague Statute

On the merits, Defendants principally rely on the argument that HB 2362 is not unconstitutionally vague because OHA has issued regulations and "sub-regulatory guidance" that

Page 9 –    PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY
            JUDGMENT

allegedly clarify the vagueness inhering in the statute itself.  (*E.g.*, Def. Opp. at 6.)  In other

words, Defendants believe that any unconstitutional vagueness is fixed by later agency

interpretations, including documents (such as sub-regulatory guidance) that do not have the force

of law.  In the context of this case and Plaintiff's challenge, the Court should reject Defendants'

reliance on OHA's regulations and sub-regulatory guidance as a cure for HB 2362's vagueness

for three related reasons.

First, in *Dimaya* and *Davis*, the Court emphasized that the vagueness doctrine acts as "a

corollary of the separation of powers."  *Dimaya*, 138 S. Ct. at 1212; *Davis*, 139 S. Ct. at 2325

("Our doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars

of due process and separation of powers.").  As Justice Gorsuch explained (first in concurrence

in *Dimaya* and then for the Court in *Davis*), "[v]ague laws also undermine the Constitution's

separation of powers and the democratic self-governance it aims to protect."  *Davis*, 139 S. Ct. at

2325; *Dimaya*, 138 S. Ct. at 1227 ("Although today's vagueness doctrine owes much to the

guarantee of fair notice embodied in the Due Process Clause, it would be a mistake to overlook

the doctrine's equal debt to the separation of powers.").  As emphasized by the Court, providing

fair notice of basic policy choices is a feature of democratically elected legislatures and cannot

be left to those charged with enforcing the laws.  The Supreme Court has made this point in a

related context:

> We have never suggested that an agency can cure an unlawful
> delegation of legislative power by adopting in its discretion a
> limiting construction of the statute. . . .  The idea that an agency
> can cure an unconstitutionally standardless delegation of power by
> declining to exercise some of that power seems to us internally
> contradictory.  The very choice of which portion of the power to
> exercise—that is to say, the prescription of the standard that
> Congress had omitted—would *itself* be an exercise of the
> forbidden legislative authority.

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472-73 (2001).

In addition, the vagueness doctrine is not only concerned with requiring the legislature to fulfill its basic responsibility—giving fair notice of its prohibitions and restrictions—but also with arbitrary enforcement. *Fox Television*, 567 U.S. at 253 ("precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way"). A premise of the vagueness doctrine is that parties cannot be expected to simply trust the executive absent sufficiently clear standards from democratically elected representatives. For an agency to have the power to save an otherwise unconstitutionally vague statute by setting its own guidelines is precisely what the arbitrary enforcement prong of the void-for-vagueness analysis is designed to prevent.

Defendants' reliance on administrative regulations and sub-regulatory guidance—in essence arguing, "Don't worry about it. We'll tell you on a website."—entirely ignores those concerns. *See Fox Television*, 567 U.S. at 255 ("Just as in the First Amendment context, the due process protection against vague regulations 'does not leave [regulated parties] . . . at the mercy of *noblesse oblige*.'" (brackets and ellipsis in original; citation omitted)). Pointing to regulations or informal guidance and statements by the agency (some of which could be changed on a dime[3]) does not address, much less solve, the basic problem; would undermine the arbitrary enforcement prong of vagueness analysis; and is also inconsistent with the separation-of-powers rationale undergirding the vagueness doctrine.[4]

---

[3] *See, e.g.*, Dec. of YoungWoo Joh, Ex. 2 at 1 ("The Oregon Health Authority may add to the above list of exempted transactions and re-post on the program website . . . at any time.").

[4] Defendants appear to rely on the concept of fair notice in the context of agency adjudication, where "a party has fair notice when, 'by reviewing the regulations and other public statements issued by the agency,' it can 'identify, with ascertainable certainty, the standards with which the agency expects parties to conform.'" *Northstar Wireless, LLC v. Fed. Commc'ns Comm'n*, 38 F.4th 190, 216 (D.C. Cir. 2022). But those circumstances involve only the concept of fair notice

Second, Defendants overstate the importance and use of administrative regulations or agency guidance in the vagueness inquiry.  Of course, "[i]n evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered." *Kolender v. Lawson*, 461 U.S. 352, 355 (1983) (citation omitted).  But that is an interpretive rule governing a federal court's analysis of state law.  And there is a difference between a "limiting construction" on a broad but definite standard and the wholesale creation of standards in the first instance.  Indeed, one reason that courts examine administrative interpretations or enforcement history is that the executive's interpretations may reinforce, rather than ameliorate, the law's vagueness. *Cunney v. Bd. of Trs. of Vill. of Grand View, N.Y.*, 660 F.3d 612, 622 (2d Cir. 2011) ("Defendants' various interpretations of . . . [the] requirements serve only to reinforce our view that the ordinance's vagueness authorizes arbitrary enforcement.").

That is the case here.  Consider, for example, Plaintiff's previous analysis of the hypothetical contracting affiliation provided by OHA through sub-regulatory guidance, and the absurdity of arbitrary standards, such as the one-third standard, which is nowhere to be found in HB 2362.  (Plaintiff's Cross-Motion at 21-23.)  That example illustrates the larger problem.  As Plaintiff has emphasized, OHA was given an impossible task—determining in the first instance what will be allowed, and what will be prohibited or conditioned, without any standard by which to measure its work, other than (perhaps) promoting the public interest.  Plaintiff respects the time and effort that OHA has expended in its rulemaking and in the creation of the sub-

---

of an agency's interpretation of a statute, not fair notice that the legislature is required to provide. *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 253-54 (3d Cir. 2015) ("[t]he relevant question is not whether [the defendant] had fair notice of the [*agency's] interpretation* of the statute, but whether [the defendant] had fair notice of what the *statute itself requires*" (emphasis in original).

regulatory guidance.  But OHA cannot solve through rulemaking and agency guidance the fundamental problem that the legislature created by passing an unconstitutionally vague statute.

Third, Defendants' argument has no apparent limiting principle.  Throughout their Opposition, Defendants cite not only promulgated rules, but sub-regulatory guidance and Q&A documents that provide "high-level information" about the statute, which are published on OHA's website or elsewhere.  (Dec. of YoungWoo Joh, Ex. 1 at 1; *see also* Def. Opp. at 7-8, 9.) If those documents (or, as Defendants also note, "OHA's availability for informal consultation") are sufficient to cure a statute's vagueness, then the law necessarily demands that regulated parties (which, for HB 2362, is an undefined and vast population) not only stay abreast of interpretations, regulations, and documents, but also shift behavior in reaction to any changes in such documents, no matter how radical.  But doctors, entities, or others subject to HB 2362's requirements should not have to hunt and peck for administrative-agency-supplied materials on websites to know what a statute requires, nor should the legislature be relieved of its constitutional burden because the agency can attempt to fix it later through a Q&A document.

## C.    By Any Measure, HB 2362 Violates the Vagueness Standard

### 1.    The Definition of "Health Care Entity" Is Unconstitutionally Vague

Defendants' Opposition fails to demonstrate that HB 2362's definitions pass even the minimal vagueness test.  First, it is undisputed that, unlike other definitions in the statute, the definition of "health care entity" only refers to a non-exclusive list.  *Compare* ORS 415.500(4)(a) ("'Health care entity' ***includes***:  . . . .") *with* Or. Rev. Stat. § 415.500(2) ("'Essential services' ***means***:  . . . .") and Or. Rev. Stat. § 415.500(6)(a) ("'Material change transaction' ***means***:  . . . .").  The Court must give meaning to the legislature's decision to use different terms in the same statute.  *Matter of Comp. of Gadalean*, 364 Or. 707, 719, 439 P.3d

965 (2019) ("When the legislature uses different terms in related statutes, we presume that the legislature intended different meanings. . . .  The same rule applies if the legislature used different terms in the same statute." (citation omitted)); *see also Jordan v. SAIF Corp.*, 343 Or. 208, 217, 167 P.3d 451 (2007) ("[The] use of a term in one section and not in another section of the same statute indicates a purposeful omission." (internal quotation marks and citation omitted)).  Here, rather than define what "health care entity" *means*, the legislature only indicated what that term would include and not include, leaving a critical fact—to whom the statute applies—open-ended.

Defendants have no rebuttal to that interpretation, which the plain text of the statute compels.  Instead, Defendants couch Plaintiff's argument as an objection to the "use of a list." (Def. Opp. at 6.)  That argument is a straw man.  Plaintiff's challenge is not to a list conceptually.  Plaintiff objects to the use of a ***non-exclusive*** list that, among other things, leaves essentially undefined the parties to whom the statute applies.

In addition to the non-exclusive nature of the list, Plaintiff identified other portions of the definition that are vague—"hospital system" and the residual clause.  As it does in other areas, Defendants do not attempt to defend the statutory text, but retreat to "OHA's rules and guidance documents."  (Def. Opp. at 9.)  For the reasons outlined above and in Plaintiff's Cross-Motion, those administrative interpretations do not fix the statutory vagueness problem.  It should not take the addition of rules and sub-regulatory guidance documents to provide sufficient notice of which entities fall within the law.

Even if the Court examines them, the regulations and guidance prove Plaintiff's point. Like the statute, the Oregon Administrative Rule defining "health care entity" only identify what the phrase ***includes***.  Or. Admin. R. 409-070-005(16).  Thus, it provides no meaningful

restriction on what the statute provides.  In addition, as one example, the agency has added the concept of "control" and identified private equity firms as an example of a "health care entity" based on that concept of control.  (Or. Admin. R. 409-070-0005(16)(g); Dec. of YoungWoo Joh, Ex. 10 at 3.)  Rather than clarify or limit the vague statute, the agency's expansion demonstrates that there is no definitional boundary.

### 2.    Defendants Admit That the Definition of "Material Change Transaction" Is Incomplete

With respect to the definition of "material change transaction," Defendants make a telling admission.  Recognizing that the statute leaves to the agency to define which transactions will require approval (or face penalties), Defendants aver that the "statute is ***mostly complete***" with OHA providing "minor supplementation through administrative rules."  (Def. Opp. at 9 (emphasis added).)  Whatever blizzard of rules and guidance documents may be promulgated, they cannot fill the fundamental gaps in the statute that, as Defendants now acknowledge, exist.

In this respect, Defendants advance two additional arguments that are incorrect.  First, they contend that "OHA's availability for informal consultation" somehow ameliorates the statute's vagueness.  (*Id.*)  When such administrative review has been cited as a mitigating factor, however, the circumstances have involved violations of the agency's own regulations, or involve a formal advisory opinion process to explain agency rules.  *See United States v. Pearson*, 211 F.3d 1275 (table), 2000 WL 237961, at *1 (9th Cir. 2000) (person mining on federal land could consult with Forest Service about scope of Forest Service rules); *Trans Union Corp. v. FTC*, 245 F.3d 809, 818 (D.C. Cir. 2001) (business could seek formal advisory opinion from agency as protection from enforcement).  Whether or not an agency is willing or able to provide an "informal consultation," the mere possibility of doing so does not satisfy the vagueness concerns with a *statute*.  Requiring parties to rely on informal, ad hoc advice from the agency virtually

guaranties that the law will suffer from the primary ill that the vagueness doctrine guards against: inadequate notice of prohibitions and arbitrary enforcement.

Second, Defendants dismiss any concern with arbitrary enforcement by citing the fact that a hearing would be held to adjudicate any penalties, during which a party could plead vagueness as a defense. (Def. Opp. at 9.) The possibility of asserting a constitutional defense in an after-the-fact adjudication, however, is hardly a rationale for upholding an otherwise vague statute. Nor do Defendants cite any authority for such a counterintuitive proposition.

### 3. HB 2362's Approval Criteria Are Unconstitutionally Vague

Defendants' arguments related to the statutory review criteria does not address any portion of the statutory text. And for the reasons outlined in Plaintiff's Cross-Motion and below, the criteria defining which transactions will be prohibited or approved with potentially onerous conditions is entirely up to the agency, with the only possible limitation being that its decision must "promote the public interest." The void-for-vagueness doctrine prevents such a grant of standardless discretion to determine what conduct is lawful or unlawful. *See Morales*, 527 U.S. at 60 ("This ordinance is therefore vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." (internal quotation marks and citation omitted)); *Giaccio*, 382 U.S. at 403 (holding unconstitutional act that "contains no standards at all, nor does it place any conditions of any kind upon the jury's power to impose costs upon a defendant who has been found by the jury to be not guilty of a crime charged against him"). When faced with the question, "What do I need to do to ensure that my conduct conforms to the law?," HB 2362's answer is, effectively, "Whatever the agency tells you to do." The statute supplies no standard or policy that, even on the most general level, informs a party what is or is not prohibited. Equally

important, the statute does not give the agency any direction as to which conditions would advance the "public interest," or even what considerations would inform the imposition of conditions to advance that goal. Indeed, OHA's rules allow the agency to impose conditions on transactions *even when the transaction meets all of OHA's criteria for approval*. Or. Admin. R. 409-070-0065. The only limiting principle is that the conditions serve the "public interest." Or. Admin. R. 409-070-0065(a); Or. Admin. R. 409-070-0000(2). Thus, even if the parties to a transaction somehow satisfy the agency's arbitrary and vaguely defined standards for approval, the agencies can still place onerous conditions on the parties' future behavior with no limiting principle or standard.

Rather than defend the statute, Defendants again rely entirely on the rules and sub-regulatory guidance, in particular a sub-regulatory guidance document outlining the criteria that OHA will use when reviewing proposed material change transactions. (Def. Opp. at 10.) For the reasons outlined above, however, that reliance is misplaced. The so-called sub-regulatory guidance is not clarifying an otherwise ascertainable standard or set of criteria. It is supplying that standard in the first instance, and doing so in a guidance document that may change and has no force of law.

Plaintiff does not simply challenge the breadth of that guidance either. When administrative regulations and guidance identify, for the first time, a wide swath of unforeseen and prohibited conduct, that situation is not a problem of overbreadth. It is an indication that the statute has no discernable core or edges to begin with. The examples identified by Plaintiff—including, most saliently, an arbitrary distance limitation as a trigger for agency review—illustrate that point.

**4.        Defendants' Additional Arguments Should Be Rejected**

Defendants fall back on two general points, neither of which support HB 2362's constitutionality.  First, their emphasis on regulated parties' specialized knowledge is a red herring.  (Def. Opp. at 5.)  HB 2362 is a bill focused on "material change transactions" between "health care entities"—a statute addressing a broad swath of corporate combinations, transactions, and contracts that happen to involve parties that have some connection to health care.  This hardly sounds like a "select group of persons having specialized knowledge." Moreover, although Defendants rely on *California Pacific Bank v. Federal Deposit Insurance Corp.*, 885 F.3d 560 (9th Cir. 2018) for the proposition that courts consider whether a *statute* "applies to "a select group of persons having specialized knowledge,'" that portion of the opinion addressed whether narrow and highly technical *regulations* applied to such persons, not statutes similar to HB 2362.  *Id.* at 572.

Defendants also criticize Plaintiff for raising "hypothetical" concerns and problems. (Def. Opp. at 8.)  But this is not a case where the challenged statute is only vague around the edges.  The uncertainties that Plaintiff has identified must be addressed every time a person or entity may engage in a transaction that may implicate health care in some way.  Plaintiff is not voicing a hypothetical grievance but rather is highlighting real ambiguities and lack of clarity that exists for its members and others potentially subject to HB 2362.

**D.        The Court Should Retain Jurisdiction over Plaintiff's State Law Claim**

The Court needs no education regarding the questions of judicial economy, convenience, fairness, and comity that govern its exercise of supplemental jurisdiction, a standard on which the parties agree and that the Court frequently applies.  For the reasons outlined in Plaintiff's Cross-Motion and herein, the federal and state constitutional claims substantially overlap.  Both

claims require an interpretation of HB 2362, a task for which this Court is well equipped, and both claims require this Court to assess the adequacy of those provisions against defined constitutional tests that address related concerns.  In these circumstances, comity does not tip heavily against the exercise of supplemental jurisdiction.  Given the extensive briefing and argument that the parties have presented, and the need for prompt resolution of these important issues, the values of economy, convenience, and fairness all support the Court's exercise of supplemental jurisdiction.

Defendants' other argument against the exercise of supplemental jurisdiction should be rejected.  They contend that, as a matter of state constitutional law, Oregon state courts do not consider as controlling the federal non-delegation doctrine.  (Def. Opp. at 12.)  Plaintiff agrees and has never argued to the contrary.  The non-delegation doctrine, however, is concerned with the separation of powers and structural concerns reflected in the parallel text of both constitutions, which both contain the same vesting clauses.  U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States . . . ."); Or. Const. art. IV, § 1(1) ("The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly . . . .").  In many contexts, as Defendants acknowledge, Oregon courts look to federal case law as persuasive authority when interpreting state constitutional provisions and requirements that draw on those same concepts.  *See, e.g., Montez v. Czerniak*, 355 Or. 1, 6–7, 322 P.3d 487, 493, opinion adhered to as modified on reconsideration, 355 Or. 598, 330 P.3d 595 (2014) ("This court, while interpreting and applying Article I, section 11, independently of the United States Supreme Court's interpretation of the Sixth Amendment, has nevertheless recognized that the standards for determining the adequacy of legal counsel under the state constitution are functionally

Page 19 –   PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY
                 JUDGMENT

equivalent to those for determining the effectiveness of counsel under the federal constitution."); *IBEW Loc. 89 v. Wallan*, 326 Or. App. 796, 803, 533 P.3d 1134 (2023) (stating that federal article III standing case law is "persuasive" and consistent with state APA standing requirements). This Court is well positioned to engage in that analysis and to recognize the benefits of other courts' perspectives on the same non-delegation principles.

**E.      HB 2362 Fails the Full Expression Prong of the Non-Delegation Doctrine**

   **1.      Plaintiff Adequately Pleaded and Argued the State Constitutional Claim**

OHA initially attempts to revisit the procedural history and argue that Plaintiff has "abandoned" an argument, or somehow not adequately raised it as a matter of pleading. (Def. Opp. at 16.) That assessment is wrong. As Defendants admit (Def. Opp. at 16 n.4), Plaintiff alleged in its First Amended Complaint that HB 2362 violates the non-delegation doctrine embodied in the Oregon Constitution and described all the necessary facts supporting that claim in sometimes exhaustive detail. Plaintiff also went further and cited both prongs of the non-delegation doctrine, including stating plainly that HB 2362 is unconstitutional because it does not contain "sufficient objective legislative standards or a fully expressed legislative policy that guides the exercise of the delegated authority." (First Am. Compl. ¶ 80.) As a pleading matter, those allegations were clearly sufficient—certainly as a matter of notice pleading—to state a claim and to allow Plaintiff to present all legal arguments in support of that claim. Defendants do not cite any authority to the contrary.

In their Motion for Summary Judgment, Defendants initially attempted to argue that the non-delegation doctrine in Oregon only focuses on whether fact-finding has been delegated without adequate procedural safeguards. (Def. Motion for Summary Judgment (ECF No. 28) at 14, 16.) When faced with the authorities and arguments in Plaintiff's Cross-Motion, however,

*Defendants* were the party to reverse course, abandoning their contention that adequate

procedural safeguards alone could satisfy the constitutional limitation on delegation of legislative

authority.  Defendants' attempt to artificially restrict the Court's inquiry, or to suggest that

Plaintiff did not plead a claim with precision or conceded a point, should be rejected.

> **2.      HB 2362 Is Incomplete and Does Not Fully Express *Any* Legislative Policy Governing Material Change Transactions**

Defendants acknowledge that HB 2362 delegates to the agency a legislative function:  the

authority to decide whether a "material change transaction" by a "health care entity" should be

reviewed and approved as lawful, prohibited, or allowed to proceed only if the entities satisfy

certain conditions.  If a person does not satisfy the criteria established by OHA, then their

conduct—the proposed contract, corporate affiliation, or other transaction—is prohibited and

subject to penalties.  The constitutional question, then, is whether the legislature fully expressed

a legislative policy that would guide that lawmaking decision.

Answering that question begins with statutory interpretation—an assessment of what task

is delegated and the parameters or scope of that delegation.  *City of Damascus v. Brown*, 266 Or.

App. 416, 444, 337 P.3d 1019 (2014) ("The thrust of the parties' opposing arguments center on

what HB 4029 actually does."); *see also Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019)

("[A] non-delegation inquiry always begins (and often almost ends) with statutory

/ / /

/ / /

/ / /

/ / /

/ / /

interpretation," because the Court must "figure out what task [the statute] delegates and what

instructions it provides.").[5]  Here, the relevant subsections provide:

> (1) The purpose of this section is to promote the public interest and to advance the goals set forth in ORS 414.018 and the goals of the Oregon Integrated and Coordinated Health Care Delivery System described in ORS 414.570.

> (2) In accordance with subsection (1) of this section, the Oregon Health Authority shall adopt by rule criteria approved by the Oregon Health Policy Board for the consideration of requests by health care entities to engage in a material change transaction and procedures for the review of material change transactions under this section.

Or. Rev. Stat. § 415.501(1)-(2).

As a textual matter, the only limit on the criteria and procedures governing OHA's

assessment—the delegated task—is that the criteria are "in accordance with" subsection (1).

That subsection is a general statement of the purpose of the statute:  to "promote the public

interest."  And the non-binding phrase "[i]n accordance with" simply means "in agreement or

harmony with."  *See Erlich v. United States*, 104 Fed. Cl. 12, 16 (Ct. Cl. 2012) ("Here, the Court

has been given no reason to believe that in Section 317(b)(4) [of the Social Security

Amendments of 1977] Congress used the phrase 'in accordance with' to mean anything other

than the usual 'in agreement with' or 'in conformity with.'"); *DiPietro v. Coldiron*, 523 P.3d

1019, 1023 (Colo. Ct. App. 2022) ("The plain meaning of 'in accordance with' is 'in agreement

---

[5] As explained, Plaintiff does not cite federal law as controlling, but as persuasive, in explaining the purpose and boundaries of the non-delegation doctrine.  "The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government."  *Mistretta v. United States*, 488 U.S. 361, 371 (1989).  It is not unique to Oregon, and given the parallel language of the vesting clauses in both constitutions, there is no reason to conclude that the drafters of the Oregon Constitution had a unique or different understanding of the legislative power.

or harmony with; in conformity to.'" (citation omitted)).  Thus subsections (1), (2), and (9) of

HB 2362 effectively say the following:

> OHA shall adopt criteria to review, approve, or deny material change transactions by health care entities in harmony with promoting the public interest.[6]

> A health care entity may engage in a material change transaction if OHA determines that the transaction meets the criteria adopted by OHA.

There is no other requirement cited by OHA or evident from the statute.  And Defendants

candidly argue that no other requirements are necessary and that such an extraordinarily broad

policy expression is consistent with the Oregon Constitution, citing *Warren v. Marion County*,

222 Or. 307, 353 P.2d 257 (1960), for the proposition that a "legislative policy can be expressed

in 'abstractions.'"  In Defendants' view, the only constitutional limitation on the legislature's

delegation of lawmaking authority is an expression of a "general policy."  (Def. Opp. at 16-19.)

Defendants' interpretation of the non-delegation doctrine is incorrect.  If the non-

delegation doctrine has any limitation, it is that the legislature cannot give an agency the power

to prohibit conduct, or to set the conditions for conduct and to impose penalties for non-

compliance, with the only limitation being that the agency prohibit or allow conduct consistent

with the overall purpose of "promot[ing] the public interest."  Transferring such significant

lawmaking authority to an agency cannot be squared with the Oregon Constitution, including the

vesting of all legislative power in the Legislative Assembly.  Or. Const. art. IV, § 1; *see also*

---

[6] Subsection (1) also refers to the "goals set forth in ORS 414.018 and the goals of the Oregon Integrated and Coordinated Health Care Delivery System described in ORS 414.570." Defendants, however, do not cite any of those goals, or argue that advancement of those goals are necessary, rather than sufficient, to support OHA's exercise of legislative authority.  (Def. Opp. at 19.)  And a review of those goals reflects that they add no material or specific limitations or standards beyond promotion of the public interest.

Page 23 –  PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY
                JUDGMENT

*State v. Davilla*, 234 Or. App. 637, 645, 230 P.3d 22 (2010) ("Three provisions of the Oregon

Constitution, taken together, prohibit the delegation of legislative power to make laws." (citing

Oregon Constitution, article 1, section 21; article III, section 1; and article IV, section 1(1)), *rev.*

*den.*, 350 Or. 717, 260 P.3d 494 (2011)).

No precedent permits a grant of authority to an agency to write rules governing a wide

swath of the entire health care marketplace, particularly when the agency is not only given the

power to prohibit or allow private conduct, but also to set the terms of that conduct by imposing

whatever conditions the agency wishes.  In that respect, and contrary to Defendants' attempt to

distinguish that case, HB 2362 is similar to the unconstitutional delegation of lawmaking

authority in *City of Damascus*, 266 Or. App. at 444-48.  In *City of Damascus*, the legislature, by

statute, created an administrative structure that authorized only certain private landowners to

change the city's boundary, but did not provide any standard for the exercise of that authority.

Instead, it simply "contain[ed] provisions for a public hearing at which, nominally, members of

the public may be heard."  *Id*. at 446.  The court rejected that "nominal" guidance as

constitutionally insufficient, because "the *practical effect* of the statute is to put the discretionary

decision to withdraw from the city, along with the fact finding" in the hands of those individuals

authorized to administer the law.  *Id.*

Similarly, in *Van Winkle v. Fred Meyer, Inc*., 151 Or. 455, 460, 463, 49 P.2d 1140

(1935), the court held invalid a statute that made into law Governor-approved price-fixing

agreements (with no other requirement other than a majority of market participants agreed to

them).  The court observed that article I, section 21, of the Oregon Constitution prohibits the

legislature from "confer[ring] upon any person, officer, agency or tribunal the power to

determine what the law shall be."  *Id*. at 462; *see also City of Damascus*, 266 Or. App. at 441

("The difference between impermissible delegation of the power to make law and permissible delegation of the power to determine the existence of facts or circumstances described by the law, turns on whether the law contains objective legislative standards or a fully expressed legislative policy that guides the exercise of the delegated authority.") (citing cases).

HB 2362 has the same unconstitutional effect. In Defendants' view, the agency determines what the law shall be, and the only limitation is not any real limitation at all—ensuring that the law made by the agency is consistent with promotion of the public interest. *See Damascus*, 266 Or. App. at 448 ("Although HB 4029 provides criteria to determine *which* landowners are given the authority to change the city's boundary, those criteria do not provide any guidance to the eligible landowners on the exercise of *their* authority *to change* the boundary. It is the delegation of the latter authority that is impermissible."). But the legislature did not provide any content to what the public interest is or may be in the context of OHA's otherwise limitless authority to regulate the health care marketplace. Notwithstanding the broad impact of HB 2362 and its potential effects across the entire state, the legislature did not provide OHA with even a general normative standard, or understandable direction, before delegating to the agency the Herculean task of determining what conduct would be allowed or prohibited.

### 3.    Federal Non-Delegation Authorities Are Instructive and Support Plaintiff

Additional authorities support Plaintiff's non-delegation argument. As indicated, Oregon courts regularly examine federal constitutional analogues—both text and case law—when interpreting the Oregon Constitution. For example, Oregon courts look to the Fifth Amendment and its case law to resolve disputes involving Oregon eminent domain under article 1, section 18, of the Oregon Constitution. *Coast Range Conifers, LLC v. State ex rel. Or. State Bd. of Forestry*, 339 Or. 136, 117 P.3d 990 (2005) (interpreting article 1, section 18, and looking to the U.S. and

two states' constitutions as context, because those were the only Takings Clauses in existence when Oregon enacted its constitution).  For that reason, although Defendants attempt to dismiss them, federal non-delegation cases and authorities are instructive, particularly given the Oregon Constitution's use of the same text, "legislative power," in its Vesting Clause.

As the Supreme Court has explained, the framers of the United States Constitution understood the term "legislative power" "to mean the power to adopt generally applicable rules of conduct governing future actions by private persons." *Gundy*, 139 S. Ct. at 2133 (Gorsuch, J., dissenting); *see id*. 2133-35 (discussing original understanding).  Pursuant to that understanding, so long as Congress "prescribes the rule governing private conduct," it may (1) "authorize another branch to 'fill up the details'"; (2) "make the application of that rule depend on executive fact-finding"; or (3) "assign the executive . . . branch[] certain non-legislative responsibilities." *Id*. at 2136-37.  But the "power to make 'law'" in the "sense of generally applicable rules of private conduct" was "the core of the legislative power that the Framers sought to protect from consolidation with the executive." *Dep't of Transp. V. Ass'n of Am. R.Rs.*, 575 U.S. 43, 76 (2015) (Thomas, J., concurring in the judgment); *see also Davilla*, 234 Or. App. at 645 (Oregon Constitution "prohibit[s] the delegation of legislative power to make laws").  And that limitation is even more important to respect when the agency's delegated legislative authority potentially affects a significant portion of society and the resolution of major questions.  *See Paul v. United States*, 140 S. Ct. 342, 342 (2019) (Kavanaugh, J., statement respecting denial of certiorari) (federal article I forbids "congressional delegations to agencies of authority to decide major policy questions"); Ilan Wurman, *Nondelegation at the Founding*, 130 Yale L.J. 1490, 1497 (2021) ("Overall, the picture the Founding-era history paints is one of a nondelegation doctrine

whereby Congress could not delegate to the Executive decisions over 'important subjects' . . . .").

The Supreme Court has applied those principles to limit the delegation of legislative power to prohibit conduct in the first instance.  In *Panama Refining Co. v. Ryan*, 293 U.S. 388, 417-18 (1935), the Court held unconstitutional a provision of the National Industrial Recovery Act that gave the President the power, if he deemed it appropriate, to ban the interstate transportation of petroleum.  The Court held that this provision violated federal article I because Congress was trying to abdicate its responsibility for making the difficult policy choice about whether to enact such a ban.  The law "did not declare in what circumstances that transportation should be forbidden," and thereby "left the matter to the President without standard or rule, to be dealt with as he pleased."  *Id.* at 418; *see also A.L.A. Schecter Poultry Corp. v. United States*, 295 U.S. 495, 536 (1935) (statute empowering President to enact "codes of fair competition" held unconstitutional); *id.* at 553 (Cardozo, J., concurring) ("If that conception shall prevail, anything that Congress may do within the limits of the commerce clause for the betterment of business may be done by the President upon the recommendation of a trade association by calling it a code.  This is delegation running riot.").

Ultimately, the principle animating the non-delegation doctrine is that the legislature must make the fundamental legislative choices, as the government branch "most responsive to the will of the people."  *Tiger Lily, LLC v. HUD*, 5 F.4th 666, 674 (6th Cir. 2021) (Thapar, J., concurring).  Legislators have every "incentive to insulate [themselves] from the consequences of hard choices" by delegating broad authority to obscure agencies, thereby "shifting responsibility to a less accountable branch."  *Id.*  For example, "[l]egislators might seek to take credit for addressing a pressing social problem by sending it to the executive for resolution,

while at the same time blaming the executive for the problems that attend whatever measures he chooses to pursue." *Gundy*, 139 S. Ct. at 2135 (Gorsuch, J., dissenting).

For all those reasons, HB 2362 cannot be reconciled with the Oregon Constitution's limits on the delegation of legislative power. The legislature granted to OHA the legislative power to regulate the entire health care marketplace, with nothing more than the vague aspiration of acting consistent with promoting the public interest to guide it. Even the most generous and permissive reading of the constitutional limitations on delegations does not permit such an extraordinary abdication of lawmaking authority.

### 4. The Non-Delegation Authorities Cited by Defendants Are Inapposite

None of the non-delegation cases on which Defendants rely blesses such an extraordinary and amorphous delegation of legislative power. In *State v. Reasoner*, 313 Or. App. 139, 495 P.3d 686 (2021), *review denied*, 369 Or. 209 (2022), the plaintiff argued only that the waiver of juvenile cases involving the use or operation of a motor vehicle to criminal or municipal court "violates the Oregon Constitution because it lacks sufficient substantive and procedural safeguards." 313 Or. App. at 145. The court rejected that argument, initially questioning whether the decision to waive cases was the exercise of legislative power in the first instance and explaining the common-law authority of courts to announce similar rules. *Id*. at 146 ("[D]efendant may be too quick in arguing that the power to determine prospectively when a class of juveniles may be held criminally responsible is an exclusive legislative prerogative."). Assuming that the decision to waive motor code violations was an exercise of legislative authority, the court "turn[ed] to whether ORS 419C.370 contains sufficient safeguards to comply with Oregon's separation-of-powers doctrine." *Id*. at 147. On that question, the court upheld the statute for two reasons. First, as in *MacPherson v. Department of Administrative Services*, 340

Or. 117, 135-36, 130 P.3d 308 (2006), the statute simply delegated to the court a choice between two alternatives. Although it could be deemed "legislative," the decision which alternative to choose was clear, as was a central consideration—the administrative capacity of courts—to guide that decision, as well as the safeguards allowing for the change or reversal of that decision. *Id.* at 147-49. For all those reasons, the court rejected the defendants' argument.

The circumstances and analysis in *Reasoner* are inapposite. Establishing the criteria to be used that will allow or prohibit material change transactions, with no guidance other than that such rules should "promote the public interest," is nothing like the binary choice given to courts to deal with juvenile cases as an administrative matter or the attendant circumstances.

The court's opinion in *Warren*, 222 Or. 307, supports OAHHS's argument. In *Warren*, the legislature delegated the task of adopting building codes to county governing bodies. *Id.* at 312. In assessing the constitutionality of that choice, the court concluded that the statute contained adequate standards to guide administrative action, noting that the statute not only expressed the standard in "general terms," but related to and provided for "specific standards for the construction of buildings" against which the administrative action could be tested. *Id.* at 313-15. As the Oregon Court of Appeals later observed, the delegation was valid "because the building code provided objective criteria to be applied by an inspector, and the statute required availability of an administrative-level appeal of an inspector's actions." *City of Damascus*, 266 Or. App. at 442.

Finally, OHA's reference to the *Springfield Education Association v. Springfield School District No.* 19, 290 Or. 217, 621 P.2d 547 (1980), doctrine and delegative terms is a red herring. (Def. Opp. at 18.) *Springfield* and its progeny deal with situations in which a court determines the amount of authority given to an agency when that agency is engaged in fact-finding or

adjudication.  *See Coffey v. Bd. of Geologist Examiners*, 348 Or. 494, 498 n.5, 235 P.3d 678

(2010) ("In [*Springfield*], this court, relying on earlier cases, including *Megdal*, concluded that it

would determine the nature and scope of agency authority delegated by statutes, including

whether a statute required agency rulemaking in advance of adjudication, by examining three

types of statutory terms, 'exact,' 'inexact,' and 'delegative.'").  Those cases are not about the

non-delegation doctrine as a matter of constitutional law; they are administrative law cases

dealing with agency decision-making or enforcement in response to statutory standards.

**F.      HB 2362 Does Not Include Adequate Procedural Safeguards**

In response to Plaintiff's argument that HB 2362 does not include sufficient procedural

safeguards, OHA incorrectly asserts two primary arguments:  (1) that the private boards created

under HB 2362 do not have any meaningful statutory functions; and (2) regardless, the Oregon

Administrative Procedures Act (the "APA") and other laws provide such guardrails.  Both

arguments are wrong.

**1.      OHA Misinterprets the Power Delegated to the Private Boards**

Contrary to OHA's arguments, the private boards employed by the legislature under HB

2362 have fundamentally important roles in administering that law.  First, the "community-

review board" has the authority to "conduct [the] comprehensive review" of a proposed

"material change transaction."  Or. Rev. Stat. § 415.501(7)(a).  Although OHA now argues that

this delegation of authority to private individuals is harmless because the agency purportedly

may simply reject any of the review board's findings, OHA's ultimate decision on a proposed

transaction must be based solely on "adopting or modifying the recommendations of the review

board" and explaining any modifications from those recommendations, Or. Rev. Stat.

§ 415.501(18). Therefore, the private community-review board's work product provides the basis for approving or denying proposed transactions.

The same holds true for the Oregon Health Policy Board ("OHPB"). OHPB has the sole responsibility for defining a key substantive term under HB 2362: "health equity." Or. Rev. Stat. § 415.500(5). The law does not, however, also give OHA or the legislature any authority to reject or override OHPB's definition. Nor does it provide OHPB with any guidance on how, exactly, that statutory term should be defined under HB 2362. To ensure that members on these boards do not taint the process with any personal biases, the legislature should have included a conflict-of-interest provision in HB 2362.

### 2.    Other Existing Statutory "Safeguards" Are Insufficient

While attempting to minimize the role of private individuals in HB 2362's review process, OHA simultaneously identifies three sources of law that, in its view, satisfy the non-delegation doctrine: (1) the purported "conflict" provision of HB 2362 itself; (2) Oregon's government ethics law; and (3) the APA. For the following reasons, however, none of those relieve the legislature of its constitutional obligation to include protections for regulated entities in HB 2362.

The existing "conflict" provision under HB 2362 is insufficient to protect against arbitrary actions by private individuals. *Corvallis Lodge No. 1411 Loyal Order of Moose v. Or. Liquor Control Comm'n*, 67 Or. App. 15, 20, 677 P.2d 76 (1984). That provision requires members of the board only to "file a conflict of interest notice and the notice shall be made public." The legislature did not, however, define what a conflict under HB 2362 is. Nor did it require that "conflicted" board members do anything other than "file a notice." Therefore, that

provision does not provide the required statutory protections for health care entities subject to arbitrary treatment during the review process.

Oregon's existing government ethics law and the APA do not allow the circumvention of the constitutional requirement that the legislature provide specific safeguards in a statute delegating important legislative functions to private individuals. *Corvallis*, 67 Or. App. at 20. For example, Oregon has had a separate government ethics law since 1974. 1974 Or. Laws ch. 72, § 2. Despite that fact and the existence of this law, however, Oregon courts nonetheless have concluded that (as recently as 2014), where a statute delegates legislative authority to private individuals, additional ethical safeguards *in that statute* are necessary. *See Damascus*, 266 Or. App. at 450 ("We also conclude that HB 4029 fails under the second line of delegation cases because it delegates to self-interested private landowners the fact-finding function of determining their own eligibility under the law . . . .").

The same holds true for the APA, which has been in effect in Oregon since 1957. 1957 Or. Laws ch. 717, § 12; *see Corvallis*, 67 Or. App. at 20-22 (concluding that, despite the availability of APA review, the non-delegation doctrine required additional procedural protections). Accordingly, the legislature may not avoid including more robust procedural safeguards in HB 2362 simply because it already has enacted other laws with general procedural protections. *See Askew v. Cross Key Waterways*, 372 So. 2d 913, 925 (Fla. 1978) (rejecting the defendant's argument that the Florida Administrative Procedures Act cured a statute's non-delegation problem).

Additionally, because the legislature enacted HB 2362 in such a vague and broad manner, the availability of APA review is insufficient to provide any safeguards here. The scope of the APA review is limited to ensuring that state administrative agencies—like OHA—stay within the

bounds of whatever authority the legislature has granted. For example, Oregon Revised Statutes § 183.400 authorizes aggrieved parties to challenge the substance of a promulgated administrative rule, but only on the grounds that the *rule itself* either exceeds the agency's statutory or constitutional authority. In other words, the APA assumes that the legislature, in granting authority to an executive agency, has fulfilled its constitutional duty to place cognizable limits on such authority, as is required under the non-delegation doctrine. In this case, however, *the legislature* failed to do so. As such, the APA does not provide any meaningful way to challenge either (a) the legislature's unconstitutional actions in passing HB 2362 itself, or (b) OHA's exercise of its functionally unlimited statutory authority to regulate the business activities of health care entities (as such term is defined by the agency itself).

Defendants' reliance on the APA contested-case provisions is also misplaced. Under the APA, parties subject to *an administrative agency's* order or action may seek judicial review of the agency's decision. So, for example, if *OHA* operated outside of the scope of HB 2362 or the constitution, an interested party could seek review of *that agency's* action under the APA. *See* Or. Rev. Stat. § 183.484(5)(b) (authorizing courts to remand an agency order if "*the agency's* exercise of discretion" is unlawful (emphasis added)). The APA, however, does not permit a challenge the actions of the *state legislature*, which has enacted an unconstitutional law. In addition, judicial review under the APA is insufficient here because it is limited to whether an agency has acted outside the "range of discretion delegated to the agency by law." Or. Rev. Stat. § 183.484(5)(b). But, again, this assumes that the legislature has articulated cognizable limits on the agency's discretionary authority. Here, HB 2362 empowers the agency to place whatever conditions it wishes on an undefined universe of health care entities to achieve any end it

believes would promote the "public interest."  Thus, OHA arguably may never act outside the scope of its legislatively delegated authority, thereby avoiding any real review under the APA.

Ultimately, Defendants appear to argue that, when a state or federal APA exists, which is everywhere, there can never be a procedural non-delegation challenge.  That, however, is not the law.  Defendants have not provided any cases suggesting that the APA satisfies the legislature's responsibility to safely and clearly delegate the administration of a statute.  And, there are many Oregon cases that, since the creation of the APA, have concluded additional procedural protections are required when private individuals are delegated lawmaking authority.  Here, the legislature delegated its lawmaking role to OHA and various private individuals, which is not allowed under the non-delegation doctrine.

### III.  CONCLUSION

For the reasons stated in Plaintiff's Cross-Motion and herein, OAHHS respectfully requests that the Court deny Defendants' Motion and grant Plaintiff's Cross-Motion.


DATED:    September 21, 2023               *s/ Brad S. Daniels*
                                           _____
                                           BRAD S. DANIELS, OSB No. 025178
                                           brad.daniels@stoel.com
                                           NATHAN R. MORALES, OSB No. 145763
                                           nathan.morales@stoel.com

                                           Attorneys for Plaintiff