BRAD S. DANIELS, OSB No. 025178
brad.daniels@stoel.com
NATHAN R. MORALES, OSB No. 145763
nathan.morales@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OREGON ASSOCIATION OF HOSPITALS AND HEALTH SYSTEMS, | Case No.:  3:22-cv-01486-SI |
| Plaintiff, | |
| v. | PLAINTIFF'S SUPPLEMENTAL BRIEFING IN RESPONSE TO MARCH 11, 2024, ORDER |
| STATE OF OREGON; OREGON HEALTH AUTHORITY; and SEJAL HATHI, in her official capacity as Director of Oregon Health Authority, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND .............................................................................................. 3

III.    ARGUMENT .................................................................................................... 5

      A.      The Association Has Both Organizational and Representational Standing to Challenge to HB 2362 (Court Question Nos. 1, 4). ............................................. 5

           1.      The Association Has Demonstrated Organizational Standing. .................. 6

           2.      The Association Has Demonstrated Representational standing. ............... 9

      B.      Facial Vagueness Challenges Are Permitted Outside the First Amendment Context (Court Question No. 2). .......................................................................... 12

      C.      The Association Does Not Need to Allege Infringement of a Separate Constitutionally Protected Interest to Bring a Facial Vagueness Challenge (Court Question No. 3). ..................................................................................... 14

      D.      The "No Set of Circumstances" Test Should Not Apply to the Association's Facial Vagueness Challenge (Court's Question No. 5). ...................................... 17

IV.     CONCLUSION ................................................................................................ 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americans for Prosperity Found. v. Bonta*,
    594 U.S. ___, 141 S. Ct. 2373, 210 L. Ed. 2d 716 (2021)......................................................18

*Arizona v. Yellen*,
    34 F.4th 841 (9th Cir. 2022) ....................................................................................................11

*Carrico v. City & Cnty. of San Francisco*,
    656 F.3d 1002 (9th Cir. 2011) ...................................................................................................7

*City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*,
    596 U.S. 61, 142 S. Ct. 1464, 212 L. Ed. 2d 418 (2022) (Alito, J. concurring in part,
    dissenting in part).....................................................................................................................18

*City of Chicago v. Morales*,
    527 U.S. 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999).....................................................12, 15

*City of Los Angeles v. Patel*,
    576 U.S. 409, 135 S. Ct. 2443, 192 L. Ed. 2d 435 (2015)......................................................12

*Coates v. Cincinnati*,
    402 U.S. 611 (1971)..................................................................................................................12

*Dias v. City & Cnty. of Denver*,
    567 F.3d 1169 (10th Cir. 2009) ...............................................................................................15

*Dickerson v. Napolitano*,
    604 F.3d 732 (2d Cir. 2010).................................................................................................14, 20

*Dobbs v. Jackson Women's Health Organization*,
    ___ U.S. ___, 142 S. Ct. 2228, 213 L.Ed.2d 545 (2022).......................................................11

*Doe v. U.S. Immigration and Customs Enforcement*,
    490 F. Supp. 3d 672 (S.D.N.Y. 2020)..................................................................................8, 9

*E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) .....................................................................................................7

*Fair Hous. of Marin v. Combs*,
    285 F.3d 899, 905 (9th Cir. 2002) .............................................................................................5

*Farrell v. Burke*,
   449 F.3d 470 (2d Cir. 2006) ..................................................................................13

*Gallagher v. City of Clayton*,
   699 F.3d 1013 (8th Cir. 2012) .........................................................................13, 14

*Giaccio v. State of Pa.*,
   382 U.S. 399, 86 S. Ct. 518, 15 L. Ed. 2d 447 (1966) ....................................12, 17

*Guerrero v. Whitaker*,
   908 F.3d 541 (9th Cir. 2018) ................................................................................20

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363, 102 S. Ct. 1114, 71 L.Ed.2d 214 (1982) ..........................................7

*Hotel & Motel Ass'n of Oakland v. City of Oakland*,
   344 F.3d 959 (9th Cir. 2003) ................................................................................13

*Hunt v. Washington State Apple Advert. Comm'n*,
   432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977) .......................................5, 9

*Isaacson v. Mayes*,
   84 F.4th 1089 (9th Cir. 2023) ...............................................................................11

*Johnson v. United States*,
   576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) ............................. *passim*

*Koons v. Platkin*,
   673 F. Supp. 3d 515 (D.N.J. 2023) .......................................................................20

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ................................................................................5

*Little Arm Inc. v. Adams*,
   13 F. Supp. 3d 914 (S.D. Ind. 2014) .....................................................................16

*Lopez v. Candaele*,
   630 F.3d 775 (9th Cir. 2010) ..................................................................................8

*Martin v. Lloyd*,
   700 F.3d 132 (4th Cir. 2012) ................................................................................15

*Miller v. Becerra*,
   488 F. Supp.3d 949 (S.D. Cal. 2020) ....................................................................10

*Monarch Content Mgmt. LLC v. Arizona Dep't of Gaming*,
   971 F.3d 1021 (9th Cir. 2020) ..............................................................................15

*Nat'l Coal. Gov't of Union of Burma v. Unocal, Inc.*,
   176 F.R.D. 329 (C.D. Cal. 1997) ........................................................................7

*Nat'l Council of La Raza v. Cegavske*,
   800 F.3d 1032 (9th Cir. 2015) .........................................................................5

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015).............................................................................15

*Ohio Coal Ass'n v. Perez*,
   192 F. Supp. 3d 882 (S.D. Ohio 2016) ..........................................................12

*Peace Ranch, LLC v. Bonta*,
   93 F.4th 482 (9th Cir. 2024) .........................................................................8, 11

*Pizza di Joey, LLC v. Mayor of Baltimore*,
   235 A.3d 873 (Md. 2020) ................................................................................16

*Rodriguez v. City of San Jose*,
   930 F.3d 1123 (9th Cir. 2019) .........................................................................5

*Sessions v. Dimaya*,
   584 U.S. 148, 138 S. Ct. 1204, 200 L.Ed.2d 549 (2018)...........................12, 19, 20

*Skyline Wesleyan Church v. California Dep't of Managed Health Care*,
   968 F.3d 738 (9th Cir. 2020) ..........................................................................9

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   600 U.S. 181, 143 S. Ct. 2141, 216 L. Ed. 2d 857 (2023).......................................5

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014).......................................9

*Tucson v. City of Seattle*,
   91 F.4th 1318 (9th Cir. 2024) .........................................................................21

*United States v. Cobbs*,
   No. CR22-4069-LTS, 2023 WL 8599708 (N.D. Iowa Dec. 12, 2023) ................................16

*United States v. Cook*,
   914 F.3d 545 (7th Cir.), *vacated on other grounds*, ___ U.S. ___, 140 S. Ct. 41,
   205 L.Ed.2d 4 (2019)......................................................................................19

*United States v. Cook*,
   970 F.3d 866 (7th Cir. 2020) ..........................................................................13

*United States v. Davis*,
    ___ U.S. ___, 139 S. Ct. 2319, 204 L.Ed.2d 757 (2019)................................................12, 17

*United States v. Hansen*,
    143 S. Ct. 1932 (2023).................................................................................................21

*United States v. Kim*,
    449 F.3d 933, 942 (9th Cir. 2006) ...............................................................................14

*United States v. Lira*,
    No. 22 CR. 151 (LGS), 2022 WL 17417129 (S.D.N.Y. Dec. 5, 2022)................................20

*United States v. Other Med.*,
    596 F.3d 677 (9th Cir. 2010) .......................................................................................14

*United States v. Requena*,
    980 F.3d 30 (2d Cir. 2020)..........................................................................................20

*United States v. Rybicki*,
    354 F3d 124 (2d Cir. 2003).....................................................................................13, 20

*United States v. Salerno*,
    481 U.S. 739, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987)..................................18, 19, 20, 21

*United States v. Stevens*,
    559 U.S. 460, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010).......................................18

*United States v. Stupka*,
    418 F. Supp. 3d 402 (N.D. Iowa 2019).....................................................................16, 17

*United States v. Williams*,
    553 U.S. 285, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)......................................22

*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) ......................................................................................8

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982)...................................13, 17, 18, 19

*Virginia v. American Booksellers Ass'n., Inc.*,
    484 U.S. 383, 108 S. Ct. 636, 98 L. Ed. 2d 782....................................................12

*Williams v. Wofford*,
    No. 22-35628, 2023 WL 5453344 (9th Cir. Aug. 24, 2023) ...............................................14

**Other Authorities**

Due Process Clause ................................................................................................11, 15, 17

First Amendment ................................................................................................... *passim*

Second Amendment ........................................................................................................1

Fourteenth Amendment .................................................................................................15

Oregon Health Authority, Transaction Notices and Reviews, *available at*
  https://www.oregon.gov/oha/hpa/hp/pages/hcmo-transaction-notices-and-reviews.aspx .....4, 5

Plaintiff Oregon Association of Hospitals and Health Systems d/b/a Hospital Association of Oregon (the "Association"), respectfully submits the following supplemental briefing ordered by the Court on March 11, 2024.  The Association's supplemental briefing is supported by the concurrently filed Declaration of Rebecca Hultberg in Support of Plaintiff's Supplemental Briefing in Response to March 11, 2024, Order ("Hultberg Dec.").

## I.  INTRODUCTION

On March 11, 2024, the Court entered an Order directing the parties to address several questions in advance of the oral argument scheduled for April 3, 2024.  (ECF No. 41.)  The Association's responses to those questions and issues are:

1.      The Association has both organizational and representational standing to bring a facial, pre-enforcement vagueness challenge to HB 2362.  If any organization or entity can bring such a challenge, the Association has standing to do so.  (Court's Question Nos. 1 and 4.)

2.      Facial vagueness challenges are permitted outside the context of the First Amendment.  (Court Question No. 2.)

3.      Outside the context of the First Amendment, and even when a separate constitutional interest such as the Second Amendment is not at issue, there is a narrow, but viable, path to challenging statutes on facial vagueness grounds.  Recent Supreme Court cases recognize that vagueness is different, at least with respect to regulations that impose penalties and are alleged to be so standardless that they encourage arbitrary enforcement without fair notice.  The constitutional interest in not being subject to penalties or deprived of property without due process of law is itself of sufficient importance to allow for a facial vagueness challenge.  (Court Question No. 3.)

4.      The "no set of circumstances" test has been eroded over time and, specifically in the context of this type of vagueness challenge, it is not the appropriate test.  Instead, the test to apply is whether any standard of conduct is specified at all, even in the most general and normative terms.  A statute lacking that basic feature has "no core" and is subject to facial attack. (Court Question No. 5.)

In sum, the Court's questions appropriately consider whether the Association's challenge is cognizable in the first instance.  The answer to that inquiry is "yes"—from the perspective of standing and on the merits.

As the Association well recognizes, this case is not a typical vagueness challenge. Notwithstanding the possibility of civil penalties, laws regulating economic or similar activity are not subject to frequent facial attack.  HB 2362, however, is a uniquely flawed statute.  Unlike statutes that have a broad, but defined, normative standard, here the legislature failed to include *any* meaningful standard for Defendants ("OHA") to apply when administering HB 2362. Instead, throughout the law, the legislature stated that the applicable statutory standards are "whatever OHA decides."  In that circumstance, where the vagueness of a law is so substantial that it evidences a complete delegation of legislative policy- and lawmaking in the first instance, the Association (and its members) have standing to bring a facial constitutional challenge, regardless of whether the law also implicates other factors like the First Amendment or the administration of criminal justice.  Accordingly, this Court should address the merits of Plaintiff's facial challenge to HB 2362 and conclude that it is the rare civil statute that must be invalidated as unconstitutionally vague.

## II.  BACKGROUND

The Association is a statewide, nonprofit association founded in 1934.  (Hultberg Dec. ¶ 2.)  The Association's members consist of Oregon's 61 community hospitals.  (*Id*.)  In general, the Association's mission is to ensure all Oregonians have excellent, dependable hospitals in their communities today, tomorrow, and for decades to come.  (*Id*. ¶ 2.)  The Association furthers this mission by supporting Oregon's hospitals so they can support their communities; educating government officials and the public on the state's health landscape; and working collaboratively with policymakers, community-based organizations and the health care community to build consensus on and advance health care policy benefiting the state's four million residents.  (*Id*. ¶ 3.)

The passage and enforcement of HB 2362 has materially impacted the Association and its ability to pursue its mission.  (*Id*. ¶ 4.)  Rather than address the many health policy issues affecting its members and Oregon communities, the Association has had to divert its resources—including money, staff time, and other resources—to address HB 2362.  (*Id*.)  The Association's diversion of resources has included:  addressing members' concerns and questions about HB 2362, and how it could be interpreted and administered, through member outreach, communications, and education; expending staff time and resources attempting to understand and explain the law and OHA's varying interpretive positions; and interacting with OHA and the legislature to address the law's infirmities.  (*Id*. ¶ 5.)  The Association's costs of its member-outreach and education efforts related to HB 2362 will continue.  (*Id*.)

The Association devoted those resources to HB 2362 in light of the law's broad and uncertain scope, and the significant impacts of the law and its enforcement on the Association's members, who have expressed substantial concerns about the impact and meaning of HB 2362.

(*Id.* ¶ 4.)  If HB 2362 had not been passed and the HCMO had not been created, the Association would have been able to devote more time and resources to the myriad other priorities, emergencies, and pressing policy issues affecting Oregon hospitals.  In at least those ways, HB 2362 has impaired the Association's ability to pursue other priorities in pursuit of its overall mission and goals.  (*Id.* ¶ 6.)

HB 2362 and the HCMO also directly affect the activities of the Association's members. (*Id.* ¶¶ 7-8.)  As outlined by the Association in its summary judgment briefs (ECF Nos. 31, 39), HB 2362 creates a new regulatory process for any health care entity that wants to enter into a new relationship, without defining who is subject to the law's regulations and penalties, which type of relationships trigger regulatory review under the new law, or what conditions will be placed on proposed transactions.  Currently, Oregon's health care system is struggling, and the Association's members are facing a variety of challenges that require immediate and creative attention, including exploring potential transactions and contracts.  (*See id.* ¶¶ 6-8.)  The vague and uncertain requirements of HB 2362 and the potential for enforcement, civil penalties, and conditions imposed by OHA have had a material effect on the Association's members' decision-making regarding transactions potentially subject to the law's requirements.  (*Id.* ¶ 7.)

The Association's members will investigate and pursue transactions potentially subject to HB 2362 in the coming year.  (*Id.* ¶ 8.)  According OHA's website, for example:  "On August 16, 2023, OHSU and Legacy Health, two large health systems in Oregon, announced plans to combine.  To date, OHA has not received a notice related to this transaction and has not begun a HCMO review. (Per HCMO regulations, OHA begins to review a transaction after a notice is received.)."  Oregon Health Authority, Transaction Notices and Reviews, *available at* https://www.oregon.gov/oha/hpa/hp/pages/hcmo-transaction-notices-and-reviews.aspx.  (*Id.*)

The Association's members will have to expend resources to determine whether and how the law may apply, to assess their compliance obligations, and to avoid potential penalties. (*Id.*)  That is particularly the case given OHA's active enforcement of the law and the HCMO program.  (*Id.* ¶ 9.)

### III.  ARGUMENT

**A.  The Association Has Both Organizational and Representational Standing to Challenge to HB 2362 (Court Question Nos. 1, 4).**

For purposes of establishing organizational standing to challenge HB 2362, the Association must "'establish an injury" by showing that "it suffered 'both a diversion of its resources and a frustration of its mission.'"  *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)).  The Association need only demonstrate that the law's enactment "run[s] counter to the organization's purpose, that the organization seeks broad relief against the defendant's actions, and that granting relief would allow the organization to redirect resources currently spent combating the specific challenged conduct to other activities that would advance its mission."  *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019); *see also Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

In addition to organizational standing, an organization may assert representational standing by demonstrating that "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199, 143 S. Ct. 2141, 2157, 216 L. Ed. 2d 857 (2023) (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383

(1977)).  Here, Association has *both* organizational and representational standing to challenge

HB 2362.[1]

### 1.    The Association Has Demonstrated Organizational Standing.

The Association has sufficiently established organizational standing by alleging that the

Association has been harmed by a diversion of its resources and frustration of its mission as a

result of the enactment of HB 2362.  The Association alleged:

> [The Association's] Mission Statement is to '[p]rovide leadership
> in health policy through analysis, advocacy and member
> engagement to strengthen Oregon hospitals and health systems,
> deliver quality care and best serve our communities.'  The
> Association spends its own resources to effect that mission.  Prior
> to, during, and after the enactment of HB 2362, the Association
> diverted its resources to address the unconstitutional policies and
> practices included in HB 2362.  But for those unconstitutional
> policies and practices, the Association would have spent its
> resources elsewhere.

(ECF No. 14 ¶ 9.)  And regarding frustration of the Association's mission, it alleged:

> As noted, a core component of the Association's Mission
> Statement is "to strengthen Oregon hospitals and health systems,
> deliver quality care and best serve our communities."  HB 2362,
> however, weakens Oregon's hospitals and health systems by
> deterring innovations, increasing risk and cost, and reducing their
> ability to provide quality health care and serve our communities,
> thus frustrating the Association's mission.

(*Id.* ¶ 10.)

---

[1] Opinions have used varying terminology to discuss an association's standing to sue on its own
behalf and in a representational capacity on behalf of its members.  For purposes of this
response, the Association refers to the former approach, or direct standing, as "organizational
standing" and the latter as "representational standing."

As the Association's President and Chief Executive Officer Rebecca Hultberg further outlines, HB 2362 has had a direct impact on the Association.[2]  (Hultberg Dec. ¶¶ 3-6.)  Consistent with its mission, the Association would have devoted more time and resources to the myriad other priorities, emergencies, and pressing policy issues affecting Oregon hospitals if HB 2362 had not been passed.  HB 2362 has impaired the Association's ability to pursue its mission and goals, however, by requiring the diversion of resources to address its members' concerns and questions about the law, to educate its members, and to understand and address the law's meaning and enforcement with its members, the agency, and the legislature.

In at least those ways, HB 2362 has "perceptibly impaired" the Association's ability to pursue its mission by causing it to devote resources that otherwise would have been devoted to pursuing its core mission.  Particularly given the many well-known and documented challenges facing the Oregon health care system that the Association would otherwise be able to address, the Association does not need to demonstrate more regarding the potential enforcement of HB 2362 for organizational standing.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368-79, 102 S. Ct. 1114, 71 L.Ed.2d 214 (1982) (organization had direct standing to challenge law based only on frustration of organizational purpose and drain of resources); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) (organization had standing to challenge a rule that frustrated its mission of providing legal aid to asylum seekers).

The cases requiring a plaintiff—whether individual or entity—to allege additional facts of "imminence" in a pre-enforcement action do so only when that plaintiff is a regulated party

---

[2] *See Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011) (considering supplemental briefs on standing issues); *Nat'l Coal. Gov't of Union of Burma v. Unocal, Inc*., 176 F.R.D. 329, 338 (C.D. Cal. 1997) (stating that it is appropriate to consider supplemental information in response to motion to dismiss on standing grounds).

seeking to redress harms flowing from any actual enforcement.  For example, in *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 484-85 (9th Cir. 2024), the plaintiff was an LLC that owned and operated a mobile-home park and challenged a state rent-control law for mobile homes.  The plaintiff brought a lawsuit because, "if it raise[d] mobile home rents more than [the new law] allows, the Attorney General will enforce [the law] against it and seek sanctions."  Accordingly, because the plaintiff was at risk of enforcement, it made sense for the court in that case to first require that the plaintiff demonstrate the imminence of any such actions on the part of the defendants.  Likewise, in *Lopez v. Candaele*, 630 F.3d 775, 780-82 (9th Cir. 2010), the plaintiff, an individual student, challenged the City College's new sexual-harassment policy as applied to students.  The court required the plaintiff student to allege imminence for purposes of standing.  Here, at least to establish organizational standing, the Association does not need to demonstrate anything other than a frustration of its mission and diversion of its resources because of the enactment of HB 2362, which it has done.

Case law supports the conclusion that an organization may establish standing in a pre-enforcement challenge based only on frustration of purpose or diverted resources, and not the imminence of any enforcement.  For example, *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013) and *Doe v. U.S. Immigration and Customs Enforcement*, 490 F. Supp. 3d 672, 681 (S.D.N.Y. 2020) both involved a combination of individual and organizational plaintiffs.  The defendants challenged the standing of all.  Each of the organizational plaintiffs in those cases sought to establish organizational standing only, though a frustration of their mission and diversion of their resources.  *Valle del Sol*, 732 F.3d at 1016-19; *Doe*, 504 F. Supp. 3d at 681-84.  When the courts conducted the standing analysis for both the individual and organizational plaintiffs, they required only the individuals to demonstrate an imminence of enforcement.  *Valle*

*del Sol*, 732 F.3d at 1016-19; *Doe*, 504 F. Supp. 3d at 681-84.  In contrast, the courts concluded that all the organizations had organizational standing, because the organizations' theory of standing (like the Association's first argument here) was not based on enforcement, but the impact of an unconstitutional law on their missions.  *Id.*  For the same reasons, the Association does not need to also demonstrate that OHA will likely enforce HB 2362 against the Association directly.

### 2.    The Association Has Demonstrated Representational standing.

The Association also independently has representational standing to bring this lawsuit on behalf of its members.  An association has standing to sue on behalf of its members if (1) "its members would otherwise have standing to sue in their own right," (2) "the interests it seeks to protect are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt*, 432 U.S. at 343.  The second and third factors are easily satisfied in this case.  The enforcement and impacts of HB 2362 is germane to the Association's purpose as a leader in Oregon health policy and activities on behalf of its hospital membership.  Further, because the Association is pursuing a facial challenge, the participation of the individual members is unnecessary.

To demonstrate standing to challenge a law pre-enforcement, the Association must establish that enforcement of HB 2362 is sufficiently imminent, by demonstrating that (1) its members have an intention to engage in a course of conduct arguably affected with a constitutional interest; (2) the course of conduct is arguably proscribed by the challenged law, and (3) there is a substantial threat of enforcement.  *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738 (9th Cir. 2020); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014) (articulating this

requirement for pre-enforcement standing).  Here, the Association has met all three

requirements.

With respect to the first and second factors, the Association has demonstrated that its

members have an intention to engage in a course of conduct that is arguably proscribed by the

challenged law.  Specifically, the Association alleged:

> [The Association]'s members include many of Oregon's hospitals
> and health systems that are subject to the requirements of
> HB 2362.  [The Association]'s members have engaged in and will
> engage in a range of transactions—including contracts, affiliations,
> partnerships, and ventures—designed to maintain or grow access
> to health care and serve their communities.  Many of those
> transactions would have and will likely trigger the requirements of
> HB 2362 . . . .

(ECF No. 14 ¶ 8; *see id.* ¶¶ 20-22 (describing the effects of HB 2362).).  The Association has

further alleged that HB 2362 requires its members to provide notice to OHA before they engage

in any of those transactions, but that the law is unconstitutionally vague concerning which

transactions require such notice, while simultaneously imposing monetary penalties for failing to

do so.  *Id.* ¶¶ 32-33, 42-43, 45-51; *see Miller v. Becerra*, 488 F. Supp.3d 949, 954 (S.D. Cal.

2020) (holding that the plaintiffs sufficiently established pre-enforcement standing to challenge

an assault-weapon law by alleging "that they wish to have, acquire, possess, and lawfully use

these firearms deemed to be assault weapons").  The Association's President and Chief

Executive Officer Hultberg further confirms that "the Association's members will investigate

and pursue transactions potentially subject to HB 2362 in the coming year" and that HB 2362 has

materially affected decision-making regarding transactions potentially subject to the law's

requirements.  (Hultberg ¶¶ 7-8.)  Further, the Association's members "will have to expend

resources to determine whether and how the law may apply, to assess their compliance

obligations, and to avoid potential penalties." (*Id*. ¶ 8)   Thus, the Association's members have expressed an intention to engage in a course of conduct affected and arguably proscribed by the challenged law and have demonstrated a tangible impact sufficient to support standing.

That conduct is sufficiently tied to a constitutional interest for purposes of a pre-enforcement challenge.  In *Isaacson v. Mayes*, 84 F.4th 1089, 1098 (9th Cir. 2023), for example, the district court dismissed physicians' claims on standing grounds because, "their conduct—performing abortions—was no longer 'affected with a constitutional interest' after [*Dobbs v. Jackson Women's Health Organization*, ___ U.S. ___, 142 S. Ct. 2228, 213 L.Ed.2d 545 (2022)]."  The Ninth Circuit reversed and squarely addressed the constitutional interest sufficient to bring a vagueness challenge under the Due Process Clause:

> Plaintiffs need not allege a chilling effect to bring their vagueness claim, and speech is not the only constitutional interest on which Article III standing can be based. A void-for-vagueness challenge is rooted in the Due Process Clause. And an imminent threat to life, liberty, or property interests without due process of law, in violation of the Fifth and Fourteenth Amendments, is a cognizable injury.

*Id*. at 1098-99; *see also Peace Ranch*, 93 F.4th at 488 ("Under Peace Ranch's theories, the ability to raise rents arguably affects a constitutional interest.").

Third and finally, there is a sufficient threat of enforcement of HB 2362 by OHA.  In general, for new laws such as HB 2362, "the history of past enforcement carries little, if any weight."  *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022).  Here, however, even with this relatively new law, OHA has "actively enforced HB 2362 and the HCMO program.  OHA has reported a review of 11 transaction notices in 2023."  (Hultberg Dec. ¶ 9.)  OHA's active administration and enforcement of HB 2362, coupled with the impact of the law on the Association's members' current decision-making, future compliance burdens, and future

transactions, is sufficient to satisfy the last requirement for pre-enforcement standing of its

members. *See Virginia v. American Booksellers Ass'n., Inc.*, 484 U.S. 383, 392, 108 S. Ct. 636,

98 L. Ed. 2d 782 (finding standing because "plaintiffs . . ., if their interpretation of the statute is

correct, will have to take significant and costly compliance measures or risk criminal

prosecution"); *Ohio Coal Ass'n v. Perez*, 192 F. Supp. 3d 882, 902 (S.D. Ohio

2016) ("[A]dditional compliance burdens may serve as an injury in fact."). In addition to

organizational standing, the Association also has representational standing on behalf of its

members.

**B.     Facial Vagueness Challenges Are Permitted Outside the First Amendment Context
         (Court Question No. 2).**

"A facial challenge is an attack on a statute itself as opposed to a particular application,"

*City of Los Angeles v. Patel*, 576 U.S. 409, 415, 135 S. Ct. 2443, 192 L. Ed. 2d 435 (2015).

Facial vagueness challenges unquestionably are appropriate even when the regulated activity is

not speech and does not implicate the First Amendment. The Supreme Court, for example, has

considered a variety of vagueness challenges that fall outside the First Amendment context.

*Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015); *Sessions v.

Dimaya*, 584 U.S. 148, 138 S. Ct. 1204, 200 L.Ed.2d 549 (2018); *United States v. Davis*, ___

U.S. ___, 139 S. Ct. 2319, 204 L.Ed.2d 757 (2019); *City of Chicago v. Morales*, 527 U.S. 41, 52,

119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999) (clarifying that the overbreadth doctrine applies to First

Amendment issues, but, "even if an enactment does not reach a substantial amount of

constitutionally protected conduct, may be impermissibly vague because it fails to establish

standards"); *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) (holding that an ordinance

prohibiting annoying conduct was facially vague); *Giaccio v. State of Pa*., 382 U.S. 399, 403, 86

S. Ct. 518, 521, 15 L. Ed. 2d 447 (1966) (invalidating law that allowed juries to transfer the prosecution's costs to the defendant because the law gave "jur[ies] such broad and unlimited power in imposing costs on acquitted defendants that the jurors must make determinations of the crucial issue upon their own notions of what the law should be instead of what it is").

Consistent with that view, lower courts have repeatedly addressed non-First Amendment facial vagueness challenges on their merits. *See, e.g.*, *United States v. Cook*, 970 F.3d 866, 873 (7th Cir. 2020) ("the Supreme Court has on a number of occasions entertained facial challenges to criminal statutes that do not implicate First Amendment concerns."); *Farrell v. Burke*, 449 F.3d 470, 496 n. 11 (2d Cir. 2006) ("Because the *Rybicki* Court assessed the facial validity of the statute even though no First Amendment rights were implicated, *Rybicki* itself arguably suggests that at least some facial vagueness challenges may be brought outside the First Amendment context, despite its suggestion to the contrary."); *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971 (9th Cir. 2003) (addressing substance of vagueness claim outside context of First Amendment). Thus, facial vagueness challenges outside the First Amendment context are not categorically barred. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982) ("A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process.").

Although some opinions have cast doubt on whether a statute can be facially void-for-vagueness even if it does not impact speech, they have done so perfunctorily and without analysis of the issue (or reconciliation with the cases above). *See, e.g.*, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1021 (8th Cir. 2012) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the

facts of the case at hand."); *United States v. Other Med.*, 596 F.3d 677, 682 (9th Cir. 2010) (quoting *United States v. Kim*, 449 F.3d 933, 942 (9th Cir. 2006)) ("[V]agueness challenges to statutes that do not involve First Amendment violations must be examined as applied to the defendant.").  Courts making those pronouncements typically do so when (unlike here) a criminal defendant attempts to mount a facial challenge, notwithstanding the fact that the statute clearly prohibits the defendant's conduct.  And contrary to the doubt created by those cases, the more recent and controlling authority on this issue is to the contrary, in that it expressly acknowledges the existence of valid facial vagueness challenges outside of the First Amendment context.  *Cf. Gallagher*, 699 F.3d at 1021-22 (citing Supreme Court cases from 1975 and 1988 for proposition).

As outlined below, the law is different with respect to a pre-enforcement facial challenge by an organization to a statute that penalizes conduct, or one that is fundamentally standardless or lacking a discernable core.  Under those circumstances, the law requires an analysis similar to the statute at issue in *Johnson*.  *See, e.g.*, *Williams v. Wofford*, No. 22-35628, 2023 WL 5453344, at *1 (9th Cir. Aug. 24, 2023) (stating "exceptions" to general rule that a "defendant who cannot sustain an as-applied vagueness challenge to a statute cannot be the one to make a facial vagueness challenge to the statute").

## C.    The Association Does Not Need to Allege Infringement of a Separate Constitutionally Protected Interest to Bring a Facial Vagueness Challenge (Court Question No. 3).

As the Court's Question No. 3 indicates, some courts have suggested that facial vagueness challenges are not permitted unless the challenged statute impacts conduct that implicates a separate "fundamental" or "constitutional" right equivalent to the First Amendment. *See Dickerson v. Napolitano*, 604 F.3d 732, 744 (2d Cir. 2010) ("our own Circuit has interpreted

*Morales* to permit a non-First Amendment vagueness challenge only after concluding that 'the law is 'permeated' with vagueness, and, perhaps, that it infringes on a constitutional right and has no *mens rea* requirement.").  Under that categorical approach, a facial vagueness challenge would only be permissible if the statute implicated an independent constitutional right.

Not every facial vagueness challenge outside the First Amendment context, however, must allege the separate infringement of a constitutionally protected interest beyond the Due Process Clause.  Doing so is certainly sufficient, but it is not necessary in every case.  And while speech or other conduct subject to independent substantive constitutional protection may require heightened protection from overly vague statutes, the Due Process Clause itself supports a facial vagueness challenge to a statute that threatens the deprivation of liberty or property without meaningful (or any) standards.

As an initial matter, and particularly post-*Johnson*, several courts have stated—or assumed—that a party may challenge a law on its face even if an independent constitutional right is not implicated and proceeded to adjudicate facial challenges in the absence of infringement of a fundamental right.  *See Monarch Content Mgmt. LLC v. Arizona Dep't of Gaming*, 971 F.3d 1021, 1030 (9th Cir. 2020) ("If a law 'implicates no constitutionally protected conduct,' a facial vagueness challenge under the Due Process Clause of the Fourteenth Amendment can succeed only if the law 'is impermissibly vague in all of its applications.'"); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) ("Statutes carrying criminal penalties or implicating the exercise of constitutional rights, like the ones at issue here, are subject to a 'more stringent' vagueness standard than are civil or economic regulations."); *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012) (evaluating facial challenge to regulations on gambling even though they did not involve constitutionally protected conduct); *Dias v. City &*

*Cnty. of Denver*, 567 F.3d 1169, 1179-80 (10th Cir. 2009) ("[W]e have held that facial challenges are appropriate in two circumstances: (1) when a statute threatens to chill constitutionally protected conduct (particularly conduct protected by the First Amendment); or (2) when a plaintiff seeks pre-enforcement review of a statute because it is incapable of valid application."); *United States v. Cobbs*, No. CR22-4069-LTS, 2023 WL 8599708, at *5 (N.D. Iowa Dec. 12, 2023) (facial void-for-vagueness "challenges are permissible only if:  (1) a vague law impacts First Amendment or other fundamental rights or (2) a law is vague because it lacks sufficiently clear guidelines in a way that poses a high risk of arbitrary enforcement."); *Little Arm Inc. v. Adams*, 13 F. Supp. 3d 914, 922 (S.D. Ind. 2014) ("This finding does not resolve the dispute, though, as a statute may be facially unconstitutional even if it does not reach a substantial amount of constitutionally protected conduct."); *Pizza di Joey, LLC v. Mayor of Baltimore*, 235 A.3d 873, 904 (Md. 2020) ("[T]his Court, the Supreme Court, and other state and federal courts have entertained pre-enforcement facial vagueness challenges where there was no 'fundamental' right alleged to be at stake.").

That approach is consistent with Supreme Court precedent and the underpinnings of the vagueness doctrine.  In *United States v. Stupka*, 418 F. Supp. 3d 402, 409 (N.D. Iowa 2019) after a detailed review of this issue, the court concluded that a "second situation in which a facial void-for-vagueness challenge should be given special consideration is when there is a high risk that a law is unconstitutionally vague under the second prong of the void-for-vagueness test – the law is so indefinite or standardless that it allows or encourages arbitrary or discriminatory enforcement."  As Judge Strand explained, cases dealing with the arbitrary enforcement prong of the due process inquiry raise particular concerns that justify facial void-for-vagueness review, even when a fundamental right is not at issue.  *Id*. at 408-10.  As the court noted, "whether

conduct is clearly proscribed under the terms of the statute reveals little about whether the statutory language, or the process through which it is applied, has sufficiently clear standards to prevent arbitrary enforcement." *Id*. at 411.  Thus, notwithstanding that the law provides notice to the public, and could be constitutionally applied in a specific case, the potential for arbitrary enforcement through ad hoc, or standardless, conclusions or processes warrants a facial vagueness review. *Id*.  It is particularly in those circumstances when facial review should be permissible and, in fact, has occurred. *See Johnson*, 576 U.S. at 602-03 (citing examples of laws invalidated even if "there is some conduct that clearly falls within the provision's grasp"); *Giaccio*, 382 U.S. at 403 (invalidating law allowing imposition of costs without standards).

Allowing a facial vagueness challenge even when a separate constitutional provision is not implicated is also consistent with the rights inherent in the Due Process Clause itself.  As the Supreme Court has emphasized, "a vague law is no law at all." *Davis*, 139 S. Ct. at 2323.  For that reason, a party asserting a facial vagueness challenge may do so on the grounds that imposition of civil penalties, or reputational harm, without fair notice and with the risk of arbitrary enforcement, is itself a fundamental constitutional infirmity.  That result is particularly appropriate when the state agency responsible for administering the statutory review process can unilaterally create and impose new standards and conditions on each individual transaction. Suggesting otherwise would undermine the Due Process Clause and its protection of both "liberty" and "property" from unconstitutional deprivation.

**D.    The "No Set of Circumstances" Test Should Not Apply to the Association's Facial Vagueness Challenge (Court's Question No. 5).**

Supreme Court opinions on the proper standard to apply to facial vagueness challenges are, admittedly, muddled.  In *Hoffman Estates*, the Court stated that plaintiff had to show that the

statute was "impermissibly vague in all of its applications." 455 U.S. at 495. As Justice Alito

observed, that standard arguably "is simply an application of the broader rule" that "a statute is

facially unconstitutional only if 'no set of circumstances exists under which the Act would be

valid.'" *Johnson*, 576 U.S. at 636 n.2 (Alito, J. dissenting) (citing *United States v. Salerno*, 481

U.S. 739, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987)).

The "vague in all applications/no set of circumstances" test, however, has been eroded in

at least two ways. First, in recent decisions, the Supreme Court has articulated alternative tests

for a "typical" or "normal" facial challenge outside the First Amendment context:

> To succeed in a typical facial attack, Stevens would have to
> establish "that no set of circumstances exists under which [§ 48]
> would be valid," *United States v. Salerno*, 481 U.S. 739, 745, 107
> S. Ct. 2095, 95 L. Ed. 2d 697 (1987), or that the statute lacks any
> "plainly legitimate sweep," *Washington v. Glucksberg*, 521 U.S.
> 702, 740, n. 7, 117 S. Ct. 2258, 138 L. Ed. 2d 772
> (1997) (STEVENS, J., concurring in judgments) (internal
> quotation marks omitted). Which standard applies in a typical case
> is a matter of dispute that we need not and do not address, and
> neither *Salerno* nor *Glucksberg* is a speech case.

*United States v. Stevens*, 559 U.S. 460, 472, 130 S. Ct. 1577, 1587, 176 L. Ed. 2d 435 (2010);

*see also id.* (referring to First Amendment overbreadth as a "second type of facial challenge");

*Americans for Prosperity Found. v. Bonta*, 594 U.S. ___, 141 S. Ct. 2373, 2387, 210 L. Ed. 2d

716 (2021) ("Normally, a plaintiff bringing a facial challenge must "establish that no set of

circumstances exists under which the [law] would be valid," . . . , or show that the law lacks "a

plainly legitimate sweep,"); *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596

U.S. 61, 83, 142 S. Ct. 1464, 1479-80, 212 L. Ed. 2d 418 (2022) (Alito, J. concurring in part,

dissenting in part) (repeating "normal" standard and stating that a "somewhat less demanding

test applies when a law affects freedom of speech"). While the Court has not fully articulated

when a statute will have a "plainly legitimate sweep," it clearly views that test as an alternative way in which a statute may be facially flawed, even if it would be valid in one or more circumstances.

Second, and more importantly, the Supreme Court has openly criticized the "no set of circumstances" test in vagueness cases.  In *Johnson*, the Supreme Court acknowledged that some of its opinions have used the "no set of circumstances" and "vague in all of its applications" language, but stated clearly that "although statements in some of our opinions could be read to suggest otherwise, our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp."  576 U.S. at 602 (emphasis added).  In *Dimaya*, the court confirmed that view.  *Dimaya*, 584 U.S. at 158 n.3 ("*Johnson* made clear that our decisions 'squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp.'").  Justice Thomas (the most vocal critic of the Court's deviation from the *Salerno* standard) recognized the impact of the Court's analysis.  *Dimaya*, 584 U.S. at 220 (Thomas, J. dissenting) (noting that *Johnson* "weakened" the application of *Salerno*); *Johnson*, 576 U.S. at 636 & n.2 (Thomas, J. concurring in the judgment) (criticizing majority for creating exception to *Hoffman Estates*/*Salerno* rule in facial vagueness cases).  Thus, at least according to a majority of the Court, the fact that the statute may have some valid application is not sufficient to defeat a facial challenge on vagueness grounds.

As the Association previously noted, several courts (including the Ninth Circuit) have commented on this inconsistency and concluded the "vague in all applications" standard no longer governs when a plaintiff is mounting a vagueness challenge.  *United States v. Cook*, 914 F.3d 545, 553 (7th Cir.), *vacated on other grounds*, ___ U.S. ___, 140 S. Ct. 41, 205 L.Ed.2d 4

(2019) ("It is true that *Johnson* puts to rest the notion—found in any number of pre-*Johnson* cases—that a litigant must show that the statute in question is vague in *all* of its applications in order to successfully mount a facial challenge. And, as we have mentioned, *Johnson* likewise rejects the notion that simply because one can point to *some* conduct that the statute undoubtedly would reach is alone sufficient to save it from a vagueness challenge.") (citation omitted); *Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018) ("*Johnson* and *Dimaya* expressly rejected the notion that a statutory provision survives a facial vagueness challenge merely because some conduct clearly falls within the statute's scope."); *see also Koons v. Platkin*, 673 F. Supp. 3d 515, 661 (D.N.J. 2023) (interpreting *Johnson* and *Dimaya* as the Supreme Court "back[ing] away" from the *Salerno* standard).

That view is not universally shared. Among the Courts of Appeal, the Second Circuit takes a more restrictive view of *Johnson* and *Dimaya* (and facial challenges generally). In *United States v. Rybicki*, 354 F3d 124 (2d Cir. 2003), the court was sharply divided over the propriety of a facial challenge to the criminal statute at issue, even though it did not involve the First Amendment. After several intervening decisions (including *Dickerson*, which preceded *Johnson*), the court appeared to conclude that "vague in all applications" continues to be the default rule in facial vagueness cases with three limited exceptions: the First Amendment context, criminal laws lacking a scienter requirement, and *Johnson*-type cases where the statute calls for a categorical approach. *United States v. Requena*, 980 F.3d 30, 39-40 (2d Cir. 2020). Thus, the Second Circuit has more narrowly read *Johnson*'s rejection of the "vague in all applications" standard. *See United States v. Lira*, No. 22 CR. 151 (LGS), 2022 WL 17417129, at *5 (S.D.N.Y. Dec. 5, 2022) ("Outside of limited exceptions, '[n]either the Supreme Court nor [the Second Circuit] has definitively resolved whether facial vagueness challenges not based on

the First Amendment may proceed against statutes that can constitutionally be applied to the challenger's *own* conduct.'") (quoting *Requena*, 980 F.3d at 40).

Notwithstanding the Second Circuit's skepticism, the Supreme Court's and those courts' criticism of the *Salerno* formulation in the vagueness context makes sense.  Using that standard threatens the due process rights of any number of individuals and entities potentially subject to HB 2362, who will be forced to guess at the statute's meaning.  Delaying resolution of those fundamental questions or leaving resolution to piecemeal adjudication at the same time that the statute remains open to arbitrary enforcement, because one or more scenarios can be constructed in which the statute would apply has little justification.

Neither *United States v. Hansen*, 143 S. Ct. 1932 (2023) nor *Tucson v. City of Seattle*, 91 F.4th 1318 (9th Cir. 2024) is to the contrary.  *Hansen* involved a facial overbreadth challenge to a federal law prohibiting "encourage[ing] or induc[ing]" illegal immigration.  599 U.S. at 766. The Court cited the "no set of circumstances" test in passing, *id*. at 769, but had no occasion to consider its applicability, given the basis for the defendant's overbreadth challenge in that case. Similarly, in *Tucson*, the court repeated *Hansen*'s observation that a litigant mounting a facial challenge must "normally" satisfy the "no set of circumstances" test.  91 F.4th at 1327.  Again, however, because the plaintiffs' argument relied on overbreadth, the court simply quoted *Hansen* and had no reason to analyze the applicability of that test, including reconciling it with the cases that described in different terms what a facial challenge normally would require.

For those reasons, current precedent supports a facial vagueness challenge even if Defendant can identify a hypothetical scenario in which there would be little, if any, dispute about whether HB 2362 allowed (or prohibited) such conduct.  The problems with HB 2362 do not arise from whether there may be difficult (or easy) judgment calls about who and what the

statute covers.  Instead, the core problem is the absence of any standard at all except what the enforcing authority—here, the agency—determines.  When addressing the vagueness doctrine, the Court has explained the key due process issue and the fundamental flaw with that approach:

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

*United States v. Williams*, 553 U.S. 285, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008).

The Court's description encapsulates HB 2362.  As the Association explained, in at least three principal respects, HB 2362 lacks fundamental guardrails—failing to define to whom the law applies; failing to define what the law allows or prohibits; and failing to specify when conduct will be punished, permitted, or only permitted when the agency decides that the parties have satisfied (unspecified) conditions that the agency has the unfettered freedom to impose. (*See* ECF No. 39 (Pl. Reply in Support of Motion for Summary Judgment at 13-18).)  In those ways, HB 2362 goes well beyond imposing only civil penalties when legislatively defined standards have been violated.  Instead, HB 2362 is *sui generis* in its approach.  It allows the agency to define the fundamental criteria of the HCMO without constitutionally sufficient definitions or standards to provide adequate notice or to prevent arbitrary enforcement.  The wholesale delegation of authority to OHA to not only *enforce* (or *implement*) the law, but *create* the law, renders HB 2362 unconstitutionally vague.

/ / /

## IV.  CONCLUSION

For the foregoing supplemental reasons, the Association respectfully requests that the Court grant its cross-motion for summary judgment and deny OHA's motion for summary judgment.

DATED:  March 25, 2024                    STOEL RIVES LLP


    s/ Brad S. Daniels
BRAD S. DANIELS, OSB No. 025178
brad.daniels@stoel.com
NATHAN R. MORALES, OSB No. 145763
nathan.morales@stoel.com

Attorneys for Plaintiff