1

1      IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF OREGON

3

4  OREGON ASSOCIATION OF HOSPITALS      )
   AND HEALTH SYSTEMS,                  )
5                                       )
             Plaintiff,                 )    3:22-cr-01486-SI
6                                       )
   vs.                                  )    May 7, 2024
7                                       )
   STATE OF OREGON, et al.,             )    Portland, Oregon
8                                       )
             Defendants.                )
9

10

11                   (Motion Hearing)

12             TRANSCRIPT OF PROCEEDINGS

13       BEFORE THE HONORABLE MICHAEL H. SIMON

14          UNITED STATES DISTRICT COURT JUDGE

15

16

17

18

19

20

21

22

23  COURT REPORTER:    Dennis W. Apodaca, RDR, CSR
                       United States District Courthouse
24                     1000 SW Third Avenue, Room 301
                       Portland, OR 97204
25                     (503)326-8191

```
 1                              APPEARANCES

 2    FOR THE PLAINTIFF:      Brad S. Daniels
                              Stoel Rives LLP
 3                            760 SW Ninth Avenue, Suite 3000
                              Portland, Oregon  97205
 4
      FOR THE DEFENDANTS:     Sara D. Van Loh
 5                            Oregon Department of Justice
                              100 SW Market Street
 6                            Portland, Oregon  97201

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                                   INDEX

2      Motion hearing                                             4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

 1                        (May 7, 2024)

 2                    P R O C E E D I N G S

 3              (Open court:)

 4              THE COURT:  Good afternoon, everyone.  We are here in

 5    the case of Oregon Association of Hospitals and Health Systems

 6    versus State of Oregon, et al., Case No. 3:22-cv-1486.  I

 7    invite counsel for the plaintiff, first, to enter and

 8    appearance.

 9              MR. DANIELS:  Good afternoon, Your Honor.  Brad

10    Daniels for the plaintiff.

11              THE COURT:  Good afternoon, Mr. Daniels.

12              I will now invite counsel for defendants to enter an

13    appearance.

14              MS. VAN LOH:  Good afternoon, Your Honor.

15    Sara Van Loh for defendants.

16              THE COURT:  Good afternoon, Ms. Van Loh.

17              All right.  I take it you all have received the

18    tentative opinion that we circulated last week?

19              MR. DANIELS:  Yes.

20              MS. VAN LOH:  Yes.

21              THE COURT:  All right.  We are here for cross-motions

22    for summary judgment.  As I said in my email last week, it is

23    just a tentative opinion, but it does reflect the state of my

24    thinking, and so I look forward to the arguments.

25              Mr. Daniels, it's probably appropriate to begin with

1    plaintiffs, unless the two of you would jointly prefer some

2    other approach.

3            MR. DANIELS:   Thank you, Your Honor, and thank you

4    for the tentative opinion to focus the discussion on the issues

5    today.

6            As the opinion reflects, and as we indicate in our

7    briefs, we recognize that, on its face, so to speak, the

8    federal claim is doctrinally challenging.  But I think it is

9    important to keep two threshold points in mind, and then I'll

10   touch on specific areas in the opinion where we might have a

11   different perspective.

12           The first is that we are seeing a subtle, but I think

13   significant shift in vagueness law recently.  We are now facing

14   three court decisions in the last several years that I think

15   have struck down both criminal and civil laws on constitutional

16   vagueness grounds.  And as I'll touch on in a minute, I think

17   those are significant because they've expressly tied the

18   doctrine of vagueness to concerns about delegation as well as

19   separation of powers.

20           The second threshold point, Your Honor, is that this

21   really is a unique statute.  We looked pretty extensively for a

22   statute that was similar in language or structure, but we were

23   unable to locate one.  And I think it is striking that neither

24   party really drew parallels between House Bill 2362 and another

25   statute that maybe survived a similar vagueness challenge.

6

 1   Now, that's obviously not fatal to the enterprise, but I think

 2   it's relevant because it demonstrates that what the legislature

 3   here was -- something that was created out of whole cloth.  And

 4   in doing so, we think they crossed a constitutional line.

 5          With those general points in mind, I would like to

 6   focus on what I think are the three major areas of tension or

 7   maybe disagreement with the Court's tentative opinion.

 8          Beginning with the contrast or the tension between

 9   non-delegation and vagueness, now the Court's opinion, I think,

10   acknowledges that there is a fairly significant overlap between

11   the concept of vagueness and non-delegation, and I think the

12   opinion leans on the fact that perhaps our real complaint with

13   this statute is the fact that it grants, in our view, entirely

14   to OHA the ability to define what the law will require, and

15   that delegation should be, I think, perhaps in the Court's

16   view, a matter of state constitutional law only.

17          We certainly contend that there is a significant

18   non-delegation problem here.  And while we understand the

19   Court's reasoning, I think we disagree with the notion that

20   there's such a clean divide between the rationale for

21   invalidating a law on vagueness grounds and a separate

22   non-delegation concern.

23          I think there are two reasons that animate our view

24   there.  One is, I think, the recent case law in Dimaya and

25   Davis.  Both Justices Kagan and Gorsuch, first in a concurrence

1   and then in his majority opinion, talk expressly --

2              THE COURT:  Kagan's was a plurality, right?

3              MR. DANIELS:  Yes.

4              THE COURT:  Basically most of the Court, or at least

5   five of the Court, joined in most of her opinion.  There was

6   that one section where Justice Gorsuch did not, but the rest of

7   it was a plurality and not a concurrence.

8              MR. DANIELS:  That's right, Your Honor.

9              What's significant to us about that is that both

10  Justice Kagan in her opinion talked about the notion that

11  vagueness has, as its underlying corollary, a separation of

12  powers concern, and then Justice Gorsuch takes that up in his

13  concurrence.  Then in his majority opinion in Davis he talks

14  about the twin constitutional pillars of vagueness.

15             The notion here is that the Court is increasingly and

16  expressly recognizing that the concern of vagueness is handing

17  over to enforcing authorities the ability to define law without

18  political accountability, and I think that really goes back to

19  the seminal case of Grayned, which Your Honor cited, which also

20  referred to delegation, and stated that a vague law

21  impermissibly delegates basic policy matters to enforcing

22  authorities, allowing them to make decisions on an ad hoc

23  basis.

24             So I think what those recent decisions made express

25  and what some commentators have recognized and explained is

1    that due process and vagueness have a structural -- what I'll

2    call a structural component in that that due process

3    restriction ensures that the legislature is not handing over

4    the keys wholesalely, conveying its law-making authority to an

5    enforcing authority.

6            Now, we think that's not surprising, because one

7    effect of an excessive delegation is what the Court has

8    described as the most important animating purpose of the

9    vagueness doctrine, which is the prevention of arbitrary or

10   standardless enforcement, and it's because of an impermissible

11   delegation to an enforcing agency would allow for such a

12   standardless enforcement regime, that the Court has said that's

13   the more important prong that gave us concern, and I think

14   that's what these recent opinions talk about, and going back to

15   Morales, I think, is the focus.

16           So I think the fact that non-delegation is a distinct

17   concern, has its distinct rationale, distinct source in the

18   vesting clauses, that doesn't mean that the two doctrines

19   necessarily are so distinct or they can't operate concurrently,

20   and I think that's what certainly our theory is with respect to

21   House Bill 2362.

22           Now, if that's the case, and I recognize that's a

23   contested proposition, then I think it undermines the

24   fundamental premise, I think, of defendants' argument and to

25   some extent the Court's opinion, which is that administrative

1    regulations can then serve to cure what would be an

2    unconstitutional or impermissibly vague statute.

3              THE COURT:  There are many cases from the

4    Supreme Court and the Ninth Circuit that say that, aren't

5    there?

6              MR. DANIELS:  There are, Your Honor.

7              THE COURT:  So what do I do with that?  As I

8    understand it -- and tell me and see if you disagree with this:

9    As I understand it, the amount of vagueness that is acceptable

10    from a statute depends upon context.  Are we talking about

11    classic criminal law?  Are we talking about something that

12    impinges on express constitutional rights, like free speech?

13    Or are we talking about something that is economic regulation?

14              As I understand the case law -- and in a moment I'll

15    invite you to tell me if I'm understanding it incorrectly --

16    but as I understand the case law, in the context of economic

17    activity, those are generally subject to a far less strict or a

18    more lenient vagueness challenge, and those cases also say that

19    there is less of a problem when they miss, because

20    administrative regulations, even non-regulatory, or rather,

21    sub-law guidance materials from the agency can both inform

22    people who are subject to this regulation -- what they need to

23    do to comply -- and can also redo arbitrary enforcement by

24    saying, "This is how we enforce it."

25              That's my understanding of the state of the law, and

1    that's how I envision evaluating the vagueness challenge that

2    plaintiff has brought here.

3            Am I looking at it incorrectly?

4            MR. DANIELS:  I don't think so, Your Honor.  And here

5    is the distinction that we draw, and I think Your Honor has

6    summarized, I think, a vast majority of the cases in this area.

7    Let me talk about two separate parts of Your Honor's question.

8            One is we view that there is a distinction in law

9    that sets a broad or comprehensible either objective fact or

10   normative standard that then regulations then fill in and

11   further describe.

12           What does it mean to carry a firearm?  What does it

13   mean to engage in a material misrepresentation?  What does it

14   mean to unreasonably do something?  In each of those

15   circumstances, and mostly in economic regulation, the

16   legislature has done some work.  It may be broad, but at least

17   it's comprehensible, and it's a normative standard or an

18   objective fact that then regulations serve to define or limit.

19   And that's really what Hoffman was all about.  The

20   quintessential case of Hoffman of items designed or marketed

21   for illegal drug use, that was a standard and then, of course,

22   they relied on administrative guidelines.

23           What's missing here, in our view, and what we see an

24   absence of, what is that initial normative standard?

25           THE COURT:  I thought the initial normative standard

1    here -- again, tell me if I've got this wrong -- is that the
2    legislature has perceived that the influx of private equity, of
3    corporate management and/or ownership has caused a diminution
4    in the quality of healthcare.  It caused an increase in the
5    prices paid by the caregivers and, frankly, maybe even a
6    decrease in compensation to medical providers, and they wanted
7    to make sure that if there was going to be a significant
8    transaction -- a material transaction primarily involving a
9    change of corporate ownership or management, an infusion of
10   private equity, that that would not adversely affect either the
11   quality of healthcare delivered or the price of healthcare
12   charged, and they wanted some advance notice of that, much like
13   the merger notifications before the FTC under the antitrust
14   laws.  They wanted some advance notice of that.  Therefore, you
15   have to file the statement of an intention to engage in this
16   type of transaction.
17          If the Oregon Health Authority, which is charged with
18   maximizing patient health care and reducing prices to a
19   reasonable level, while also maintaining an adequate supply of
20   healthcare providers and healthcare facilities, if they thought
21   that this would somehow be a problem, then they could challenge
22   it, but you're only really going to challenge these types of
23   transactions if you know about them in advance.
24          Now, we're not at the stage in this lawsuit of the
25   Oregon Health Authority challenging one of these transactions,

1   and the parties to the prospective transactions saying, "No,

2   you can't challenge us.  We fit within the law.  We have a

3   right to engage in this transaction."  That will have to go

4   before probably a contested case hearing; up to the courts of

5   appeals.  That's a different issue.

6           As I understand it, your client is making a facial

7   challenge here primarily to the notification process of giving

8   advance notification to the OHA before these actions are done.

9   Whether or not they need to be disclosed, I thought it was

10  relatively clear from the statute, certainly as expanded on by

11  the regulations, and the purpose is, as I said, to maximize

12  positive results from health care and to reduce the increases

13  in health costs.

14          Am I looking at it incorrectly?

15          MR. DANIELS:  Yes.

16          THE COURT:  Okay.  Fair enough.

17          MR. DANIELS:  I think that when I say that, I would

18  recharacterize or redescribe what our view of the statute is

19  and what our challenge is.

20          I think that Your Honor is absolutely correct in

21  terms of describing the legislative purpose of the statute.  I

22  think there is a lot of evidence for that, and I think

23  Your Honor absolutely is correct to analogize it to other

24  notice regimes.

25          But what's critical about this statute and what the

13

1    core of our challenge is, whatever those purposes were, they

2    didn't make their way into the statute as a standard, not only

3    for when we would need to provide notice, but what we would

4    need to do in order to structure this transaction to comply to

5    get actual approval, and that's the second point and the key

6    point of our challenge, which is it's not enough to say that

7    you need to provide notice of a transaction that we think is

8    material.  You have to provide -- in our view, you have to

9    provide a standard by which we know whether that transaction is

10   going to comply with the law that's passed by the legislature.

11           THE COURT:  Isn't one of the things built into the

12   statute here -- and by the way, I apologize for interrupting

13   you, but not too much.  But you're welcome to interrupt me too

14   as well.

15           MR. DANIELS:  It's your prerogative.

16           THE COURT:  I'm inviting this to be a discussion.

17           I thought if someone to a transaction wants to engage

18   in a transaction, they go to the OHA, or they can go to the OHA

19   and say that this is the transaction we're planning on doing

20   and ask, not only is it subject to the disclosure obligations,

21   but also are you likely to approve it?  Are you likely to

22   approve it with conditions?  If you can approve it

23   unconditionally, great.  If you approve it with conditions,

24   what are those conditions so that the parties to the

25   transaction can decide do they want to go through with it or

1  challenge those conditions.  And if the OHA says, "We are not

2  going to approve it, even with any conditions," fine, then

3  there's a way to challenge that.  That's a correct

4  understanding of the statutory framework, isn't it?

5          MR. DANIELS:  I'm not sure -- I think that's in the

6  regulations.  And as I understand the pre-notice process, it's

7  "Are we going to be a covered transaction?  Are we going to

8  have to go through this process?"  I don't know if that process

9  also goes and takes the further step of informing the parties

10  of the agency's preliminary determination about whether

11  approval or conditions or denial will occur.

12          THE COURT:  I know there is preliminary review.

13  What's that preliminary review of?

14          MR. DANIELS:  That preliminary review is mandated by

15  statute.  You provide the notice and then you're in -- once you

16  provide the notice, then you're in the process.  The problem

17  that we have is that whether that transaction is going to get

18  that preliminary review is not governed by any statutory

19  standard.  The standard for preliminary approval and for

20  comprehensive review and approval is entirely dependent on

21  whether you satisfy the rule, and that's the fundamental

22  problem we have with the statute, because it's not enough to

23  say, "We think that material transactions need to be reviewed."

24  The legislature needed, in our view, to go one step further and

25  say, "In order for this material transaction to go forward, it

1   needs to satisfy this standard."  Now, that standard does not

2   need to be perfectly precise or factually specific, but it

3   needs to be something.  Once you get through the

4   cross-references of this statute, what you're left with is this

5   transaction will be approved if the agency approves it, and

6   that's basically it.

7            Now, the agency has then promulgated a rule that says

8   that we will approve this transaction and then set out a

9   variety of different factors, one of which is, is it consistent

10  with the law?

11           THE COURT:  Well, I thought the criteria of supply is

12  the agency should approve it if it will not unreasonably

13  interfere or diminish the quality of healthcare or unreasonably

14  raise the prices or unreasonably diminish the ability of

15  healthcare.

16           Am I mistaken?  Isn't that part of the law?

17           MR. DANIELS:  That is part of the law, Your Honor.

18           THE COURT:  Again, that's the criteria.  So it's

19  really not just that it will be approved if the agency in its

20  ipsi dixit says so.  It basically tells the agency:  You are

21  the experts of figuring out when the delivery of healthcare

22  will be adversely affected, when the provision of healthcare --

23  the pricing will be increased.  This is the criteria we apply.

24  Don't diminish the quality of healthcare.  Don't unreasonably

25  increase the costs.  Don't unreasonably diminish the

1  availability of healthcare services.  That's our criteria, says

2  the legislature; now agency, you go and close the rules.

3  Here's your advance notice requirements.  And tell people who

4  are covered, the healthcare entities, material change

5  transactions, if you need to give people more detail about

6  whether they're covered, do it.  If they have a question about

7  whether they're covered or about the process that helps them

8  understand if they're covered, and for any covered transaction,

9  those are the three substantive criteria you look to:  Does it

10  adversely affect healthcare costs, healthcare delivery, or

11  quality or quantity of healthcare providers?

12          And so I don't view it as totally standardless.  What

13  am I looking at incorrectly?

14          MR. DANIELS:  What we need to amend -- what I need to

15  do to amend your description is that those criteria are not the

16  only criteria.  There's a critical "and"; "and" you have to

17  satisfy whatever the agency has put in its rules.  That's in

18  (5), I believe of the preliminary approval.

19          THE COURT:  And what was that intended to include?

20          MR. DANIELS:  Anything that the agency decided to put

21  in its rules.

22          THE COURT:  You're asking for a facial challenge --

23  you brought a facial challenge to the whole rule.  You're not

24  asking for some type of limiting construction that limits that

25  "and," right?

1          MR. DANIELS:  No.

2          THE COURT:  Okay.

3          MR. DANIELS:  And I don't think that the Court would

4   be in a position to do that, because the way the statute is

5   structured, the criteria for approval is that you will meet

6   whatever the agency has put in its rule, and you will meet

7   these other criteria.

8          THE COURT:  Now, has the agency put in any other

9   explanation of what's intended to go into that other criteria,

10  the "and"?  Has the agency explained that yet?

11         MR. DANIELS:  They've promulgated a rule, and I think

12  Your Honor quoted it in the tentative opinion.  It's at (60) of

13  the AORs, and it does repeat those statutory criteria.  But in

14  addition to that, in order for a transaction to be approved, it

15  cannot be contrary to law or otherwise hazardous or prejudicial

16  to consumers or the public.  Now, those criteria are nowhere in

17  the statute.

18         THE COURT:  Hazardous to consumers or the public

19  essentially is just another way of saying if it unreasonably

20  diminishes the quality of healthcare or raises prices.

21         MR. DANIELS:  I don't think -- we don't view that as

22  the interpretation that the agency --

23         THE COURT:  And that's my question then.  Has the

24  agency given that clause any further interpretation either by

25  rule, regulation, guidance, or contested case decision that is

 1    beyond anything other than what the statutory criteria are?

 2              MR. DANIELS:  One example is the "otherwise contrary

 3    to law" -- or the "contrary to law" provision.  I think the

 4    agency has taken the position that that applies to any source

 5    of law, including Delaware corporate law.

 6              So, for example, if the transaction, you know, is

 7    somehow violative of some principles of Delaware corporate law,

 8    then your transaction is contrary to law and will not be

 9    approved.

10              THE COURT:  Have they said that in one of their

11    guidance papers?

12              MR. DANIELS:  They have not, Your Honor.

13              THE COURT:  Okay.

14              MR. DANIELS:  But the point is that if you have --

15    the way I think of statutes, if you have specific circumstances

16    A, B, and then C says something else, C is not repeating A and

17    B.  C has to be an independent source of authority.

18              THE COURT:  Sure.  And that may be right, and maybe

19    other source of law -- well, maybe if we have a terrorist

20    organization wanting to buy one of our health clinics, that

21    would be prohibited under federal law.  Okay, fine.  Then that

22    will not be approved.  But we're getting into some very

23    hypothetical, abstract scenarios for which you may be right in

24    an as-applied challenge.  But that's not what we have before

25    us.

```
1              MR. DANIELS:  I understand, Your Honor.  And to pull
2    the lens back on this discussion, I think when Your Honor
3    originally described the importance of the administrative
4    regulations, which we entirely agree with, and which are the
5    vast majority of cases here, those cases don't deal with the
6    unique situation we have here, which is, I think, a situation
7    which meets the standard that Your Honor outlined in page 21 of
8    your opinion, which is do we have a comprehensible but
9    imprecise normative standard, or do we have no standard of
10   conduct specified at all in the statute?
11             Our view of the statute is, once you kind of get
12   through the cross-reference from here and there and everywhere,
13   ultimately no standard of conduct is specified in the statute,
14   not because the legislature didn't go part of the way, but
15   because they left fundamental, in our view, law-making
16   functions to the agency.  They said you have to satisfy A, B,
17   and C, and C is whatever the agency will decide.
18             THE COURT:  By the way, you reminded me of almost a
19   footnote issue, but I want to get it out of the way.  There was
20   some discussion in your briefing that there's uncertainty about
21   which healthcare entities are covered.  It is unclear to me
22   precisely what types of entities are members of the Oregon
23   Association of Hospitals and Health Systems.  By the way,
24   approximately how many members are there?
25             MR. DANIELS:  61 hospitals, Your Honor.
```

1          THE COURT:  Okay.  It struck me -- and I think I

2   discussed this in the tentative -- that I don't think that

3   there is any serious argument that the members of the plaintiff

4   association are healthcare entities, as defined in the statute.

5   And so when you made the argument in your briefing that there

6   is some ambiguity about who might be a healthcare entity, I did

7   have a little bit of concern about standing.  Now, maybe I

8   didn't express it clearly enough in my supplemental order about

9   standing.  You came back and told me of course you have an

10  associational standing, and of course you do.  And the

11  defendants agree with that.

12          That's not what I meant to ask.  What I meant to ask

13  is:  Does this plaintiff association have the standing to

14  assert an argument that some unknown hypothetical entity may or

15  may not know whether they're a covered healthcare entity, given

16  that all of the members of this association clearly are?

17          MR. DANIELS:  I appreciate the question, Your Honor.

18  I think, in our view, we still have standing to make that

19  challenge, the reason being that -- obviously we're assuming

20  the burden of a facial challenge in this case.  And if we were

21  talking about an "as applied," then we would have to

22  demonstrate that some of our members would be subject to that

23  ambiguity.  But a facial challenge, I think, imposes a greater

24  burden on us but relaxes it with respect to pre-enforcement --

25          THE COURT:  That then leads me to this follow-up, and

1    I've already distracted you a little bit, so maybe if you'd go

2    down this line a little bit further.  I think I'm willing to

3    accept your argument that Salerno, as boldly as defendant

4    argues it, is not necessarily the current law.

5              So what is the standard that someone who challenges

6    facially a statute must show?

7              MR. DANIELS:  We think the standard that you put in

8    your opinion on 21 and 22, the difference between an imprecise

9    but comprehensible standard or no standard at all, or what we

10   put in on page 22 of our supplemental brief, which was not

11   imprecision about whether a fact may be proved, but what that

12   fact is, which I think is from Justice Roberts' opinion.  Those

13   are not necessarily completely satisfying, but I think they are

14   as close as we can get to what we think the standard should be

15   on a facial challenge.

16             THE COURT:  I'm trying to apply that, let's say to

17   your argument -- you're not making it now so much, but you made

18   it in your papers -- that it's ambiguous or vague, what are the

19   healthcare entities?  As I see it, every one of the plaintiff

20   association members are clearly and unambiguously a healthcare

21   entity.

22             Most of the healthcare entities that I can think of

23   would be clearly and unambiguously healthcare entities, but I

24   see your argument that there is a theoretical possibility that

25   some person or organization may or may not know whether they're

1    a covered healthcare entity, and that strikes me as too

2    speculative for a legitimate facial challenge.

3           Do you agree or disagree?  And if you disagree, why?

4    Then how do I define --

5           MR. DANIELS:  I will take a run at it, Your Honor,

6    and see if I can persuade you, which is -- I think it is

7    Judge Strand's opinion in United States v. Stupka, which we

8    cited in our supplemental brief, actually did a fairly detailed

9    and scholarly analysis of that precise question.  The answer

10   that he came to was that in the narrow category of a facial

11   challenge, when you're not talking only about notice, but

12   you're also talking about the threat or the invitation or the

13   possible encouragement of arbitrary enforcement, that is going

14   to be a situation where we're not going to impose on the

15   challenger an obligation to demonstrate that they themselves --

16   their conduct would be covered by the statute.  But because

17   there is a sufficient interest in hearing that facial challenge

18   on the merits, we're not going to knock them out.  So we would

19   adopt that standard.

20          THE COURT:  I derailed you, but maybe you can go back

21   on track.

22          MR. DANIELS:  Let me touch on a couple of other

23   points that Your Honor made, which is the idea that this is an

24   economic regulation.  Certainly we agree that those are the

25   factors that the Court should look at.  We don't agree that the

1    standard is as lenient maybe as the Court suggests, for a few

2    different reasons.  The reason why economic regulation is

3    typically subject to a more lenient standard is, one, it deals

4    with a narrow and technical area -- a mining statute, a statute

5    that deals with specific securities professionals, things of

6    that nature.  And it uses technical language in its

7    admonitions.  I don't think that rationale applies to this law.

8    It's extremely broad.  The market it covers is extremely broad.

9    The number of transactions it covers is vast potentially.  So

10   that rationale, we think, is decidedly weaker here.

11           The other rationale that I think Your Honor alluded

12   to was the fact that sophisticated entities typically are

13   charged with more knowledge of the law.  I think there's a

14   disconnect with respect to this statute because we're not

15   talking about a statute that really regulates the core

16   competencies and knowledge of hospitals:  Patient care, doctor

17   staffing, nurse.  We're talking really about the regulation of

18   business transactions.

19           Think about the 61 members that we have.  37 of them

20   are rural hospitals.  We have frontier hospitals.  That notion

21   of this being within our core sophistication, I think there's

22   daylight between what the statute is regulating and what we

23   have.

24           THE COURT:  That's a fair point.  But also, anyone

25   who is doing a business transaction in the millions of dollars

1    with private equity or out-of-state corporate capital, they

2    have pretty darn sophisticated advisors.

3            MR. DANIELS:  I take Your Honor's point.  We're not

4    dealing with the Papachristou quintessential -- that being

5    said, those arguments can slightly prove too much in this case,

6    particularly given that the revenue thresholds, while they may

7    seem significant, are not -- I think sweep in an undecidedly

8    large number of transactions.

9            The other point that Your Honor made was the

10   availability of pre-enforcement administrative review, and we

11   take that point.  But in our view, again, it may prove too much

12   in this case; one, because we think that pre-enforcement review

13   is really whether you're a covered transaction, whether you

14   have to get in the door, first and foremost, and it won't get

15   into the substantive merits of the transaction in our view.

16           THE COURT:  Maybe I need to go back and double-check

17   this, and wherever you can point me to, I would appreciate.

18   But I thought that the idea behind some of the preliminary

19   reviews is not just are you a covered transaction, but are we

20   likely to approve it or not.

21           MR. DANIELS:  I will check this, Your Honor.  I

22   believe there is an opportunity for pre-preliminary review, and

23   I have no reason to believe that the agency has closed its

24   doors either informally or formally to parties who wish to

25   contact the agency.  But I think that for us, relying on that

1   as a basis to kind of water down the leniency standard, when

2   you go back to the core concern that we have, which deals with

3   delegation and the scope of authority that's granted to the

4   enforcing agency saying, "Well, you can talk to the policemen

5   after the fact," so to speak, is somewhat of a weaker

6   rationale, we believe.  I may have one or two points, but I'm

7   happy to answer any questions.

8           THE COURT:  I'm not shy about interrupting with

9   questions.  If you need more time, or if you want to take a

10  little recess, that's fine.  We can even hear from Ms. Van Loh,

11  and if you want to raise new points, as well as rebuttal

12  points, I'll let you do that.  That's fine.  I'm just trying to

13  get the right answer here.

14          MR. DANIELS:  Thank you, Your Honor.

15          THE COURT:  Ms. Van Loh, speaking of trying to get

16  the right answer, in addition to responding to anything that

17  Mr. Daniels has said, in addition to making any other points

18  you want to make, are there any errors -- factual or otherwise

19  or legal -- that you want to correct in my tentative?  Because

20  if my tentative becomes the actual, and if plaintiff doesn't

21  like it, they're going to appeal.  Now is a good time for you

22  to correct any errors I've made.

23          MS. VAN LOH:  Your Honor, I think the only thing I

24  might raise is on page 31 you sort of shift into an overbreadth

25  challenge and conclude that they don't have standing to raise

1    an overbreadth challenge.  My understanding of the case law is
2    that overbreadth is actually a distinct claim.
3              THE COURT:  Right.
4              MS. VAN LOH:  Our position is that the association
5    does not have standing to raise an as-applied challenge here
6    under the vagueness doctrine.
7              THE COURT:  So let's focus in on that and then get
8    back to the other points.
9              Am I right in thinking that as long as every member
10   of the plaintiff association is clearly and unambiguously a
11   healthcare entity under the statute, then this plaintiff may
12   not be heard to argue that "healthcare entity" is a vague or
13   ambiguous term?
14             MS. VAN LOH:  Yes.
15             THE COURT:  And what's the legal authority for that
16   conclusion?
17             MS. VAN LOH:  I actually addressed that in the
18   opposition to the reply on page 8.  The case we cited was
19   Gospel Missions of America v. City of Los Angeles.  The quote
20   is that "speculation about possible vagueness and hypothetical
21   situations not before the Court" -- in brackets -- "will not
22   support a facial attack on a statute when it is surely valid
23   'in the vast majority of its intended applications.'"
24             We also cite United States v. Johnson, which says,
25   "Unless First Amendment freedoms are implicated, a vagueness

1    challenge may not rest on arguments that the law is vague in

2    its hypothetical applications, but must show that the law is

3    vague as applied to facts of the case at hand."

4              THE COURT:  Now, that last point is sort of morphing

5    from facial to as-applied challenge.

6              MS. VAN LOH:  I think -- I understand Your Honor's

7    concerns and possibly confusion about this.  I have also

8    struggled with how to interpret the cases, because the lines

9    seem to vary by case, and I think really what we're talking

10   about is there's sort of a spectrum of how we look at these

11   things.  And if you're talking about -- and this goes back to

12   the Hoffman standard -- if you're talking about economic

13   regulation and sophisticated parties, then the law tolerates

14   more vagueness in the statute.

15             So when we say "in the vast majority of its intended

16   application," I mean, that also sounds like an entirely

17   different standard in some sense.  But I think what I take from

18   that is that you -- if you're in a situation where you have 61

19   members, all of whom are healthcare entities, then you really

20   don't have the solid basis to challenge what the definition of

21   healthcare entity might be.

22             THE COURT:  Let's get to the other two issues that I

23   was talking to Mr. Daniels about, and then I'll let you say

24   anything you want, I really will.

25             But it's unclear to me whether the preliminary

1    reviews are only whether or not the transaction is covered such

2    that there must be notice given, or whether there's some

3    opportunity for prospective business entities to get some

4    guidance from OHA as to whether or not on the merits, on the

5    review criteria, this is likely to be approved, approved with

6    conditions, disapproved, things like that.

7              So what does the law provide in that area?

8              MS. VAN LOH:  So I think that the pre-notice -- so

9    there is a pre-notice conference, and I think you can also

10   informally reach out to OHA, I believe.  And as far as the -- I

11   don't know that OHA would say informally "Oh, we will probably

12   give you these conditions and then approve the transaction,"

13   just because there's so much more.  This is not something that

14   can be decided in an informal conversation.  It depends on the

15   submissions that the parties make to support the transaction.

16             But the preliminary review process is very fast

17   actually.  So I think the importance of the pre-filing

18   conference is so that you can say whether or not the

19   transaction that you're contemplating would even require

20   notice.

21             THE COURT:  I think that's probably the easier of the

22   questions.  I can imagine business parties saying, "Yeah, we

23   probably do have to give notice.  But what I want to know is,

24   are we going to get approved or approved with conditions?  That

25   will affect whether we're even willing to provide the notice

1    and move further, or whether we will abandon this proposal and

2    maybe go try it in some other state."

3            So how do they go about finding out in a relatively

4    efficient way whether or not they're likely to get approval?

5            MS. VAN LOH:  So I think at that point they would

6    look probably to the sub-regulatory guidance documents, which

7    are very thorough and comprehensive and provide examples of the

8    types of transactions and types of situations where a reduction

9    in essential healthcare services might happen.

10           So if you're talking about, for example, putting a

11    bunch of private equity into a particular hospital that is

12    maybe struggling financially, and the intention of the merger

13    or the influx of money is to completely revamp how the hospital

14    system works and streamline and lay people off and close -- you

15    know, reduce the services.  I mean, it's pretty clear, under

16    those circumstances, you're talking about something that will

17    be implicating the concerns that are meant to be addressed in

18    application of the law.

19           THE COURT:  So you're saying that the parties to a

20    prospective transaction can look at the law and have a pretty

21    good sense themselves whether it's likely to be approved or not

22    as opposed to going through any type of procedure with OHA to

23    get advance indications?

24           MS. VAN LOH:  I think that's generally true.  On the

25    margins, there might be some confusion, or it may be less clear

1    if you're not -- if you're sort of on the edge of how many --

2    how do you exactly apply it.  They also have the list of the

3    eight factors to consider whether there has been a substantial

4    reduction in essential services.

5            THE COURT:  Okay.  Now, I'm going to change topics a

6    little bit.  One of the points that Mr. Daniels makes is that

7    the statute itself doesn't give any guidance to OHA on how

8    to -- whether or not to approve the transaction.  So assume

9    it's covered, but they don't give enough guidance on whether to

10   approve it.  I thought that the statute says you approve it or

11   disapprove it based upon whether it reduces the availability of

12   healthcare services, unreasonably increases price, and a few

13   other criteria.

14           No. 1, am I right on that, in the statute?

15           No. 2, Mr. Daniels says, well, even if that is right,

16   there is this other criteria "or otherwise violative of the

17   law" or "against what OHA wants to do," and that essentially

18   gives them a blank check.  I would like to hear defendants'

19   response to that argument, please.

20           MS. VAN LOH:  So I think your interpretation is

21   correct, that the statute does require OHA to approve or

22   disapprove a transaction based on the factors that you suggest.

23   I think with respect to maybe the -- I don't know if this is

24   one we were calling a residual cause or not -- but the

25   statutory provision allowing OHA to promulgate additional

1    regulations, I don't think we have a basis to strike down the

2    entire statute because the rules that OHA promulgated are --

3    they're given an opportunity to provide additional criteria

4    that would further the purposes of the legislature enacting the

5    statute.  You can see by looking at the rules that they then

6    enacted that that is what they did, and that's what they do.

7          And the question here isn't whether or not the rules

8    that they have -- and the specific elements that people need to

9    be looking at when they're evaluating these transactions.  The

10   question of whether those are appropriate, whether they're too

11   broad or too narrow, I mean, that's really not the question.

12   The question is, the fact that OHA has the option of

13   promulgating additional criteria and does so, does that make

14   the statute facially invalid?  And it doesn't.  It does not.

15         THE COURT:  Am I correct in understanding defendants'

16   position that if OHA were to issue some criteria that might be

17   inappropriate, that can be dealt with an as-applied challenge

18   to that criteria but should not affect defendants' motion for

19   summary judgment against the facial challenge that's brought

20   here?

21         MS. VAN LOH:  That's correct Your Honor.

22         THE COURT:  Okay.

23         MS. VAN LOH:  I don't have anything else I want to

24   add.  We are prepared to accept the tentative.  If you have

25   further questions for me at this point, I'm happy to answer

32

1   them.

2          THE COURT:  Anything else you want me to correct in

3   the tentative, if that's going to be the general direction I go

4   in?

5          MS. VAN LOH:  Page 31 was my main one on the

6   overbreadth.

7          THE COURT:  All right.  Then let's hear further from

8   Mr. Daniels, and he is not going to be limited to rebuttal.

9   Then I'll invite you to make any further comments, Ms. Van Loh,

10  if you wish.

11         MR. DANIELS:  Thank you, Your Honor.

12         With respect to the application and the pre-notice

13  conference, I would cite Your Honor to 409-070-0042.  That's an

14  OAR cite.

15         THE COURT:  409-070- --

16         MR. DANIELS:  -- -0042.  (1) of that regulation says

17  that "a party may, but shall not be required to submit a

18  written application to the authority requesting a determination

19  whether such transaction is a covered transaction pursuant to

20  these rules."

21         THE COURT:  Okay.  What do I learn from that, or

22  what's the point of that?

23         MR. DANIELS:  The point of that is that this is the

24  rule that Your Honor was thinking about in the sense of what do

25  you get to learn before you then get engaged in the notice?

1    And it's not substantive on approval criteria.

2            THE COURT:  And it sounds like Ms. Van Loh is

3    agreeing that there really isn't an opportunity, at least not

4    one provided for under the law, including the regulations, to

5    get some type of advanced hint as to whether or not the

6    transaction, if applied for, will be approved.

7            MR. DANIELS:  And that's really the rub, Your Honor,

8    because I think Your Honor has identified criteria that are

9    laid out in the statute.  But again, that doesn't help a party

10   if they look to the statute and say, "Great.  We're going to

11   improve access to care.  Great.  We are going to limit costs.

12   Great.  We are going to" -- and then fill in the blank of

13   whatever the rule is.

14           If you look at (5) of the statute -- this is 415.501

15   and then (9) of the statute, those sections make, as a

16   necessary requirement, you must satisfy whatever they put in

17   the rule, in addition to the statute.

18           The final point that I'd make with respect to the

19   list of eight factors, I think what's interesting about that

20   list is that it uses a numerical one-third reduction standard.

21   But some of the factors are not subject to any kind of

22   numerical test at all.  They talk about improving access to

23   consultations, and so those are not helpful limiting factors.

24   They just enhance the ambiguity of the statute.

25           THE COURT:  By the way, back to the (5) and (9),

34

 1    isn't that something -- and if I end up going in the direction

 2    of the tentative and send you on the delegation issue to the

 3    Oregon courts, ultimately it would end up before the Oregon

 4    Supreme Court, I'd suspect.  If not, you'd at least have a

 5    right to get to the Oregon Court of Appeals, you can make the

 6    argument that there's insufficient standards provided by the

 7    state legislature on points (5) and (9), and if the Oregon

 8    appellate courts agree with you, one way to deal with that is

 9    to simply strike (5) and (9), right?

10          MR. DANIELS:  I think that's right, Your Honor.  I

11    think they would be free, as maybe Your Honor is not free, to

12    do a little more surgery in limiting construction.  But that

13    also is at the heart of statutory regime.  It really is a

14    fundamental -- notwithstanding a lot of the general language,

15    it's fundamentally giving a grant of authority:  OHA, you go

16    figure this out.

17          THE COURT:  But how can you say that, given that OHA,

18    in their regulatory guidance so far, hasn't put any more

19    requirements under (5) or (9).  They haven't said no to anybody

20    based on this additional requirement.  They may never do that.

21    So it may be the case that at some point with an as-applied

22    challenge, if they try to do it, those may be struck down, and

23    it's not an uncommon act, at least on the state Supreme Court

24    side on the state law and the Supreme Court with federal law,

25    to say that one particular piece of a statute on a as-applied

1   challenge should be eliminated to avoid constitutional

2   problems -- the constitutional avoidance doctrine.  But that's

3   not where we are right now.

4           So since it hasn't been done, I don't see how you can

5   say it's at the heart of what your client is really complaining

6   about.

7           MR. DANIELS:  So if I can kind of reformulate the

8   hypothetical.  Let's say that we were to make a rule challenge

9   to the rules and say, "Hey, look, you probably have these

10  rules.  We think the legislature said something different,"

11  that would fail in this case, because the legislature has said,

12  "Whatever the standard is, it's whatever you put in your

13  rules."  What they put in their rules is not only the statutory

14  requirements, but other things, which I cited earlier in my

15  argument.

16          So we are kind of between a rock and a hard place

17  here.  If the legislature says you may not engage in an

18  injurious transaction that is contrary to rule but doesn't give

19  any standard, then we're stuck.

20          THE COURT:  Well, you're not, because the Oregon

21  appellate courts -- certainly the Oregon Supreme Court -- would

22  have the ability to say under the Oregon non-delegation

23  doctrine, if they agree with you, "You're right.  We keep the

24  rest of the statute, but we strike that particular piece."  So

25  you're not between a rock and a hard place.  You've got an

36

```
 1    avenue of relief.  And I just think that supports -- because
 2    that's something that the state courts can do that I can't
 3    do -- but that supports why in your second claim I shouldn't
 4    rule for you or against you, but I should just decline
 5    jurisdiction and send that piece back to the state courts.
 6              MR. DANIELS:  And I agree with that as a remedy, and
 7    I agree with Your Honor's observations.  Respectfully, we think
 8    that's not exclusive, for the reasons that I explained earlier.
 9              THE COURT:  Okay.  Fair enough.
10              Ms. Van Loh, anything you would like to say further?
11    Otherwise, I will take it under advisement.
12              MS. VAN LOH:  No, Your Honor.
13              THE COURT:  I do want to compliment both sides -- I
14    was already going to compliment you for outstanding briefing on
15    this.  I will now compliment both sides for outstanding oral
16    advocacy.  I take the two cross-motions for summary judgment
17    under advisement as of today.  And given my own schedule, I
18    will promise you a decision no later than a week from Friday,
19    as I'm going to be gone for about four weeks.  So I will get
20    this out with a final decision no later than a week from
21    Friday, probably sooner.
22              Thank you.
23              MR. DANIELS:  Thank you, Your Honor.
24              MS. VAN LOH:  Thank you, Your Honor.
25              (Court adjourned.)
```

1

2

3                              --oOo--

4

5          I certify, by signing below, that the foregoing is a

6   correct transcript of the record of proceedings in the

7   above-entitled cause.  A transcript without an original

8   signature, conformed signature, or digitally signed signature

9   is not certified.

10
    /s/ Dennis W. Apodaca                      May 21, 2024
11  DENNIS W. APODACA, RDR, RMR, FCRR, CRR              DATE
    Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. DANIELS: [39]
MS. VAN LOH: [16]  4/13 4/19 25/22 26/3 26/13 26/16 27/5 28/7 29/4 29/23 30/19 31/20 31/22 32/4 36/11 36/23
THE COURT: [53]

'
'in [1]  26/23

-
--oOo [1]  37/3
-0042 [1]  32/16

/
/s [1]  37/10

0
0042 [2]  32/13 32/16
070 [1]  32/15

1
100 [1]  2/5
1000 [1]  1/24
1486 [1]  4/6

2
2024 [3]  1/6 4/1 37/10
21 [3]  19/7 21/8 37/10
22 [2]  21/8 21/10
2362 [2]  5/24 8/21

3
3000 [1]  2/3
301 [1]  1/24
31 [2]  25/24 32/5
326-8191 [1]  1/25
37 [1]  23/19
3:22-cr-01486-SI [1]  1/5

4
409-070 [1]  32/15
409-070-0042 [1]  32/13
415.501 [1]  33/14

5
503 [1]  1/25

6
60 [1]  17/12
61 [3]  19/25 23/19 27/18

7
760 [1]  2/3

8
8191 [1]  1/25

9
97201 [1]  2/6
97204 [1]  1/24
97205 [1]  2/3

A
a facial [1]  16/22
abandon [1]  29/1
ability [4]  6/14 7/17 15/14 35/22
about [42]
above [1]  37/7

above-entitled [1]  37/7
absence [1]  10/24
absolutely [2]  12/20 12/23
abstract [1]  18/23
accept [2]  21/3 31/24
acceptable [1]  9/9
access [2]  33/11 33/22
accountability [1]  7/18
acknowledges [1]  6/10
act [1]  34/23
actions [1]  12/8
activity [1]  9/17
actual [2]  13/5 25/20
actually [4]  22/8 26/2 26/17 28/17
ad [1]  7/22
add [1]  31/24
addition [4]  17/14 25/16 25/17 33/17
additional [4]  30/25 31/3 31/13 34/20
addressed [2]  26/17 29/17
adequate [1]  11/19
adjourned [1]  36/25
administrative [5]  8/25 9/20 10/22 19/3 24/10
admonitions [1]  23/7
adopt [1]  22/19
advance [6]  11/12 11/14 11/23 12/8 16/3 29/23
advanced [1]  33/5
adversely [3]  11/10 15/22 16/10
advisement [2]  36/11 36/17
advisors [1]  24/2
advocacy [1]  36/16
affect [4]  11/10 16/10 28/25 31/18
affected [1]  15/22
after [1]  25/5
afternoon [5]  4/4 4/9 4/11 4/14 4/16
again [4]  11/1 15/18 24/11 33/9
against [3]  30/17 31/19 36/4
agency [21]  8/11 9/21 15/5 15/7 15/12 15/19 15/20 16/2 16/17 16/20 17/6 17/8 17/10 17/22 17/24 18/4 19/16 19/17 24/23 24/25 25/4
agency's [1]  14/10
agree [9]  19/4 20/11 22/3 22/24 22/25 34/8 35/23 36/6 36/7
agreeing [1]  33/3
al [2]  1/7 4/6
all [10]  4/17 4/17 4/21 10/19 19/10 20/16 21/9 27/19 32/7 33/22
allow [1]  8/11
allowing [2]  7/22 30/25
alluded [1]  23/11
almost [1]  19/18
already [2]  21/1 36/14
also [14]  7/19 9/18 9/23 11/19 13/21 14/9 22/12 23/24 26/24 27/7 27/16 28/9 30/2 34/13
am [7]  10/3 12/14 15/16 16/13 26/9 30/14 31/15
ambiguity [3]  20/6 20/23 33/24
ambiguous [2]  21/18 26/13
amend [2]  16/14 16/15
Amendment [1]  26/25
America [1]  26/19
amount [1]  9/9
analogize [1]  12/23
analysis [1]  22/9
and/or [1]  11/3
Angeles [1]  26/19
animate [1]  6/23
animating [1]  8/8
another [2]  5/24 17/19
answer [5]  22/9 25/7 25/13 25/16 31/25

**A**

**antitrust [1]** 11/13
**any [17]** 14/2 14/18 16/8 17/8 17/24 18/4 20/3 25/7 25/17 25/18 25/22 29/22 30/7 32/9 33/21 34/18 35/19
**anybody [1]** 34/19
**anyone [1]** 23/24
**anything [7]** 16/20 18/1 25/16 27/24 31/23 32/2 36/10
**AORs [1]** 17/13
**Apodaca [3]** 1/23 37/10 37/11
**apologize [1]** 13/12
**appeal [1]** 25/21
**appeals [2]** 12/5 34/5
**appearance [2]** 4/8 4/13
**APPEARANCES [1]** 2/1
**appellate [2]** 34/8 35/21
**application [4]** 27/16 29/18 32/12 32/18
**applications [1]** 27/2
**applications.' [1]** 26/23
**applied [9]** 18/24 20/21 26/5 27/3 27/5 31/17 33/6 34/21 34/25
**applies [2]** 18/4 23/7
**apply [3]** 15/23 21/16 30/2
**appreciate [2]** 20/17 24/17
**approach [1]** 5/2
**appropriate [2]** 4/25 31/10
**approval [8]** 13/5 14/11 14/19 14/20 16/18 17/5 29/4 33/1
**approve [13]** 13/21 13/22 13/22 13/23 14/2 15/8 15/12 24/20 28/12 30/8 30/10 30/10 30/21
**approved [11]** 15/5 15/19 17/14 18/9 18/22 28/5 28/5 28/24 28/24 29/21 33/6
**approves [1]** 15/5
**approximately [1]** 19/24
**arbitrary [3]** 8/9 9/23 22/13
**are [61]**
**area [3]** 10/6 23/4 28/7
**areas [2]** 5/10 6/6
**aren't [1]** 9/4
**argue [1]** 26/12
**argues [1]** 21/4
**argument [10]** 8/24 20/3 20/5 20/14 21/3 21/17 21/24 30/19 34/6 35/15
**arguments [3]** 4/24 24/5 27/1
**as [52]**
**as the [1]** 28/10
**as-applied [6]** 18/24 26/5 27/5 31/17 34/21 34/25
**ask [3]** 13/20 20/12 20/12
**asking [2]** 16/22 16/24
**assert [1]** 20/14
**association [9]** 1/4 4/5 19/23 20/4 20/13 20/16 21/20 26/4 26/10
**associational [1]** 20/10
**assume [1]** 30/8
**assuming [1]** 20/19
**attack [1]** 26/22
**authorities [2]** 7/17 7/22
**authority [9]** 8/4 8/5 11/17 11/25 18/17 25/3 26/15 32/18 34/15
**availability [3]** 16/1 24/10 30/11
**avenue [3]** 1/24 2/3 36/1
**avoid [1]** 35/1
**avoidance [1]** 35/2

**B**

**back [11]** 7/18 8/14 19/2 20/9 22/20 24/16 25/2 26/8 27/11 33/25 36/5
**based [3]** 30/11 30/22 34/20
**basic [1]** 7/21

**basically [3]** 7/4 15/6 15/20
**basis [4]** 7/23 25/1 27/20 31/1
**be [53]**
**because [20]** 5/17 6/2 8/6 8/10 9/19 14/22 17/4 19/14 19/15 22/16 23/14 24/12 25/19 27/8 28/13 31/2 33/8 35/11 35/20 36/1
**becomes [1]** 25/20
**been [2]** 30/3 35/4
**before [8]** 1/13 11/13 12/4 12/8 18/24 26/21 32/25 34/3
**begin [1]** 4/25
**Beginning [1]** 6/8
**behind [1]** 24/18
**being [3]** 20/19 23/21 24/4
**believe [5]** 16/18 24/22 24/23 25/6 28/10
**below [1]** 37/5
**between [8]** 5/24 6/8 6/10 6/20 21/8 23/22 35/16 35/25
**beyond [1]** 18/1
**Bill [2]** 5/24 8/21
**bit [4]** 20/7 21/1 21/2 30/6
**blank [2]** 30/18 33/12
**boldly [1]** 21/3
**both [6]** 5/15 6/25 7/9 9/21 36/13 36/15
**brackets [1]** 26/21
**Brad [2]** 2/2 4/9
**brief [2]** 21/10 22/8
**briefing [3]** 19/20 20/5 36/14
**briefs [1]** 5/7
**broad [5]** 10/9 10/16 23/8 23/8 31/11
**brought [3]** 10/2 16/23 31/19
**built [1]** 13/11
**bunch [1]** 29/11
**burden [2]** 20/20 20/24
**business [4]** 23/18 23/25 28/3 28/22
**buy [1]** 18/20

**C**

**call [1]** 8/2
**calling [1]** 30/24
**came [2]** 20/9 22/10
**can [26]** 9/1 9/21 9/23 13/18 13/22 13/25 21/14 21/22 22/6 22/20 24/5 24/17 25/4 25/10 28/9 28/14 28/18 28/22 29/20 31/5 31/17 34/5 34/17 35/4 35/7 36/2
**can't [3]** 8/19 12/2 36/2
**cannot [1]** 17/15
**capital [1]** 24/1
**care [4]** 11/18 12/12 23/16 33/11
**caregivers [1]** 11/5
**carry [1]** 10/12
**case [19]** 4/5 4/6 6/24 7/19 8/22 9/14 9/16 10/20 12/4 17/25 20/20 24/5 24/12 26/1 26/18 27/3 27/9 34/21 35/11
**cases [6]** 9/3 9/18 10/6 19/5 19/5 27/8
**category [1]** 22/10
**cause [2]** 30/24 37/7
**caused [2]** 11/3 11/4
**certainly [5]** 6/17 8/20 12/10 22/24 35/21
**certified [1]** 37/9
**certify [1]** 37/5
**challenge [33]** 5/25 9/18 10/1 11/21 11/22 12/2 12/7 12/19 13/1 13/6 14/1 14/3 16/22 16/23 18/24 20/19 20/20 20/23 21/15 22/2 22/11 22/17 25/25 26/1 26/5 27/1 27/5 27/20 31/17 31/19 34/22 35/1 35/8
**challenger [1]** 22/15
**challenges [1]** 21/5
**challenging [2]** 5/8 11/25
**change [3]** 11/9 16/4 30/5
**charged [3]** 11/12 11/17 23/13
**check [3]** 24/16 24/21 30/18

**C**

**Circuit [1]** 9/4
**circulated [1]** 4/18
**circumstances [3]** 10/15 18/15 29/16
**cite [3]** 26/24 32/13 32/14
**cited [4]** 7/19 22/8 26/18 35/14
**City [1]** 26/19
**civil [1]** 5/15
**claim [3]** 5/8 26/2 36/3
**classic [1]** 9/11
**clause [1]** 17/24
**clauses [1]** 8/18
**clean [1]** 6/20
**clear [3]** 12/10 29/15 29/25
**clearly [5]** 20/8 20/16 21/20 21/23 26/10
**client [2]** 12/6 35/5
**clinics [1]** 18/20
**close [3]** 16/2 21/14 29/14
**closed [1]** 24/23
**cloth [1]** 6/3
**commentators [1]** 7/25
**comments [1]** 32/9
**compensation [1]** 11/6
**competencies [1]** 23/16
**complaining [1]** 35/5
**complaint [1]** 6/12
**completely [2]** 21/13 29/13
**compliment [3]** 36/13 36/14 36/15
**comply [3]** 9/23 13/4 13/10
**component [1]** 8/2
**comprehensible [4]** 10/9 10/17 19/8 21/9
**comprehensive [2]** 14/20 29/7
**concept [1]** 6/11
**concern [7]** 6/22 7/12 7/16 8/13 8/17 20/7 25/2
**concerns [3]** 5/18 27/7 29/17
**conclude [1]** 25/25
**conclusion [1]** 26/16
**concurrence [3]** 6/25 7/7 7/13
**concurrently [1]** 8/19
**conditions [9]** 13/22 13/23 13/24 14/1 14/2 14/11 28/6 28/12 28/24
**conduct [3]** 19/10 19/13 22/16
**conference [3]** 28/9 28/18 32/13
**conformed [1]** 37/8
**confusion [2]** 27/7 29/25
**consider [1]** 30/3
**consistent [1]** 15/9
**constitutional [7]** 5/15 6/4 6/16 7/14 9/12 35/1 35/2
**construction [2]** 16/24 34/12
**consultations [1]** 33/23
**consumers [2]** 17/16 17/18
**contact [1]** 24/25
**contemplating [1]** 28/19
**contend [1]** 6/17
**contested [3]** 8/23 12/4 17/25
**context [2]** 9/10 9/16
**contrary [5]** 17/15 18/2 18/3 18/8 35/18
**contrast [1]** 6/8
**conversation [1]** 28/14
**conveying [1]** 8/4
**core [4]** 13/1 23/15 23/21 25/2
**corollary [1]** 7/11
**corporate [5]** 11/3 11/9 18/5 18/7 24/1
**correct [10]** 12/20 12/23 14/3 25/19 25/22 30/21 31/15 31/21 32/2 37/6
**costs [4]** 12/13 15/25 16/10 33/11
**could [1]** 11/21

**counsel [2]** 4/7 4/12
**couple [1]** 22/22
**course [3]** 10/21 20/9 20/10
**court [22]** 1/1 1/14 1/23 4/3 5/14 7/4 7/5 7/15 8/7 8/12 9/4 17/3 22/25 23/1 26/21 34/4 34/5 34/23 34/24 35/21 36/25 37/11
**Court's [5]** 6/7 6/9 6/15 6/19 8/25
**Courthouse [1]** 1/23
**courts [6]** 12/4 34/3 34/8 35/21 36/2 36/5
**covered [15]** 14/7 16/4 16/6 16/7 16/8 16/8 19/21 20/15 22/1 22/16 24/13 24/19 28/1 30/9 32/19
**covers [2]** 23/8 23/9
**cr [1]** 1/5
**created [1]** 6/3
**criminal [2]** 5/15 9/11
**criteria [22]** 15/11 15/18 15/23 16/1 16/9 16/15 16/16 17/5 17/7 17/9 17/13 17/16 18/1 28/5 30/13 30/16 31/3 31/13 31/16 31/18 33/1 33/8
**critical [2]** 12/25 16/16
**cross [4]** 4/21 15/4 19/12 36/16
**cross-motions [2]** 4/21 36/16
**cross-reference [1]** 19/12
**cross-references [1]** 15/4
**crossed [1]** 6/4
**CRR [1]** 37/11
**CSR [1]** 1/23
**cure [1]** 9/1
**current [1]** 21/4
**cv [1]** 4/6

**D**

**Daniels [9]** 2/2 4/10 4/11 4/25 25/17 27/23 30/6 30/15 32/8
**darn [1]** 24/2
**DATE [1]** 37/11
**Davis [2]** 6/25 7/13
**daylight [1]** 23/22
**deal [2]** 19/5 34/8
**dealing [1]** 24/4
**deals [3]** 23/3 23/5 25/2
**dealt [1]** 31/17
**decide [2]** 13/25 19/17
**decided [2]** 16/20 28/14
**decidedly [1]** 23/10
**decision [3]** 17/25 36/18 36/20
**decisions [3]** 5/14 7/22 7/24
**decline [1]** 36/4
**decrease [1]** 11/6
**defendant [1]** 21/3
**defendants [5]** 1/8 2/4 4/12 4/15 20/11
**defendants' [4]** 8/24 30/18 31/15 31/18
**define [4]** 6/14 7/17 10/18 22/4
**defined [1]** 20/4
**definition [1]** 27/20
**Delaware [2]** 18/5 18/7
**delegates [1]** 7/21
**delegation [13]** 5/18 6/9 6/11 6/15 6/18 6/22 7/20 8/7 8/11 8/16 25/3 34/2 35/22
**delivered [1]** 11/11
**delivery [2]** 15/21 16/10
**demonstrate [2]** 20/22 22/15
**demonstrates [1]** 6/2
**denial [1]** 14/11
**Dennis [3]** 1/23 37/10 37/11
**Department [1]** 2/5
**dependent [1]** 14/20
**depends [2]** 9/10 28/14
**derailed [1]** 22/20

**D**

**describe [1]**  10/11
**described [2]**  8/8 19/3
**describing [1]**  12/21
**description [1]**  16/15
**designed [1]**  10/20
**detail [1]**  16/5
**detailed [1]**  22/8
**determination [2]**  14/10 32/18
**did [4]**  7/6 20/6 22/8 31/6
**didn't [3]**  13/2 19/14 20/8
**difference [1]**  21/8
**different [6]**  5/11 12/5 15/9 23/2 27/17 35/10
**digitally [1]**  37/8
**Dimaya [1]**  6/24
**diminish [4]**  15/13 15/14 15/24 15/25
**diminishes [1]**  17/20
**diminution [1]**  11/3
**direction [2]**  32/3 34/1
**disagree [4]**  6/19 9/8 22/3 22/3
**disagreement [1]**  6/7
**disapprove [2]**  30/11 30/22
**disapproved [1]**  28/6
**disclosed [1]**  12/9
**disclosure [1]**  13/20
**disconnect [1]**  23/14
**discussed [1]**  20/2
**discussion [4]**  5/4 13/16 19/2 19/20
**distinct [5]**  8/16 8/17 8/17 8/19 26/2
**distinction [2]**  10/5 10/8
**distracted [1]**  21/1
**DISTRICT [4]**  1/1 1/2 1/14 1/23
**divide [1]**  6/20
**dixit [1]**  15/20
**do [28]**  9/7 9/7 9/23 10/14 13/4 13/25 16/6 16/15 17/4 19/8
 19/9 20/10 22/3 22/4 25/12 28/23 29/3 30/2 30/17 31/6
 32/21 32/24 34/12 34/20 34/22 36/2 36/3 36/13
**doctor [1]**  23/16
**doctrinally [1]**  5/8
**doctrine [5]**  5/18 8/9 26/6 35/2 35/23
**doctrines [1]**  8/18
**documents [1]**  29/6
**does [14]**  4/23 10/12 10/12 10/13 15/1 16/9 17/13 20/13
 26/5 28/7 30/21 31/13 31/13 31/14
**doesn't [6]**  8/18 25/20 30/7 31/14 33/9 35/18
**doing [3]**  6/4 13/19 23/25
**dollars [1]**  23/25
**don't [21]**  10/4 14/8 15/24 15/24 15/25 16/12 17/3 17/21
 17/21 19/5 20/2 22/25 23/7 25/25 27/20 28/11 30/9 30/23
 31/1 31/23 35/4
**done [3]**  10/16 12/8 35/4
**door [1]**  24/14
**doors [1]**  24/24
**double [1]**  24/16
**double-check [1]**  24/16
**down [5]**  5/15 21/2 25/1 31/1 34/22
**draw [1]**  10/5
**drew [1]**  5/24
**drug [1]**  10/21
**due [2]**  8/1 8/2

**E**

**each [1]**  10/14
**earlier [2]**  35/14 36/8
**easier [1]**  28/21
**economic [6]**  9/13 9/16 10/15 22/24 23/2 27/12
**edge [1]**  30/1

**effect [1]**  8/7
**efficient [1]**  29/4
**eight [2]**  30/3 33/19
**either [4]**  10/9 11/10 17/24 24/24
**elements [1]**  31/8
**eliminated [1]**  35/1
**else [3]**  18/16 31/23 32/2
**email [1]**  4/22
**enacted [1]**  31/6
**enacting [1]**  31/4
**encouragement [1]**  22/13
**end [2]**  34/1 34/3
**enforce [1]**  9/24
**enforcement [7]**  8/10 8/12 9/23 20/24 22/13 24/10 24/12
**enforcing [5]**  7/17 7/21 8/5 8/11 25/4
**engage [5]**  10/13 11/15 12/3 13/17 35/17
**engaged [1]**  32/25
**enhance [1]**  33/24
**enough [6]**  12/16 13/6 14/22 20/8 30/9 36/9
**ensures [1]**  8/3
**enter [2]**  4/7 4/12
**enterprise [1]**  6/1
**entire [1]**  31/2
**entirely [4]**  6/13 14/20 19/4 27/16
**entities [10]**  16/4 19/21 19/22 20/4 21/19 21/22 21/23
 23/12 27/19 28/3
**entitled [1]**  37/7
**entity [8]**  20/6 20/14 20/15 21/21 22/1 26/11 26/12 27/21
**envision [1]**  10/1
**equity [4]**  11/2 11/10 24/1 29/11
**errors [2]**  25/18 25/22
**essential [2]**  29/9 30/4
**essentially [2]**  17/19 30/17
**et [2]**  1/7 4/6
**evaluating [2]**  10/1 31/9
**even [7]**  9/20 11/5 14/2 25/10 28/19 28/25 30/15
**every [2]**  21/19 26/9
**everyone [1]**  4/4
**everywhere [1]**  19/12
**evidence [1]**  12/22
**exactly [1]**  30/2
**example [3]**  18/2 18/6 29/10
**examples [1]**  29/7
**excessive [1]**  8/7
**exclusive [1]**  36/8
**expanded [1]**  12/10
**experts [1]**  15/21
**explained [3]**  7/25 17/10 36/8
**explanation [1]**  17/9
**express [3]**  7/24 9/12 20/8
**expressly [3]**  5/17 7/1 7/16
**extensively [1]**  5/21
**extent [1]**  8/25
**extremely [2]**  23/8 23/8

**F**

**face [1]**  5/7
**facial [12]**  12/6 16/22 16/23 20/20 20/23 21/15 22/2 22/10
 22/17 26/22 27/5 31/19
**facially [2]**  21/6 31/14
**facilities [1]**  11/20
**facing [1]**  5/13
**fact [10]**  6/12 6/13 8/16 10/9 10/18 21/11 21/12 23/12 25/5
 31/12
**factors [7]**  15/9 22/25 30/3 30/22 33/19 33/21 33/23
**facts [1]**  27/3
**factual [1]**  25/18

**F**

**factually [1]** 15/2
**fail [1]** 35/11
**fair [3]** 12/16 23/24 36/9
**fairly [2]** 6/10 22/8
**far [3]** 9/17 28/10 34/18
**fast [1]** 28/16
**fatal [1]** 6/1
**FCRR [1]** 37/11
**federal [3]** 5/8 18/21 34/24
**few [2]** 23/1 30/12
**figure [1]** 34/16
**figuring [1]** 15/21
**file [1]** 11/15
**filing [1]** 28/17
**fill [2]** 10/10 33/12
**final [2]** 33/18 36/20
**financially [1]** 29/12
**finding [1]** 29/3
**fine [4]** 14/2 18/21 25/10 25/12
**firearm [1]** 10/12
**first [5]** 4/7 5/12 6/25 24/14 26/25
**fit [1]** 12/2
**five [1]** 7/5
**focus [4]** 5/4 6/6 8/15 26/7
**follow [1]** 20/25
**follow-up [1]** 20/25
**footnote [1]** 19/19
**foregoing [1]** 37/5
**foremost [1]** 24/14
**formally [1]** 24/24
**forward [2]** 4/24 14/25
**four [1]** 36/19
**framework [1]** 14/4
**frankly [1]** 11/5
**free [3]** 9/12 34/11 34/11
**freedoms [1]** 26/25
**Friday [2]** 36/18 36/21
**frontier [1]** 23/20
**FTC [1]** 11/13
**functions [1]** 19/16
**fundamental [4]** 8/24 14/21 19/15 34/14
**fundamentally [1]** 34/15
**further [11]** 10/11 14/9 14/24 17/24 21/2 29/1 31/4 31/25
  32/7 32/9 36/10

**G**

**gave [1]** 8/13
**general [3]** 6/5 32/3 34/14
**generally [2]** 9/17 29/24
**get [21]** 13/5 14/17 15/3 19/11 19/19 21/14 24/14 24/14
  25/13 25/15 26/7 27/22 28/3 28/24 29/4 29/23 32/25 32/25
  33/5 34/5 36/19
**getting [1]** 18/22
**give [6]** 16/5 28/12 28/23 30/7 30/9 35/18
**given [7]** 17/24 20/15 24/6 28/2 31/3 34/17 36/17
**gives [1]** 30/18
**giving [2]** 12/7 34/15
**go [18]** 12/3 13/18 13/18 13/25 14/8 14/24 14/25 16/2 17/9
  19/14 21/1 22/20 24/16 25/2 29/2 29/3 32/3 34/15
**goes [2]** 7/18 14/9 27/11
**going [23]** 8/14 11/7 11/22 13/10 14/2 14/7 14/7 14/17
  22/13 22/14 22/18 25/21 28/24 29/22 30/5 32/3 32/8 33/10
  33/11 33/12 34/1 36/14 36/19
**gone [1]** 36/19
**good [7]** 4/4 4/9 4/11 4/14 4/16 25/21 29/21
**Gorsuch [3]** 6/25 7/6 7/12

**Gospel [1]** 26/19
**got [2]** 11/1 35/25
**governed [1]** 14/18
**grant [1]** 34/15
**granted [1]** 25/3
**grants [1]** 6/13
**Grayned [1]** 7/19
**great [4]** 13/23 33/10 33/11 33/12
**greater [1]** 20/23
**grounds [2]** 5/16 6/21
**guidance [8]** 9/21 17/25 18/11 28/4 29/6 30/7 30/9 34/18
**guidelines [1]** 10/22

**H**

**hand [1]** 27/3
**handing [2]** 7/16 8/3
**happen [1]** 29/9
**happy [2]** 25/7 31/25
**hard [2]** 35/16 35/25
**has [23]** 7/11 8/7 8/12 8/17 10/2 10/5 10/16 11/2 11/3 15/7
  16/17 17/6 17/8 17/10 17/23 18/4 18/17 24/23 25/17 30/3
  31/12 33/8 35/11
**hasn't [2]** 34/18 35/4
**have [53]**
**haven't [1]** 34/19
**hazardous [2]** 17/15 17/18
**he [3]** 7/13 22/10 32/8
**health [9]** 1/4 4/5 11/7 11/18 11/25 12/12 12/13 18/20
  19/23
**healthcare [31]** 11/4 11/11 11/11 11/20 11/20 15/13 15/15
  15/21 15/22 15/24 16/1 16/4 16/10 16/10 16/11 17/20 19/21
  20/4 20/6 20/15 21/19 21/20 21/22 21/23 22/1 26/11 26/12
  27/19 27/21 29/9 30/12
**hear [3]** 25/10 30/18 32/7
**heard [1]** 26/12
**hearing [4]** 1/11 3/2 12/4 22/17
**heart [2]** 34/13 35/5
**help [1]** 33/9
**helpful [1]** 33/23
**helps [1]** 16/7
**her [2]** 7/5 7/10
**here [20]** 4/4 4/21 6/3 6/18 7/15 10/2 10/4 10/23 11/1 12/7
  13/12 19/5 19/6 19/12 23/10 25/13 26/5 31/7 31/20 35/17
**Here's [1]** 16/3
**Hey [1]** 35/9
**hint [1]** 33/5
**his [3]** 7/1 7/12 7/13
**hoc [1]** 7/22
**Hoffman [3]** 10/19 10/20 27/12
**Honor [37]** 4/9 4/14 5/3 5/20 7/8 7/19 9/6 10/4 10/5 12/20
  12/23 15/17 17/12 18/12 19/1 19/2 19/7 19/25 20/17 22/5
  22/23 23/11 24/9 24/21 25/14 25/23 31/21 32/11 32/13
  32/24 33/7 33/8 34/10 34/11 36/12 36/23 36/24
**Honor's [4]** 10/7 24/3 27/6 36/7
**HONORABLE [1]** 1/13
**hospital [2]** 29/11 29/13
**hospitals [7]** 1/4 4/5 19/23 19/25 23/16 23/20 23/20
**House [2]** 5/24 8/21
**how [13]** 9/24 10/1 19/24 22/4 27/8 27/10 29/3 29/13 30/1
  30/2 30/7 34/17 35/4
**hypothetical [5]** 18/23 20/14 26/20 27/2 35/8

**I**

**I'd [2]** 33/18 34/4
**I'll [7]** 5/9 5/16 8/1 9/14 25/12 27/23 32/9
**I'm [11]** 9/15 13/16 14/5 21/2 21/16 25/6 25/8 25/12 30/5
  31/25 36/19

**I**

**I've [3]** 11/1 21/1 25/22
**idea [2]** 22/23 24/18
**identified [1]** 33/8
**illegal [1]** 10/21
**imagine [1]** 28/22
**impermissible [1]** 8/10
**impermissibly [2]** 7/21 9/2
**impinges [1]** 9/12
**implicated [1]** 26/25
**implicating [1]** 29/17
**importance [2]** 19/3 28/17
**important [3]** 5/9 8/8 8/13
**impose [1]** 22/14
**imposes [1]** 20/23
**imprecise [2]** 19/9 21/8
**imprecision [1]** 21/11
**improve [1]** 33/11
**improving [1]** 33/22
**inappropriate [1]** 31/17
**include [1]** 16/19
**including [2]** 18/5 33/4
**incorrectly [4]** 9/15 10/3 12/14 16/13
**increase [2]** 11/4 15/25
**increased [1]** 15/23
**increases [2]** 12/12 30/12
**increasingly [1]** 7/15
**independent [1]** 18/17
**INDEX [1]** 3/1
**indicate [1]** 5/6
**indications [1]** 29/23
**influx [2]** 11/2 29/13
**inform [1]** 9/21
**informal [1]** 28/14
**informally [3]** 24/24 28/10 28/11
**informing [1]** 14/9
**infusion [1]** 11/9
**initial [2]** 10/24 10/25
**injurious [1]** 35/18
**insufficient [1]** 34/6
**intended [4]** 16/19 17/9 26/23 27/15
**intention [2]** 11/15 29/12
**interest [1]** 22/17
**interesting [1]** 33/19
**interfere [1]** 15/13
**interpret [1]** 27/8
**interpretation [3]** 17/22 17/24 30/20
**interrupt [1]** 13/13
**interrupting [2]** 13/12 25/8
**invalid [1]** 31/14
**invalidating [1]** 6/21
**invitation [1]** 22/12
**invite [4]** 4/7 4/12 9/15 32/9
**inviting [1]** 13/16
**involving [1]** 11/8
**ipsi [1]** 15/20
**is [148]**
**isn't [6]** 13/11 14/4 15/16 31/7 33/3 34/1
**issue [4]** 12/5 19/19 31/16 34/2
**issues [2]** 5/4 27/22
**it [86]**
**it's [22]** 4/25 6/2 8/10 10/17 10/17 13/6 13/15 14/6 14/22
  15/18 17/12 21/18 23/8 27/25 29/15 29/21 30/9 33/1 34/15
  34/23 35/5 35/12
**items [1]** 10/20
**its [13]** 5/7 7/11 8/4 8/17 15/19 16/17 16/21 17/6 23/6
  24/23 26/23 27/2 27/15

**itself [1]** 30/7

**J**

**Johnson [1]** 26/24
**joined [1]** 7/5
**jointly [1]** 5/1
**JUDGE [2]** 1/14 22/7
**Judge Strand's [1]** 22/7
**judgment [3]** 4/22 31/19 36/16
**jurisdiction [1]** 36/5
**just [9]** 4/23 15/19 17/19 24/19 25/12 28/13 33/24 36/1
  36/4
**Justice [5]** 2/5 7/6 7/10 7/12 21/12
**Justices [1]** 6/25

**K**

**Kagan [2]** 6/25 7/10
**Kagan's [1]** 7/2
**keep [2]** 5/9 35/23
**key [1]** 13/5
**keys [1]** 8/4
**kind [5]** 19/11 25/1 33/21 35/7 35/16
**knock [1]** 22/18
**know [11]** 11/23 13/9 14/8 14/12 18/6 20/15 21/25 28/11
  28/23 29/15 30/23
**knowledge [2]** 23/13 23/16

**L**

**laid [1]** 33/9
**language [3]** 5/22 23/6 34/14
**large [1]** 24/8
**last [4]** 4/18 4/22 5/14 27/4
**later [2]** 36/18 36/20
**law [43]**
**law-making [2]** 8/4 19/15
**laws [2]** 5/15 11/14
**lawsuit [1]** 11/24
**lay [1]** 29/14
**leads [1]** 20/25
**leans [1]** 6/12
**learn [2]** 32/21 32/25
**least [5]** 7/4 10/16 33/3 34/4 34/23
**left [2]** 15/4 19/15
**legal [2]** 25/19 26/15
**legislative [1]** 12/21
**legislature [13]** 6/2 8/3 10/16 11/2 13/10 14/24 16/2 19/14
  31/4 34/7 35/10 35/11 35/17
**legitimate [1]** 22/2
**leniency [1]** 25/1
**lenient [3]** 9/18 23/1 23/3
**lens [1]** 19/2
**less [3]** 9/17 9/19 29/25
**let [4]** 10/7 22/22 25/12 27/23
**let's [5]** 21/16 26/7 27/22 32/7 35/8
**level [1]** 11/19
**like [9]** 6/5 9/12 11/12 25/21 27/16 28/6 30/18 33/2 36/10
**likely [6]** 13/21 13/21 24/20 28/5 29/4 29/21
**limit [2]** 10/18 33/11
**limited [1]** 32/8
**limiting [3]** 16/24 33/23 34/12
**limits [1]** 16/24
**line [2]** 6/4 21/2
**lines [1]** 27/8
**list [3]** 30/2 33/19 33/20
**little [6]** 20/7 21/1 21/2 25/10 30/6 34/12
**LLP [1]** 2/2
**locate [1]** 5/23

## L

**Loh [8]** 2/4 4/15 4/16 25/10 25/15 32/9 33/2 36/10
**long [2]** 26/9
**look [9]** 4/24 16/9 22/25 27/10 29/6 29/20 33/10 33/14 35/9
**looked [1]** 5/21
**looking [5]** 10/3 12/14 16/13 31/5 31/9
**Los [1]** 26/19
**Los Angeles [1]** 26/19
**lot [2]** 12/22 34/14

## M

**made [6]** 7/24 20/5 21/17 22/23 24/9 25/22
**main [1]** 32/5
**maintaining [1]** 11/19
**major [1]** 6/6
**majority [6]** 7/1 7/13 10/6 19/5 26/23 27/15
**make [12]** 7/22 11/7 13/2 20/18 25/18 28/15 31/13 32/9 33/15 33/18 34/5 35/8
**makes [1]** 30/6
**making [5]** 8/4 12/6 19/15 21/17 25/17
**management [2]** 11/3 11/9
**mandated [1]** 14/14
**many [3]** 9/3 19/24 30/1
**margins [1]** 29/25
**market [2]** 2/5 23/8
**marketed [1]** 10/20
**material [6]** 10/13 11/8 13/8 14/23 14/25 16/4
**materials [1]** 9/21
**matter [1]** 6/16
**matters [1]** 7/21
**maximize [1]** 12/11
**maximizing [1]** 11/18
**may [22]** 1/6 4/1 10/16 18/18 18/23 20/14 20/15 21/11 21/25 21/25 24/6 24/11 25/6 26/11 27/1 29/25 32/17 34/20 34/21 34/22 35/17 37/10
**maybe [14]** 5/25 6/7 11/5 18/18 18/19 20/7 21/1 22/20 23/1 24/16 29/2 29/12 30/23 34/11
**me [16]** 9/8 9/15 10/7 11/1 13/3 19/18 19/21 20/1 20/9 20/25 22/1 22/22 24/17 27/25 31/25 32/2
**mean [7]** 8/18 10/12 10/13 10/14 27/16 29/15 31/11
**meant [3]** 20/12 20/12 29/17
**medical [1]** 11/6
**meet [2]** 17/5 17/6
**meets [1]** 19/7
**member [1]** 26/9
**members [8]** 19/22 19/24 20/3 20/16 20/22 21/20 23/19 27/19
**merger [2]** 11/13 29/12
**merits [3]** 22/18 24/15 28/4
**MICHAEL [1]** 1/13
**might [7]** 5/10 20/6 25/24 27/21 29/9 29/25 31/16
**millions [1]** 23/25
**mind [2]** 5/9 6/5
**mining [1]** 23/4
**minute [1]** 5/16
**misrepresentation [1]** 10/13
**miss [1]** 9/19
**missing [1]** 10/23
**Missions [1]** 26/19
**mistaken [1]** 15/16
**moment [1]** 9/14
**money [1]** 29/13
**Morales [1]** 8/15
**more [10]** 8/13 9/18 16/5 23/3 23/13 25/9 27/14 28/13 34/12 34/18
**morphing [1]** 27/4
**most [4]** 7/4 7/5 8/8 21/22

**mostly [1]** 10/15
**motion [3]** 1/11 3/2 31/18
**motions [2]** 4/21 36/16
**move [1]** 29/1
**Mr [6]** 4/11 25/17 27/23 30/6 30/15 32/8
**Mr. [1]** 4/25
**Mr. Daniels [1]** 4/25
**Ms [5]** 4/16 25/15 32/9 33/2 36/10
**Ms. [1]** 25/10
**Ms. Van [1]** 25/10
**much [6]** 11/12 13/13 21/17 24/5 24/11 28/13
**must [4]** 21/6 27/2 28/2 33/16
**my [11]** 4/22 4/23 9/25 17/23 20/8 25/19 25/20 26/1 32/5 35/14 36/17

## N

**narrow [3]** 22/10 23/4 31/11
**nature [1]** 23/6
**necessarily [3]** 8/19 21/4 21/13
**necessary [1]** 33/16
**need [13]** 9/22 12/9 13/3 13/4 13/7 14/23 15/2 16/5 16/14 16/14 24/16 25/9 31/8
**needed [1]** 14/24
**needs [2]** 15/1 15/3
**neither [1]** 5/23
**never [1]** 34/20
**new [1]** 25/11
**Ninth [2]** 2/3 9/4
**Ninth Circuit [1]** 9/4
**no [12]** 12/1 17/1 19/9 19/13 21/9 24/23 30/14 30/15 34/19 36/12 36/18 36/20
**No. [1]** 4/6
**No. 3:22-cv-1486 [1]** 4/6
**non [7]** 6/9 6/11 6/18 6/22 8/16 9/20 35/22
**non-delegation [6]** 6/9 6/11 6/18 6/22 8/16 35/22
**non-regulatory [1]** 9/20
**normative [5]** 10/10 10/17 10/24 10/25 19/9
**not [78]**
**notice [18]** 11/12 11/14 12/24 14/3 13/7 14/6 14/15 14/16 16/3 22/11 28/2 28/8 28/9 28/20 28/23 28/25 32/12 32/25
**notification [2]** 12/7 12/8
**notifications [1]** 11/13
**notion [4]** 6/19 7/10 7/15 23/20
**notwithstanding [1]** 34/14
**now [19]** 4/12 5/13 6/1 6/9 8/6 8/22 11/24 15/1 15/7 16/2 17/8 17/16 20/7 21/17 25/21 27/4 30/5 35/3 36/15
**nowhere [1]** 17/16
**number [2]** 23/9 24/8
**numerical [2]** 33/20 33/22
**nurse [1]** 23/17

## O

**OAR [1]** 32/14
**objective [2]** 10/9 10/18
**obligation [1]** 22/15
**obligations [1]** 13/20
**observations [1]** 36/7
**obviously [2]** 6/1 20/19
**occur [1]** 14/11
**off [1]** 29/14
**Official [1]** 37/11
**Oh [1]** 28/11
**OHA [18]** 6/14 12/8 13/18 13/18 14/1 28/4 28/10 28/11 29/22 30/7 30/17 30/21 30/25 31/2 31/12 31/16 34/15 34/17
**OHA has [1]** 31/12
**Okay [9]** 12/16 17/2 18/13 18/21 20/1 30/5 31/22 32/21 36/9

**O**

once [3]  14/15 15/3 19/11
one [23]  5/23 6/24 7/6 8/6 10/8 11/25 13/11 14/24 15/9
18/2 18/10 18/20 21/19 23/3 24/12 25/6 30/6 30/24 32/5
33/4 33/20 34/8 34/25
one-third [1]  33/20
only [9]  6/16 11/22 13/2 13/20 16/16 22/11 25/23 28/1
35/13
oOo [1]  37/3
Open [1]  4/3
operate [1]  8/19
opinion [18]  4/18 4/23 5/4 5/6 5/10 6/7 6/9 6/12 7/1 7/5
7/10 7/13 8/25 17/12 19/8 21/8 21/12 22/7
opinions [1]  8/14
opportunity [4]  24/22 28/3 31/3 33/3
opposed [1]  29/22
opposition [1]  26/18
option [1]  31/12
oral [1]  36/15
order [4]  13/4 14/25 17/14 20/8
OREGON [19]  1/2 1/4 1/7 1/7 2/3 2/5 2/6 4/5 4/6 11/17
11/25 19/22 34/3 34/3 34/5 34/7 35/20 35/21 35/22
organization [2]  18/20 21/25
original [1]  37/7
originally [1]  19/3
other [17]  5/2 12/23 17/7 17/8 17/9 18/1 18/19 22/22 23/11
24/9 25/17 26/8 27/22 29/2 30/13 30/16 35/14
otherwise [5]  17/15 18/2 25/18 30/16 36/11
our [24]  5/6 6/12 6/13 6/23 8/20 10/23 12/18 12/19 13/1
13/6 13/8 14/24 16/1 18/20 19/11 19/15 20/18 20/22 21/10
22/8 23/21 24/11 24/15 26/4
out [11]  6/3 15/8 15/21 19/19 22/18 24/1 28/10 29/3 33/9
34/16 36/20
out-of-state [1]  24/1
outlined [1]  19/7
outstanding [2]  36/14 36/15
over [2]  7/17 8/3
overbreadth [4]  25/24 26/1 26/2 32/6
overlap [1]  6/10
own [1]  36/17
ownership [2]  11/3 11/9

**P**

page [5]  19/7 21/10 25/24 26/18 32/5
paid [1]  11/5
Papachristou [1]  24/4
papers [2]  18/11 21/18
parallels [1]  5/24
part [3]  15/16 15/17 19/14
particular [3]  29/11 34/25 35/24
particularly [1]  24/6
parties [8]  12/1 13/24 14/9 24/24 27/13 28/15 28/22 29/19
parts [1]  10/7
party [3]  5/24 32/17 33/9
passed [1]  13/10
patient [2]  11/18 23/16
people [5]  9/22 16/3 16/5 29/14 31/8
perceived [1]  11/2
perfectly [1]  15/2
perhaps [2]  6/12 6/15
person [1]  21/25
perspective [1]  5/11
persuade [1]  22/6
piece [3]  34/25 35/24 36/5
pillars [1]  7/14
place [2]  35/16 35/25
plaintiff [11]  1/5 2/2 4/7 4/10 10/2 20/3 20/13 21/19 25/20

26/10 26/11
plaintiffs [1]  5/1
planning [1]  13/19
please [1]  30/19
plurality [2]  7/2 7/7
point [16]  5/20 13/5 13/6 18/14 23/24 24/3 24/9 24/11
24/17 27/4 29/5 31/25 32/22 32/23 33/18 34/21
points [10]  5/9 6/5 22/23 25/6 25/11 25/12 25/17 26/8 30/6
34/7
policemen [1]  25/4
policy [1]  7/21
political [1]  7/18
Portland [4]  1/7 1/24 2/3 2/6
position [4]  17/4 18/4 26/4 31/16
positive [1]  12/12
possibility [1]  21/24
possible [2]  22/13 26/20
possibly [1]  27/7
potentially [1]  23/9
powers [2]  5/19 7/12
pre [9]  14/6 20/24 24/10 24/12 24/22 28/8 28/9 28/17 32/12
pre-enforcement [3]  20/24 24/10 24/12
pre-filing [1]  28/17
pre-notice [4]  14/6 28/8 28/9 32/12
pre-preliminary [1]  24/22
precise [2]  15/2 22/9
precisely [1]  19/22
prefer [1]  5/1
prejudicial [1]  17/15
preliminary [11]  14/10 14/12 14/13 14/14 14/18 14/19
16/18 24/18 24/22 27/25 28/16
premise [1]  8/24
prepared [1]  31/24
prerogative [1]  13/15
pretty [4]  5/21 24/2 29/15 29/20
prevention [1]  8/9
price [2]  11/11 30/12
prices [4]  11/5 11/18 15/14 17/20
pricing [1]  15/23
primarily [2]  11/8 12/7
principles [1]  18/7
private [4]  11/2 11/10 24/1 29/11
probably [8]  4/25 12/4 28/11 28/21 28/23 29/6 35/9 36/21
problem [5]  6/18 9/19 11/21 14/16 14/22
problems [1]  35/2
procedure [1]  29/22
proceedings [2]  1/12 37/6
process [9]  8/1 8/2 12/7 14/6 14/8 14/8 14/16 16/7 28/16
professionals [1]  23/5
prohibited [1]  18/21
promise [1]  36/18
promulgate [1]  30/25
promulgated [3]  15/7 17/11 31/2
promulgating [1]  31/13
prong [1]  8/13
proposal [1]  29/1
proposition [1]  8/23
prospective [3]  12/1 28/3 29/20
prove [2]  24/5 24/11
proved [1]  21/11
provide [10]  13/3 13/7 13/8 13/9 14/15 14/16 28/7 28/25
29/7 31/3
provided [3]  33/4 34/6
providers [3]  11/6 11/20 16/11
provision [3]  15/22 18/3 30/25
public [2]  17/16 17/18
pull [1]  19/1

**P**

**purpose [3]**  8/8 12/11 12/21
**purposes [2]**  13/1 31/4
**pursuant [1]**  32/19
**put [10]**  16/17 16/20 17/6 17/8 21/7 21/10 33/16 34/18
35/12 35/13
**putting [1]**  29/10

**Q**

**quality [6]**  11/4 11/11 15/13 15/24 16/11 17/20
**quantity [1]**  16/11
**question [9]**  10/7 16/6 17/23 20/17 22/9 31/7 31/10 31/11
31/12
**questions [4]**  25/7 25/9 28/22 31/25
**quintessential [2]**  10/20 24/4
**quote [1]**  26/19
**quoted [1]**  17/12

**R**

**raise [5]**  15/14 25/11 25/24 25/25 26/5
**raises [1]**  17/20
**rather [1]**  9/20
**rationale [6]**  6/20 8/17 23/7 23/10 23/11 25/6
**RDR [2]**  1/23 37/11
**reach [1]**  28/10
**real [1]**  6/12
**really [17]**  5/21 5/24 7/18 10/19 11/22 15/19 23/15 23/17
24/13 27/9 27/19 27/24 31/11 33/3 33/7 34/11 35/5
**reason [3]**  20/19 23/2 24/23
**reasonable [1]**  11/19
**reasoning [1]**  6/19
**reasons [3]**  6/23 23/2 36/8
**rebuttal [2]**  25/11 32/8
**received [1]**  4/17
**recent [3]**  6/24 7/24 8/14
**recently [1]**  5/13
**recess [1]**  25/10
**recharacterize [1]**  12/18
**recognize [2]**  5/7 8/22
**recognized [1]**  7/25
**recognizing [1]**  7/16
**record [1]**  37/6
**redescribe [1]**  12/18
**redo [1]**  9/23
**reduce [2]**  12/12 29/15
**reduces [1]**  30/11
**reducing [1]**  11/18
**reduction [3]**  29/8 30/4 33/20
**reference [1]**  19/12
**references [1]**  15/4
**referred [1]**  7/20
**reflect [1]**  4/23
**reflects [1]**  5/6
**reformulate [1]**  35/7
**regime [2]**  8/12 34/13
**regimes [1]**  12/24
**regulates [1]**  23/15
**regulating [1]**  23/22
**regulation [9]**  9/13 9/22 10/15 17/25 22/24 23/2 23/17
27/13 32/16
**regulations [9]**  9/1 9/20 10/10 10/18 12/11 14/6 19/4 31/1
33/4
**regulatory [3]**  9/20 29/6 34/18
**relatively [2]**  12/10 29/3
**relaxes [1]**  20/24
**relevant [1]**  6/2
**relied [1]**  10/22

**relief [1]**  36/1
**relying [1]**  24/25
**remedy [1]**  36/6
**reminded [1]**  19/18
**repeat [1]**  17/13
**repeating [1]**  18/16
**reply [1]**  26/18
**REPORTER [2]**  1/23 37/11
**requesting [1]**  32/18
**require [3]**  6/14 28/19 30/21
**required [1]**  32/17
**requirement [2]**  33/16 34/20
**requirements [3]**  16/3 34/19 35/14
**residual [1]**  30/24
**respect [6]**  8/20 20/24 23/14 30/23 32/12 33/18
**Respectfully [1]**  36/7
**responding [1]**  25/16
**response [1]**  30/19
**rest [3]**  7/6 27/1 35/24
**restriction [1]**  8/3
**results [1]**  12/12
**revamp [1]**  29/13
**revenue [1]**  24/6
**review [10]**  14/12 14/13 14/14 14/18 14/20 24/10 24/12
24/22 28/5 28/16
**reviewed [1]**  14/23
**reviews [2]**  24/19 28/1
**right [20]**  4/17 4/21 7/2 7/8 12/3 16/25 18/18 18/23 25/13
25/16 26/3 26/9 30/14 30/15 32/7 34/5 34/9 34/10 35/3
35/23
**rights [1]**  9/12
**Rives [1]**  2/2
**RMR [1]**  37/11
**Roberts' [1]**  21/12
**rock [2]**  35/16 35/25
**Room [1]**  1/24
**rub [1]**  33/7
**rule [12]**  14/21 15/7 16/23 17/6 17/11 17/25 32/24 33/13
33/17 35/8 35/18 36/4
**rules [11]**  16/2 16/17 16/21 31/2 31/5 31/7 32/20 35/9
35/10 35/13 35/13
**run [1]**  22/5
**rural [1]**  23/20

**S**

**said [10]**  4/22 8/12 12/11 18/10 19/16 24/5 25/17 34/19
35/10 35/11
**Salerno [1]**  21/3
**Sara [2]**  2/4 4/15
**Sara Van Loh [1]**  4/15
**satisfy [5]**  14/21 15/1 16/17 19/16 33/16
**satisfying [1]**  21/13
**say [20]**  9/4 9/18 12/17 13/6 13/19 14/23 14/25 21/16
27/15 27/23 28/11 28/18 33/10 34/17 34/25 35/5 35/8 35/9
35/22 36/10
**saying [6]**  9/24 12/1 17/19 25/4 28/22 29/19
**says [10]**  14/1 15/7 15/20 16/1 18/16 26/24 30/10 30/15
32/16 35/17
**scenarios [1]**  18/23
**schedule [1]**  36/17
**scholarly [1]**  22/9
**scope [1]**  25/3
**second [3]**  5/20 13/5 36/3
**section [1]**  7/6
**sections [1]**  33/15
**securities [1]**  23/5
**see [7]**  9/8 10/23 21/19 21/24 22/6 31/5 35/4

**S**

**seeing [1]** 5/12
**seem [2]** 24/7 27/9
**seminal [1]** 7/19
**send [2]** 34/2 36/5
**sense [3]** 27/17 29/21 32/24
**separate [2]** 6/21 10/7
**separation [2]** 5/19 7/11
**serious [1]** 20/3
**serve [2]** 9/1 10/18
**services [5]** 16/1 29/9 29/15 30/4 30/12
**set [1]** 15/8
**sets [1]** 10/9
**several [1]** 5/14
**shall [1]** 32/17
**shift [2]** 5/13 25/24
**should [7]** 6/15 15/12 21/14 22/25 31/18 35/1 36/4
**shouldn't [1]** 36/3
**show [2]** 21/6 27/2
**shy [1]** 25/8
**SI [1]** 1/5
**side [1]** 34/24
**sides [2]** 36/13 36/15
**signature [3]** 37/8 37/8 37/8
**signed [1]** 37/8
**significant [7]** 5/13 5/17 6/10 6/17 7/9 11/7 24/7
**signing [1]** 37/5
**similar [2]** 5/22 5/25
**SIMON [1]** 1/13
**simply [1]** 34/9
**since [1]** 35/4
**situation [4]** 19/6 19/6 22/14 27/18
**situations [2]** 26/21 29/8
**slightly [1]** 24/5
**so [43]**
**solid [1]** 27/20
**some [24]** 5/1 7/25 8/25 10/16 11/12 11/14 16/24 18/7 18/22 19/20 20/6 20/14 20/22 21/25 24/18 27/17 28/2 28/3 29/2 29/25 31/16 33/5 33/21 34/21
**somehow [2]** 11/21 18/7
**someone [2]** 13/17 21/5
**something [11]** 6/3 9/11 9/13 10/14 15/3 18/16 28/13 29/16 34/1 35/10 36/2
**somewhat [1]** 25/5
**sooner [1]** 36/21
**sophisticated [3]** 23/12 24/2 27/13
**sophistication [1]** 23/21
**sort [4]** 25/24 27/4 27/10 30/1
**sounds [2]** 27/16 33/2
**source [4]** 8/17 18/4 18/17 18/19
**speak [2]** 5/7 25/5
**speaking [1]** 25/15
**specific [5]** 5/10 15/2 18/15 23/5 31/8
**specified [2]** 19/10 19/13
**spectrum [1]** 27/10
**speculation [1]** 26/20
**speculative [1]** 22/2
**speech [1]** 9/12
**staffing [1]** 23/17
**stage [1]** 11/24
**standard [29]** 10/10 10/17 10/21 10/24 10/25 13/2 13/9 14/19 14/19 15/1 15/1 19/7 19/9 19/13 21/5 21/7 21/9 21/9 21/14 22/19 23/1 23/3 25/1 27/12 27/17 33/20 35/12 35/19
**standardless [3]** 8/10 8/12 16/12
**standards [1]** 34/6
**standing [7]** 20/7 20/9 20/10 20/13 20/18 25/25 26/5

**state [12]** 1/7 4/6 4/23 6/16 9/25 24/1 29/2 34/7 34/23 34/24 36/2 36/5
**stated [1]** 7/20
**statement [1]** 11/15
**STATES [5]** 1/1 1/14 1/23 22/7 26/24
**statute [46]**
**statutes [1]** 18/15
**statutory [7]** 14/4 14/18 17/13 18/1 30/25 34/13 35/13
**step [2]** 14/9 14/24
**still [1]** 20/18
**Stoel [1]** 2/2
**Strand's [1]** 22/7
**streamline [1]** 29/14
**Street [1]** 2/5
**strict [1]** 9/17
**strike [3]** 31/1 34/9 35/24
**strikes [1]** 22/1
**striking [1]** 5/23
**struck [3]** 5/15 20/1 34/22
**structural [2]** 8/1 8/2
**structure [2]** 5/22 13/4
**structured [1]** 17/5
**struggled [1]** 27/8
**struggling [1]** 29/12
**stuck [1]** 35/19
**Stupka [1]** 22/7
**sub [2]** 9/21 29/6
**sub-law [1]** 9/21
**sub-regulatory [1]** 29/6
**subject [6]** 9/17 9/22 13/20 20/22 23/3 33/21
**submissions [1]** 28/15
**submit [1]** 32/17
**substantial [1]** 30/3
**substantive [3]** 16/9 24/15 33/1
**subtle [1]** 5/12
**such [4]** 6/20 8/11 28/1 32/19
**sufficient [1]** 22/17
**suggest [1]** 30/22
**suggests [1]** 23/1
**Suite [1]** 2/3
**summarized [1]** 10/6
**summary [3]** 4/22 31/19 36/16
**supplemental [3]** 20/8 21/10 22/8
**supply [2]** 11/19 15/11
**support [2]** 26/22 28/15
**supports [2]** 36/1 36/3
**Supreme [5]** 9/4 34/4 34/23 34/24 35/21
**Supreme Court [1]** 9/4
**sure [3]** 11/7 14/5 18/18
**surely [1]** 26/22
**surgery [1]** 34/12
**surprising [1]** 8/6
**survived [1]** 5/25
**suspect [1]** 34/4
**SW [3]** 1/24 2/3 2/5
**sweep [1]** 24/7
**system [1]** 29/14
**SYSTEMS [3]** 1/4 4/5 19/23

**T**

**take [8]** 4/17 22/5 24/3 24/11 25/9 27/17 36/11 36/16
**taken [1]** 18/4
**takes [2]** 7/12 14/9
**talk [5]** 7/1 8/14 10/7 25/4 33/22
**talked [1]** 7/10
**talking [14]** 9/10 9/11 9/13 20/21 22/11 22/12 23/15 23/17 27/9 27/11 27/12 27/23 29/10 29/16

**T**

**talks [1]** 7/13
**technical [2]** 23/4 23/6
**tell [4]** 9/8 9/15 11/1 16/3
**tells [1]** 15/20
**tension [2]** 6/6 6/8
**tentative [11]** 4/18 4/23 5/4 6/7 17/12 20/2 25/19 25/20 31/24 32/3 34/2
**term [1]** 26/13
**terms [1]** 12/21
**terrorist [1]** 18/19
**test [1]** 33/22
**than [3]** 18/1 36/18 36/20
**thank [7]** 5/3 5/3 25/14 32/11 36/22 36/23 36/24
**that [252]**
**that's [41]**
**their [5]** 13/2 18/10 22/16 34/18 35/13
**them [7]** 7/22 11/23 16/7 22/18 23/19 30/18 32/1
**themselves [2]** 22/15 29/21
**then [36]** 5/9 7/1 7/12 7/13 8/23 9/1 10/10 10/10 10/18 10/21 11/21 14/2 14/15 14/16 15/7 15/8 17/23 18/8 18/16 18/21 20/21 20/25 22/4 26/7 26/11 27/13 27/19 27/23 28/12 31/5 32/7 32/9 32/25 33/12 33/15 35/19
**then you're [1]** 14/15
**theoretical [1]** 21/24
**theory [1]** 8/20
**there [28]** 6/10 6/17 6/23 6/24 7/5 9/3 9/5 9/6 9/19 10/8 11/7 12/22 14/12 19/12 19/19 19/24 20/3 20/5 21/24 22/17 24/22 25/18 28/2 28/9 29/25 30/3 30/16 33/3
**there's [10]** 6/20 14/3 16/16 19/20 23/13 23/21 27/10 28/2 28/13 34/6
**Therefore [1]** 11/14
**these [10]** 8/14 11/22 11/25 12/8 17/7 27/10 28/12 31/9 32/20 35/9
**they [43]**
**they're [10]** 16/6 16/7 16/8 20/15 21/25 25/21 29/4 31/3 31/9 31/10
**they've [2]** 5/17 17/11
**thing [1]** 25/23
**things [5]** 13/11 23/5 27/11 28/6 35/14
**think [80]**
**thinking [3]** 4/24 26/9 32/24
**third [2]** 1/24 33/20
**this [53]**
**thorough [1]** 29/7
**those [22]** 5/17 6/5 7/24 9/17 9/18 10/14 13/1 13/24 14/1 16/9 16/15 17/13 17/16 19/5 21/12 22/24 24/5 29/16 31/10 33/15 33/23 34/22
**thought [7]** 10/25 11/20 12/9 13/17 15/11 24/18 30/10
**threat [1]** 22/12
**three [3]** 5/14 6/6 16/9
**threshold [2]** 5/9 5/20
**thresholds [1]** 24/6
**through [5]** 13/25 14/8 15/3 19/12 29/22
**tied [1]** 5/17
**time [2]** 25/9 25/21
**today [2]** 5/5 36/17
**told [1]** 20/9
**tolerates [1]** 27/13
**too [7]** 13/13 13/13 22/1 24/5 24/11 31/10 31/11
**topics [1]** 30/5
**totally [1]** 16/12
**touch [3]** 5/10 5/16 22/22
**track [1]** 22/21
**transaction [35]** 11/8 11/8 11/16 12/3 13/4 13/7 13/9 13/17 13/18 13/19 13/25 14/7 14/17 14/25 15/5 15/8 16/8 17/14 18/6 18/8 23/25 24/13 24/15 24/19 28/1 28/12 28/15 28/19

29/20 30/8 30/22 32/19 32/19 33/6 35/18
**transactions [10]** 11/23 11/25 12/1 14/23 16/5 23/9 23/18 24/8 29/8 31/9
**transcript [3]** 1/12 37/6 37/7
**true [1]** 29/24
**try [2]** 29/2 34/22
**trying [3]** 21/16 25/12 25/15
**twin [1]** 7/14
**two [8]** 5/1 5/9 6/23 8/18 10/7 25/6 27/22 36/16
**type [4]** 11/16 16/24 29/22 33/5
**types [4]** 11/22 19/22 29/8 29/8
**typically [2]** 23/3 23/12

**U**

**ultimately [2]** 19/13 34/3
**unable [1]** 5/23
**unambiguously [3]** 21/20 21/23 26/10
**uncertainty [1]** 19/20
**unclear [2]** 19/21 27/25
**uncommon [1]** 34/23
**unconditionally [1]** 13/23
**unconstitutional [1]** 9/2
**undecidedly [1]** 24/7
**under [10]** 11/13 18/21 26/6 26/11 29/15 33/4 34/19 35/22 36/11 36/17
**underlying [1]** 7/11
**undermines [1]** 8/23
**understand [10]** 6/18 9/8 9/9 9/14 9/16 12/6 14/6 16/8 19/1 27/6
**understanding [5]** 9/15 9/25 14/4 26/1 31/15
**unique [2]** 5/21 19/6
**UNITED [5]** 1/1 1/14 1/23 22/7 26/24
**United States [2]** 22/7 26/24
**unknown [1]** 20/14
**unless [2]** 5/1 26/25
**unreasonably [8]** 10/14 15/12 15/13 15/14 15/24 15/25 17/19 30/12
**up [5]** 7/12 12/4 20/25 34/1 34/3
**upon [2]** 9/10 30/11
**us [6]** 7/9 8/13 12/2 18/25 20/24 24/25
**use [1]** 10/21
**uses [2]** 23/6 33/20

**V**

**vague [6]** 7/20 9/2 21/18 26/12 27/1 27/3
**vagueness [19]** 5/13 5/16 5/18 5/25 6/9 6/11 6/21 7/11 7/14 7/16 8/1 8/9 9/9 9/18 10/1 26/6 26/20 26/25 27/14
**valid [1]** 26/22
**Van [8]** 2/4 4/15 4/16 25/10 25/15 32/9 33/2 36/10
**variety [1]** 15/9
**vary [1]** 27/9
**vast [5]** 10/6 19/5 23/9 26/23 27/15
**versus [1]** 4/6
**very [3]** 18/22 28/16 29/7
**vesting [1]** 8/18
**view [15]** 6/13 6/16 6/23 10/8 10/23 12/18 13/8 14/24 16/12 17/21 19/11 19/15 20/18 24/11 24/15
**violative [2]** 18/7 30/16

**W**

**want [11]** 13/25 19/19 25/9 25/11 25/18 25/19 27/24 28/23 31/23 32/2 36/13
**wanted [3]** 11/6 11/12 11/14
**wanting [1]** 18/20
**wants [2]** 13/17 30/17
**was [21]** 5/22 6/3 6/3 7/2 7/5 7/7 10/19 10/21 11/7 12/9 16/19 19/19 21/10 22/10 23/12 24/9 26/18 27/23 32/5 32/24

**W**

**was... [1]**  36/14
**water [1]**  25/1
**way [13]**  13/2 13/12 14/3 17/4 17/19 18/15 19/14 19/18
  19/19 19/23 29/4 33/25 34/8
**we [85]**
**we're [13]**  11/24 13/19 18/22 20/19 22/14 22/18 23/14
  23/17 24/3 27/9 28/25 33/10 35/19
**weaker [2]**  23/10 25/5
**week [4]**  4/18 4/22 36/18 36/20
**weeks [1]**  36/19
**welcome [1]**  13/13
**well [8]**  5/18 13/14 15/11 18/19 25/4 25/11 30/15 35/20
**were [6]**  5/22 13/1 20/20 30/24 31/16 35/8
**what [52]**
**what's [8]**  7/9 10/23 12/25 14/13 17/9 26/15 32/22 33/19
**whatever [8]**  13/1 16/17 17/6 19/17 33/13 33/16 35/12
  35/12
**when [12]**  9/19 12/17 13/3 15/21 15/22 19/2 20/5 22/11
  25/1 26/22 27/15 31/9
**where [6]**  5/10 7/6 22/14 27/18 29/8 35/3
**wherever [1]**  24/17
**whether [30]**  12/9 13/9 14/10 14/17 14/21 16/6 16/7 20/15
  21/11 21/25 24/13 24/13 27/25 28/1 28/2 28/4 28/18 28/25
  29/1 29/4 29/21 30/3 30/8 30/9 30/1 31/7 31/10 31/10
  32/19 33/5
**which [24]**  7/19 7/19 8/9 8/25 11/17 13/6 13/9 15/9 18/23
  19/4 19/4 19/6 19/7 19/8 19/21 21/10 21/12 22/6 22/7 22/23
  25/2 26/24 29/6 35/14
**while [3]**  6/18 11/19 24/6
**who [6]**  9/22 16/3 20/6 21/5 23/25 24/24
**whole [2]**  6/3 16/23
**wholesalely [1]**  8/4
**whom [1]**  27/19
**why [3]**  22/3 23/2 36/3
**will [28]**  4/12 6/14 12/3 14/11 15/5 15/8 15/12 15/19 15/22
  15/23 17/5 17/6 18/8 18/22 19/17 22/5 24/21 26/21 27/24
  28/11 28/25 29/1 29/16 33/6 36/11 36/15 36/18 36/19
**willing [2]**  21/2 28/25
**wish [2]**  24/24 32/10
**within [2]**  12/2 23/21
**without [2]**  7/17 37/7
**won't [1]**  24/14
**work [1]**  10/16
**works [1]**  29/14
**would [28]**  5/1 6/5 8/11 9/1 11/10 11/21 12/17 13/3 13/3
  17/3 18/21 20/21 20/22 21/23 22/16 22/18 24/17 28/11
  28/19 29/5 30/18 31/4 32/13 34/3 34/11 35/11 35/21 36/10
**written [1]**  32/18
**wrong [1]**  11/1

**Y**

**Yeah [1]**  28/22
**years [1]**  5/14
**Yes [5]**  4/19 4/20 7/3 12/15 26/14
**yet [1]**  17/10
**you [102]**
**you'd [2]**  21/1 34/4
**you're [23]**  11/22 13/13 14/15 14/16 15/4 16/22 16/23
  21/17 22/11 22/12 24/13 27/11 27/12 27/18 28/19 29/10
  29/16 29/19 30/1 30/1 35/20 35/23 35/25
**You've [1]**  35/25
**your [58]**
**Your Honor [26]**  5/20 7/8 7/19 9/6 10/4 10/5 12/20 12/23
  15/17 18/12 19/1 19/2 19/7 19/25 20/17 22/23 23/11 24/9
  24/21 25/14 25/23 31/21 32/13 32/24 34/10 34/11
**Your Honor's [4]**  10/7 24/3 27/6 36/7